Lawrence W. Williamson, Jr.
**Williamson Law Firm, LLC**
**Attorney and Counselor at Law**
816 Ann Ave
Kansas City, Kansas  66101
Telephone:  (913) 871-7060
Facsimile:   (913) 535-0736
E: l.williamson@williamsonfirm.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No.: 07-10234-MLB |
| ) | |
| Plaintiff, ) | |
| ) | MEORANDUM IN SUPPORT OF JOINT |
| vs. ) | MOTION FOR A BILL OF PARTICULARS |
| ) | |
| STEPHEN J. SCHNEIDER ) | |
| and ) | |
| LINDA K. SCHNEIDER, a/k/a ) | |
| LINDA ATTERBURY, ) | |
| d/b/a/ SCHNEIDER MEDICAL CLINIC, ) | |
| ) | |
| ) | |
| Defendants. ) | |

## **MEORANDUM IN SUPPORT OF JOINT MOTION FOR A BILL OF PARTICULARS**

COMES NOW, Defendant, Stephen Schneider, through his attorney, Lawrence W. Williamson, Jr. of Williamson Law Firm, LLC and on behalf of all defendants, and in support of their Joint Motion for a Bill of Particulars state the following:

**I.     Introduction**

The government in grand fashion has charged the defendants with serious crimes supported by empty allegations.  The government "investigated" this case for over two years, beginning in 2005, before filing the Indictment in this case.  In this time, the government has collected over 250 boxes of documents.  Of this information, the government has produced over 500 patient records and a database that includes more that 180,000 claims that were submitted

on behalf of over 10,400 patients. The government has another 500 + patient records that it has made available for copying. The defendants are tasked with reviewing this information and engage in a game of pin the tail on the allegation. In other words, defendants will have to review all of this information and attempt to guess if a certain document refers to an allegation. This must be accomplished, in addition to a heavy pretrial motion practice and regular pressing business, by February 2009. Thus, the government has a running start out of the gate and does not want to provide the defendants with specific allegations that will give the defendants a fair chance at completing the race. Because the life and liberty of two individuals are at stake here, the court must ensure that the defendants have an opportunity to actually defend themselves against specific allegations. Thus, a Bill of Particulars is necessary in this matter.

**II.     Analysis and Argument**

Rule 7(f) authorizes a court to require a bill of particulars where the indictment fails to provide enough information to permit the defendants to defend the charges that have been brought. "Bills of particulars have grown from very small and technical beginnings into most important instruments of justice." *U.S. v. Balaban,* 26 F. Supp. 491, 499 (N.D. ll. 1939). The bill of particulars is designed to "inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense." *United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996)(citing *United States v. Levine*, 983 F.2d 165, 166-67 (10th Cir. 1992)). The court's main concern when reviewing such a motion is whether the defendant has: (1) a meaningful opportunity to prepare his or her defense, (2) assurances against unfair surprise to the defendant at trial, and (3) protection from double jeopardy dangers. *United States v. Gabriel*, 715 F.2d 1447, 1449 (10th Cir. 1983). "[T]he fact that an indictment or information conforms to the simple form suggested in the rules is no answer or defense to a motion for a bill of particulars" because "[i]ts proper office is to furnish to the defendant *further information* respecting the charge stated in the indictment when necessary to the preparation of his defense." *U.S. v. Smith,*

MEORANDUM IN SUPPORT OF JOINT MOTION FOR A BILL OF PARTICULARS

16 F.R.D. 372, 374 (W.D. Mo. 1954), *cited with app'l by* Fed. R. Crim. P. 7(f) advisory committee's note.

The decision to grant a bill of particulars rests in the Court's sound discretion and turns on the particular facts of each case. However, any doubt should "be resolved in favor of disclosure and the conflicting concerns must yield to paramount public interest in affording the accused a reasonable foundation for mounting a defense." *U.S. v. Manetti,* 323 F. Supp. 683, 696 (D. Del. 1971). Rule 7(f) "requires that the defendant be given the benefit of the doubt in gray areas," and in situations the competing interests of the government and the defendant are closely balanced, "the interest of the defendant in disclosure must prevail." *U.S. v. Rogers,* 617 F. Supp. 1024, 1027-28 (D. Colo. 1985), *aff'd in part, rev'd in part on other grounds,* 960 F.2d 1501 (10th Cir. 1992). Indeed Rule 7(f) was amended in 1966 to eliminate the need for a defendant to show "cause." By eliminating the cause requirement, the drafters of the rule expressly sought "to encourage a more liberal attitude by the courts toward bills of particulars." *U.S. v. Rosa,* 891 F.2d 1063, 1066 (3d Cir. 1989) (quoting Fed. R. Crim. P. 7 advisory committee's note), *cited with app 'I by U.S. v. Salisbury,* 983 F.2d 1369, 1375 (6th Cir. 1993).

