**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br>vs.<br>STEPHEN J. SCHNEIDER<br>    and<br>LINDA K. SCHNEIDER, a/k/a<br>LINDA ATTERBURY,<br>d/b/a/ SCHNEIDER MEDICAL CLINIC,<br><br>    Defendants. | Case No.: 07-10234-WEB<br><br>**DEFENDANTS' JOINT MOTION TO RECONSIDER THE COURT'S ORDER DENYING THE MOTION TO EXCLUDE EXPERT TESTIMONY OR HOLD A DAUBERT HEARING AND INCORPORATED MEMORANDUM OF LAW** |

**DEFENDANTS' JOINT MOTION TO RECONSIDER THE COURT'S ORDER
DENYING THE MOTION TO EXCLUDE EXPERT TESTIMONY OR HOLD A
DAUBERT HEARING AND INCORPORATED MEMORANDUM OF LAW**

**INTRODUCTION**

This Motion to Reconsider is brought to urge the Court to reconsider its decision denying the exclusion of the government's proposed expert testimony and denying the request for a *Daubert* hearing. The defendants submit this motion to clarify certain points of fact and law in their original Motion. The Court noted that none of the authorities were attached as exhibits thereto. The Defendants therefore attach these authorities as exhibits to the instant motion.[1]

**ARGUMENT**

**I.     Testimony Regarding Patient Deaths**

There is one central question in this case with respect to patient deaths: whether the drugs prescribed to the deceased patients caused or contributed to their deaths.

---
[1]     The attached Addendum provides a list of the exhibits.

1

Defendants have set forth, in detail, the reasons why the government's proposed testimony regarding the cause of patient deaths fails to meet the requirements of *Daubert* and Fed. R. Evid. 702. The Court noted these reasons in its Order. Doc. 209, filed 11/5/08, at 7.

The Court based its rejection of the defendants' argument in part on the fact "defendants' expert has reached, or will reach, his opinion by utilizing the same method as Dr. Rohrig."[2] *Id.* at 8. The Court then quoted *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2004), for the proposition that courts must focus on the methods used in reaching conclusions, rather than the conclusions themselves. *Id.* The defendants respectfully submit that this was a misapplication of the principle.

There is an important, qualitative distinction between the nature of the conclusion of the defendants' expert and that of the government's experts. The defendants' expert will opine that in patients with life-threatening heart disease, it is impossible to determine whether the cause of death was the heart disease itself or some other cause, such as a drug overdose. See generally Defendants' Motion to Exclude the Government's Expert Testimony, Doc. 188, filed 10/3/08, at 5-12. On the other hand, the government's experts purport to be able to determine the cause of death merely by noting a specific level of medication evident in the decedent's blood or urine.

That a methodology is reliable for some purpose does not necessarily mean that it

---

[2] The defendants do not object to Dr. Rohrig's qualifications as a toxicologist, but object to his testifying regarding the cause of death. Dr. Rohrig is not a pathologist and is not an MD. Even if he reviewed pathology slides, he is not qualified to testify about such slides. Unlike Dr. Rohrig, Dr. Karch is an MD who specializes in cardiac pathology. Dr. Rohrig, unlike Dr. Karch, is not qualified to provide a differential diagnosis. Furthermore, as previously noted in the defendants' previous filings on this issue, Dr. Rohrig has admitted, in peer-reviewed scientific literature, that his methodology is not reliable.

is reliable for <u>all</u> purposes.  The Supreme Court explicitly recognized this, and held in *Daubert* that the methodology must be reliable, <u>and</u> must be reliably applied to the facts at issue. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 591 (1993); See also Fed. R. Evid. 702.  In this case, the question is whether the defendant's prescriptions were responsible for the deaths of each of these patients.  Defendants contend that medical science does not provide a means to answer this question with any reliability.[3] Thus, while courts must focus on the methodology, rather than the ultimate conclusion, courts must also consider the conclusion in order to determine whether a methodology is indeed reliable for the very purpose of reaching that conclusion. In this case, the testimony of the government's witnesses cannot meet *Daubert*'s reliability requirement.