The Indictment in this case fails in numerous respects to put Dr. Schneider and Linda Schneider on notice of the crimes with sufficient precision to allow them to prepare for trial. Additionally, the Indictment, without more, would require defendants to defend their case in a minefield, attempting to guess what the government contends that the defendants actually did to violate the law. Indeed, other than providing a generic listing of "red flags" and conclusory statements regarding "up-code[s]" and other allegedly fraudulent acts, it provides no specific fact as to how they broke the law, or how the government could sustain its burden of proof on any of the counts at trial. Among other things, its broad and conclusory allegations do not provide: (a) a factual or evidentiary basis for the allegation that either defendant actually knew that patients were abusing narcotics, including, but not limited to, the actual information provided to Dr. Schneider that either Patricia G, Eric T., Robin G., or the individuals listed in

MEORANDUM IN SUPPORT OF JOINT MOTION FOR A BILL OF PARTICULARS

Count 5 were actually diverting narcotics or that they were not suffering from a medical need for such prescriptions;   (b) an explanation as to how Dr. Schneider actually submitted a false claim to health care insurance companies and what claims were actually false; (c) an explanation as to how Dr. Schneider actually instructed a person to either up-code, change provider, or provide false information to a health care insurance companies; (d) an explanation as to how Linda Schneider actually submitted a false claim to Medicare/Medicaid; (e) an explanation as to how Dr. Schneider actually instructed a person to either up-code, change provider, or provide false information to Medicare/Medicaid; and (f) an explanation as to an alleged agreement between the defendants to allow either defendant to illegally sell narcotics or allow either defendant to defraud Medicare/Medicaid.

In order to understand why the answers to these questions are necessary in order for the defendants to properly defend themselves, the court must understand the basic elements of the basic charges.  In order to find the defendants guilty of health care fraud, the government must show that each of them willfully committed health care fraud.  In order to make this showing, the government must show that "the defendant acted with knowledge that his conduct was unlawful." *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994)).  Additionally, the elements of a violation under 21 U.S.C. s 841(a)(1) by a physician are :

> (1) That defendant distributed a controlled substance;
>
> (2) That he acted intentionally or knowingly; and
>
> (3) That defendant prescribed the drug without a legitimate medical purpose and outside the usual course of professional practice.

*U.S. v. Varma*, 691 F.2d 460, 462 (10th Cir. 1982).

It seems that the government has attempted to truncate its pleading standard to show that each defendant undertook certain illegal acts by alleging that the defendants conspired to act. However, the indictment alleging a conspiracy "must be scrutinized carefully as to each of the charged defendants because of the possibility, inherent in a criminal conspiracy charge, that its

wide net may ensnare the innocent as well as the culpable." *Dennis v. United States,* 384 U.S. 855, 860, 86 S.Ct. 1840, 1843, 16 L.Ed.2d 973 (1966) (citations omitted).

In alleging a conspiracy, the government must show that the defendants had an agreement to engage in criminal conduct. The government cannot simply show that one defendant has knowledge of another person's intent to commit a crime. Such a proffer would not be sufficient to sustain a conviction for conspiracy. *U.S. v. Migliaccio*, 34 F.3d 1517, 1521-1522 (10th Cir. 1994)(reversing a conviction for conspiracy based on fact that "a reasonable juror might infer that one defendant had knowledge of the other's intent, but knowledge, by itself, is insufficient to create a conspiracy.") Thus, the government has to allege facts (as opposed to conclusions) sufficient to show an actual agreement between the defendants to engage in unlawful conduct. Therefore, defendants are entitled to know what acts that each defendant committed and entitled to know what evidence that the government has of an actual agreement between the defendants so that defendants can answer and defend the allegations against them.