The Court termed this dispute a "battle of the experts," in which the jury must determine how much weight to give experts' opinions.  The Court failed to analyze the proposed testimony under any of the *Daubert* factors.  The only "scientific opinion" on cause of death will be offered by Dr. Karch, while the government's expert "opinions" will be little more than guesses veiled by a thin veneer of scientific jargon.  If medical science does not provide an answer to the question of cause of death, then the factual determination of cause of death (and hence defendant's responsibility for these deaths) must not be blithely given over to a lay jury for determination.  By definition, if there is reasonable doubt in the science, (and here the doubt is total) a jury cannot, as a matter of law, determine the cause of death beyond a reasonable doubt. Certainly a jury can be led

---

[3] The defendants attach as an exhibit a recent, peer-reviewed article that, like Dr. Rohrig's articles, indicates that post-mortem drug concentrations are not indicative of drug-concentrations prior to death.  Unlike these articles, the Baselt treatise is not peer-reviewed, and was initially self-published.  That Dr. Rohrig claims to have relied on this treatise does not make it authoritative or generally accepted.  Unlike the Baselt treatise, Dr. Karch's textbook (now in its fourth edition) is peer-reviewed and authoritative.


astray and prejudiced by testimony that has no basis in science. But this is precisely what the faithful application of Fed. R. Evid. 702 prevents.

Furthermore, a closely related issue is whether such testimony is also unduly prejudicial pursuant to Rule 403. Defendants respectfully submit that in light of all the issues raised with respect to the determination of the cause of death, the prejudice of expert testimony purporting to determine the toxicological cause outweighs any ostensible "helpfulness" of such testimony to a jury.[4]

While it is not the defendants' burden to show a lack of reliability, the defendants have raised significant questions about the government's proposed expert testimony such that the government's evidence should be excluded. At the very least, a *Daubert* hearing is warranted and necessary.

**II.     The Testimony of Drs. Parran and Jorgensen**

Defendants do not take issue with Drs. Parran and Jorgensen's "methodology" of reviewing patient charts. Defendants take issue with the fact that Drs. Parran and Jorgensen assert that they can apply the "red flags" to Dr. Schneider's prescribing and thereby draw meaningful conclusions as to its "legitimacy." The defendants object to the fact that these experts seek to represent to the jury that "red flags" provide any reliable information about a physician's prescribing, and that they may be used by an expert in

---

[4] The Court also noted that the defendants have failed to cite any authorities showing that Dr. Rohrig's opinions are not reliable. In fact, the defendants cited Dr. Rohrig's own articles, which state that post-mortem drug levels of the types at issue in this case do not accurately reflect the levels in living subjects. The article cited is attached hereto as exhibit 2. The Court also raised a number of questions regarding the defendants' assertions about determining the cause of death, yet the exploration of these issues is precisely the function of a *Daubert* hearing, which has been vigorously sought.

reaching any meaningful, reliable conclusion about patients, let alone about Dr. Schneider's medical decisions and judgment.[5] The government experts' use of the "red flags" gives the distinct and misleading impression that there is in fact a "methodology" to applying them. There is not. Merely purporting to apply them does not constitute a methodology. Rather, the rote utilization of "red flags" as a method for declaring a physician's conduct as criminal is, at best, anecdotal.

The scientific literature makes clear that the red flags are simply a set of ambiguous factors.[6] The Court's decision to allow such testimony is based on the court's misimpression that such testimony was previously held admissible. Doc. 209, at 11-14. However, the lack of reliability of the red flags and their inadmissibility pursuant to *Daubert* and Fed. R. Evid. 702 was not at issue in any of the cases cited by the Court. Furthermore, the failure of other defendants to raise legal issues in previous cases does not make these arguments invalid here. Additionally, the Court did not analyze the red flags with respect to any of the factors set forth in *Daubert*, with the possible exception of "general acceptance."