Moreover, as it stands, the government fails to identify any actual facts that Dr. Schneider was involved with the billing any way. Indeed, the government alleges that Linda Schneider was involved with the billing, but fails to make any such allegation regarding Dr. Schneider. (Indictment ¶ 3) Even though the government alleges that Linda Schneider was involved with the billing aspects, it fails: (1) to provide any factual support that Linda Schneider actually submitted bills to Medicare/Medicaid, (2) to provide any factual support that she actually changed the codes on bills submitted to Medicare/Medicaid; (3) to provide any factual support that she instructed anyone to submit false bills to Medicare/Medicaid; and (4) to provide any names of people who were allegedly instructed to submit false information to Medicare/Medicaid and the name of which defendant that allegedly made such instructions.

Primarily, the government seems to rest the majority of its health care fraud counts on unverified statistics. Indeed the government points out that the majority of the Clinic's billings were under the code 99213. (Indictment ¶44). However, these allegations do not address the

MEORANDUM IN SUPPORT OF JOINT MOTION FOR A BILL OF PARTICULARS

intent. The allegations are simply the defendants owned the clinic; the government believe that improper codes were provided to Medicare/Medicaid; and because the defendants owned the clinic (which is a LLC), they must have intended to defraud. If the government does not have specific facts of specific acts by *each* individual defendant (or an express agreement between the defendants) to specifically defraud the government, these counts will have to be dismissed.

As a further example, the government alleges that 99213 is a "safe code" that would not trigger scrutiny. (Indictment 41 (i))  However, the government fails to allege that either defendant knew that codes 99214 and 99215 would trigger increased scrutiny. Thus, this fact is irrelevant (see Memorandum in Support of Motion to Strike Surplusage), unless the government alleges in particularity the facts that it contends it possess that shows that the defendants are aware of this fact. To the extent that the government has facts that could reasonably be interpreted to infer intent, the government must specify the acts so that the defendants can respond and defend themselves. However, as it stands, the defendants stand dumbfounded as to what it is that *they actually did* to intentionally defraud the government*.*  Thus, the defendants needs to know how the government's allegations translate into the fact that either defendant submitted any bill, had knowledge of how the bills were submitted, how coding was being sent in, and knew that the conduct was unlawful.

Furthermore, defendants cannot defend against allegations regarding phantom patients. There are over 10,400 patients that have visited the clinic and defendants cannot determine who the "many" patients were that were allegedly rushed in their visits and were allegedly treated for purposes for other than a "legitimate medical purposes". (Indictment ¶91).  Indeed, the government claims that only 63% of patients were billed for pain management services. (Indictment ¶44)  The government often alleges that "the defendants" treated "patients" certain ways. Additionally, in regards to the health care fraud counts, the government has produced over 180,000 claims that have been submitted on behalf of patients. Defendants cannot be expected to sift through 10,400 patient records (especially before a February 2009 trial date) in order to

guess which patients that the government is referring to in the indictment. (See e.g., Indictment ¶5(how many patients did Dr. Schneider allegedly countersign)  Along the same line, the defendants cannot be forced to guess which of the 180,000+ claims that were submitted were allegedly up-coded and which claims that the defendants actually submitted or ordered to be submitted.  Thus, for these reasons, the defendants request the following Bill of Particulars.

**III. Bill of Particulars**

In order to correct these and other deficiencies, the defendants request that the Court require the government to provide answers to the following questions:

1. Describe with particularity the "many" patients that waited as many as 3 to 4 hours for rushed visits lasting only long enough for a provider to write a prescription and the dates and places when Defendant Linda Schneider rushed such patients.

2. Identify every prescription that Dr. Schneider allegedly countersigned that was not for a legitimate medical purpose.

3. Describe with particularity the dates and places when Defendant Linda Schneider often prioritized which patients would be seen by the type of insurance the patients had and the identity of such patients.

4. Describe with particularity the dates and places at which Dr. Schneider and Linda Schneider allegedly conspired, combined and agreed with each other to violate the crimes charged, as well as the names of person or persons present or listening.

5. Describe with particularity the specific conduct purporting to show that Dr. Schneider and Linda Schneider allegedly conspired, combined and agreed with each other to violate the crimes charged.

6. Identify each fee ticket that Dr. Schneider changed and the dates that he allegedly changed such fee ticket.

7. Identify each fee ticket that Linda Schneider changed and the dates that she allegedly changed such fee ticket.

8. Identify each health care provider that Dr. Schneider instructed to provide a higher-paying office visit even though the provider had not provided such service.