The Court held, with respect to the testimony of these witnesses that because such testimony is "consistent" with those of other experts testifying in similar cases, "defendants have failed to show how that methodology is unreliable." Doc. 209, at 11. This constitutes an improper burden-shifting to the defendants since it is the proponent of

---

[5] The defendants continue to object to Drs. Parran and Jorgensen's use of the statutory terms. This testimony constitutes an impermissible legal conclusion, and could be phrased countless other ways so as not to invade the province of the jury. That Dr. Parran was allowed to get away with such testimony in other cases does not mean that it is proper in this case. Indeed, in *Chube*, the 7th Circuit particularly noted that there was a lack of contemporaneous objection by trial counsel.

[6] The defendants attach the relevant articles as exhibits 3-5.

the testimony that must show that the evidence is reliable by a preponderance of the evidence. Fed. R. Evid. 702, *Advisory Committee Note to 2000 Amendments*. Here, the Court has instead placed the burden on the defendants to *disprove* reliability, rather than on the government to show reliability. The defendants respectfully submit that even with the shifted burden, defendants have demonstrated a sufficient a lack of reliability such that the government's witnesses should be examined in a *Daubert* hearing, where the lack of methodology and reliability will be proved.

### III.   Fraud Claims

The defendants' do not take issue with the government's "methodology" of looking at claims and patient files in order to determine whether the defendants up-coded services. Indeed, it would be impossible to conduct a fraud investigation otherwise. It is the details of the government's review that the defendants take issue with.

The defendants have pointed to several facts that cast serious doubt on the government's audits. As the Court acknowledged, the defendants pointed out that the government did not appear to find any cases of under-billing. Doc. 209, at 15. The likelihood that this occurred randomly is infinitesimal and therefore casts serious doubt on the representative nature of the sample. Furthermore, the findings of the reviews were not noted consistently. Doc. 188, at 24. These factors call into question the reliability of the government's methodology, and warrant a *Daubert* hearing for the purpose of questioning the government's witnesses regarding these methodologies. If the government's methodologies are substantially flawed, the evidence must not be presented to a jury, in precise conformity with *Daubert* and Fed. R. Evid. 702.

## CONCLUSION

For all of the foregoing reasons, the Court should reconsider its denial of defendants' motion and convene a *Daubert* hearing regarding the above-discussed expert testimony.

Respectfully Submitted,

Kevin P. Byers Co., L.P.A.

By:  s/Kevin P. Byers
Kevin P. Byers
OSB # 0040253
107 South High Street, Suite 400
Columbus, Ohio 43215-3456
Telephone 614.228.6283
Facsimile 614.228.6425
Email Kevin@KPByersLaw.com

Eugene V. Gorokhov, PLLC

By:  s/Eugene V. Gorokhov
Eugene V. Gorokhov
VSB # 73582
1800 Wilson Blvd., Suite 12
Arlington, Virginia 22201-6609
Telephone 703.310.7587
Facsimile 267.390.7587
Email eugene@evgpllc.com

The Law Offices of Uzo L. Ohaebosim

By: s/Uzo L. Ohaebosim
510 N. Topeka
Wichita, KS. 67214
Phone: 316.633.4108
Fax: 316.261.5404
Email u.ohaebosim@swolawfirm.com

Trial Co-counsel for Defendant

Linda K. Atterbury

For defendant Stephen J. Schneider
Williamson Law Firm, LLC

By: _s/ Lawrence W. Williamson, Jr.
Lawrence W. Williamson
816 Ann Avenue
Kansas City, Kansas 66101
Telephone 913.871.7060
Facsimile 913.535.0736
Email L.Williamson@Williamsonfirm.com

## CERTIFICATE OF SERVICE

I certify that on November 16, 2008 I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to:

Tanya J. Treadway
Assistant United States Attorney
290 U.S. Courthouse
444 S.E. Quincy
Topeka, KS 66683-3592


s/Uzo L. Ohaebosim

Co-counsel for defendant Linda K. Atterbury