9. Identify each "checklist" that was completed by Dr. Schneider that contained false information.

10. Identify each "checklist" that was completed by Linda Schneider that contained false information.

11. Identify the source of the "well-established principle in the health care industry that if a service is not documented, it did not happen, and is therefore not reimbursable."

12. Identify each "statistically valid random sample[]" of patient files that was conducted.

13. Identify each patient whose patient's medical records or "charts" are missing, or the charts are missing key documentation.

14. Identify every patient that Dr. Schneider deprived of "intangible rights to honest services by seeking payments from patients for services that were not within the bounds of professional medical practice" and identify how each service was outside such bounds.

15. Identify each document that Dr. Schneider falsified in support of claims to Health Care Benefit Programs.

16. Identify each document that Dr. Schneider allegedly instructed a person to falsify in support of claims to Health Care Benefit Programs.

17. Identify each document that Linda Schneider allegedly falsified in support of claims to Health Care Benefit Programs.

18. Identify each document that Linda Schneider allegedly instructed a person to falsify in support of claims to Health Care Benefit Programs.

19. Identify each document, patient signatures, and/or referrals that Dr. Schneider allegedly forged.

20. Identify each document, patient signatures, and/or referrals that Dr. Schneider allegedly instructed someone to forge.

21. Identify each document, patient signatures, and/or referrals that Linda Schneider allegedly forged.

22. Identify each document, patient signatures, and/or referrals that Linda Schneider allegedly instructed others to forge.

23. Identify the providers to whom Linda Schneider allegedly instructed not write "chart not available" in progress notes, and further instructed Clinic providers and other staff to not write in the chart that the purpose of the visit was "med refills" and the dates that these statements were allegedly made.

24. Identify each health care provider that Linda Schneider instructed to provide a higher-paying office visit even though the provider had not provided such service.

25. Identify each claim that Dr. Schneider personally submitted to Health Care Benefit Programs.

26. Identify each claim that Dr. Schneider expressly instructed a person to submit to Health Care Benefit Programs.

27. Identify each claim that Linda Schneider personally submitted to Health Care Benefit Programs.

28. Identify each claim that Linda Schneider instructed a person to submit to Health Care Benefit Programs.

29. Identify any monies from patients that Dr. Schneider received directly and not through compensation from the Schneider Medical clinic.

30. Identify any monies from patients that Linda Schneider received directly and not through compensation from the Schneider Medical clinic.

31. Identify each action that Dr. Schneider took, or instructed someone to take, in order to conceal the source of his or his family's assets and place the assets outside the government's reach.

32. Identify each action that Linda Schneider took, or instructed someone to take, in order to conceal the source of his or his family's assets and place the assets outside the government's reach.

33. Identify each action that Dr. Schneider took, or instructed someone to take, in order to obstruct the investigation of the Clinic's practices and how he instructed an employee to withhold information responsive to a federal subpoena; asked a real estate agent to destroy records regarding the real estate listing for the sale of the Clinic; and attempted to hide assets by transferring them to third parties and identify the places and dates that such actions took place.

MEORANDUM IN SUPPORT OF JOINT MOTION FOR A BILL OF PARTICULARS

34. Identify each action that Linda Schneider took, or instructed someone to take, in order to obstruct the investigation of the Clinic's practices, and how she instructed an employee to withhold information responsive to a federal subpoena; asked a real estate agent to destroy records regarding the real estate listing for the sale of the Clinic; and attempted to hide assets by transferring them to third parties and identify the places and dates that such actions took place.

35. Identify which patients were seen on days when Dr. Schneider or other providers were not present at the clinic

36. Identify each claim that was submitted for prescribing medications that were not provided for legitimate medical purposes.

37. Identify all claims for laboratory services that the clinic did not provide.

38. Identify all claims for laboratory services that the clinic did not provide that Dr. Schneider submitted.

39. Identify all claims for laboratory services that the clinic did not provide that Linda Schneider submitted.

40. Identify each patient that you allege was a "lock-in" patient.

41. Identify each patient that Dr. Schneider directly caused to become addicted to prescription drugs for which the patients had to seek treatment

42. Identify each patient that Linda Schneider directly caused to become addicted to prescription drugs for which the patients had to seek treatment

43. Identify each express sign of abuse and addiction that you contend Patricia G exhibited while being treated at the Schneider Medical Clinic.

44. Identify each express sign of abuse and addiction that you contend Patricia G exhibited and that Dr. Schneider was aware of, while being treated at the Schneider Medical Clinic.

45. Identify any facts that support any contention that Dr. Schneider was aware that Patricia G allegedly visited a hospital on June 16, 2005 prior to approving a prescription on June 18, 2005.

-10-
MEORANDUM IN SUPPORT OF JOINT MOTION FOR A BILL OF PARTICULARS

46. Identify any facts that support the contention that the Physician Assistant was aware that Patricia G allegedly visited a hospital on June 16, 2005 prior to approving a prescription on June 18, 2005.

47. Identify how Eric T. was supposed to show an improvement in pain if the cause of the pain was untreatable.

48. Identify each express sign of abuse and addiction that you contend Eric T exhibited and that Dr. Schneider was aware of, while being treated at the Schneider Medical Clinic.

49. Identify each express sign of abuse and addiction that you contend Robin G exhibited and that Dr. Schneider was aware of, while being treated at the Schneider Medical Clinic.

50. Identify each express sign of abuse and addiction that you contend each individual in Count 5 exhibited and that Dr. Schneider was aware of, while being treated at the Schneider Medical Clinic.

51. Identify how the physical examinations by Dr. Schneider of Robin G. were "minimal".

52. Identify how the historical information obtained by Dr. Schneider of Robin G was "minimal".

53. Identify all individuals that Dr. Schneider and/or Linda Schneider died of an accidental drug overdose.

54. Identify each person listed in paragraph 81 that Dr. Schneider prescribed narcotics to.

55. Identify how the prescription of each person listed in paragraph 81 was issued for a purpose other than "a legitimate medical purpose and beyond the bounds of professional medical Practice".

56. Identify each minor that Dr. Schneider issued Actiq or other Fentanyl to.

57. Identify which specific documents were "false and fraudulent," and provide an explanation as to why they were "false and fraudulent," and what about them was "false or fraudulent."

58. With regard to the allegation of the conspiracy, indicate the following:

    i. The exact language, word, or words allegedly used by the Defendants that allegedly indicated, or tended to indicate, that they

-11-

MEORANDUM IN SUPPORT OF JOINT MOTION FOR A BILL OF PARTICULARS

willfully and knowingly agreed to defraud the government or to deal drugs as conventionally understood;

ii. The names and addresses of the persons or persons present or listening when the Defendants allegedly committed the crimes charged;

iii. If the Government alleges that any other telephone calls, meetings, conferences, or other communications between the named Defendants and the co-conspirators, whether or not indicted, or co-defendants occurred in the creation or furtherance of the alleged agreement, combination or conspiracy, please describe each such telephone call, meeting conference or other communication setting forth as to each:

    (a) the date thereof;

    (b) the parties thereto;

    (c) the substance and purpose of the communications; and

    (d) the location of each of the parties to the communication at the time thereof.

iv. To the extent that the Government bases the existence of a conspiracy upon any written document, identify all documents constituting or embodying the agreement, specifying the dates of and parties to all documents.

The government will in no way be prejudiced if required to provide a bill of particulars, as the defendants are simply seeking information which the government should already have in its possession, and which it would be obligated to prove at trial. Moreover, the government has already demonstrated that it has unlimited resources to prosecute this case. If it is willing to commit an army of federal agents to round up the people and documents which supposedly support the indictment, then surely it can devote sufficient resources to describe the information that it has collected with enough particularity to allow the defendants to understand the charges that have been levied against them, and provide him an opportunity to prepare to defend themselves at trial.

**III.   Conclusion**

MEORANDUM IN SUPPORT OF JOINT MOTION FOR A BILL OF PARTICULARS

For the reasons set forth in this Memorandum, the defendants request that requires the government to produce a Bill of Particulars that will allow them to defend the charges against them.

Respectfully submitted,

s/ Lawrence W. Williamson, Jr.
Lawrence W. Williamson, Jr. #21282
**Williamson Law Firm, LLC**
**Attorney and Counselor at Law**
816 Ann Ave
Kansas City, Kansas  66101
Telephone:  (913) 871-7060
Facsimile:   (913) 535-0736
E: l.williamson@williamsonfirm.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was filed via CM/ECF causing delivery to:

Tanya J. Treadway
Assistant United States Attorney
290 U.S. Courthouse
444 S.E. Quincy
Topeka, KS 66683-3592

this May 16, 2008.

s/ Lawrence W. Williamson, Jr.
Lawrence W. Williamson