1          IN THE UNITED STATES DISTRICT COURT

2

3                    DISTRICT OF KANSAS

4

UNITED STATES OF AMERICA,            )
5                                     )
                           Plaintiff ) District Court
6                                     ) Case No. 07-10234
vs.                                   )
7                                     )
STEPHEN J. SCHNEIDER and              )
8  LINDA K. SCHNEIDER,                )
                                      )
9                          Defendants.)
   _____

10

11

12

                    **TRANSCRIPT OF HEARING**
13

          On the 12th day of January, 2009, came on to be
14 heard Status Conference and Motions Hearing in the
   above-entitled and numbered cause before the HONORABLE
15 MONTI L. BELOT, Judge of the United States District
   Court for the District of Kansas, Sitting in Wichita.

16

17

18

19 APPEARANCES

20      The Plaintiff appeared by and through Ms. Tanya
   Treadway and Mr. Alan Metzger;
21
        The Defendant Stephen Schneider appeared by and
22 through Mr. Lawrence Williamson;

23      The Defendant Linda Schneider appeared by and
   through Mr. Kevin Byers, Mr. Eugene Gorokhov, Mr. David
24 Leon and Mr. Uzo Ohaebosim.

25

```
 1                    (Beginning at 2:45 p.m. January
 2                    12, 2009, the following
 3                    proceedings were had.)
 4          THE COURT:  Now, Judge Bostwick has already
 5    been out to arraign the parties on the Superseding
 6    Indictment so the record reflects the appearances.
 7    There are going to be a few things that I'm going to
 8    take up here at the outset, procedural matters.  And
 9    then we'll proceed to try to work through some of the
10    matters that we have to resolve today.
11          All right.  Now, I wrote you all a letter on
12    January 6 filed at Docket 259 and I said counsel shall
13    definitively state which Defendant they are now
14    representing and will be representing at trial.  And I
15    see one, two, three, four lawyers here and two
16    Defendants.  And I know Mr. Williamson represents
17    Mr. Schneider.  But are the other lawyers here for just
18    Mrs. Schneider?  Speak up.
19          MR. GOROKHOV:  We are, Your Honor.
20          THE COURT:  All right.  And is that the way
21    it's going to be for purposes of trial?  Mr. Williamson
22    appears for Mr. Schneider and the three of you plus Mr.
23    Byers appear for Mrs. Schneider?
24          MR. GOROKHOV:  As of now, yes, Your Honor; but
25    we did have a question for the court as to --
```

1           THE COURT:  Yes, sir.

2           MR. GOROKHOV:  -- whether there would be any

3     limitations on who can question witnesses and how many

4     attorneys per side would be allowed to question each

5     witness.

6           THE COURT:  Well, I don't know.  What do you

7     have in mind?  That Mr. Williamson would question the

8     Government's witnesses and then all three or four of the

9     lawyers representing Mrs. Schneider would have a turn at

10    'em?

11          MR. GOROKHOV:  No, Your Honor.  We were

12    proceeding on the assumption that one attorney per side

13    would question each witness.

14          THE COURT:  I think that's a proper

15    assumption.  But what I need to -- and you may sit down

16    if you wish Mr. Gorokhov.

17          MR. GOROKHOV:  Thank you, Your Honor.

18          THE COURT:  What I'm trying to get to here is

19    simply that we have an understanding of how that's going

20    to be done.  When you say one attorney per side, do you

21    mean that let's say the first witness gets up, that only

22    one of you, that is, Mr. Williamson, for example, will

23    question that Government witness; or do you mean that

24    Mr. Williamson and one of the Defendants lawyers,

25    Mrs. Schneider's lawyers, will question that witness?

1          MR. GOROKHOV:  What we had in mind, Your

2     Honor, was Mr. Williamson would question the witness and

3     then one of Mrs. Schneider's lawyers would question.

4          THE COURT:  I don't have any problem with

5     that.  You're separate Defendants.  But, obviously, I'm

6     not going to have a situation where you're asking

7     repetitive or duplicative questions.  I think you all --

8     you all are real pros, you understand that.  So you're

9     going to kind of need to work that out ahead of time and

10    I'm sure you will.  Now, the same question as to the

11    Government.  How is the Government going to handle all

12    this?

13         MS. TREADWAY:  Judge, we've split up the

14    witnesses and it's our practice that the sponsoring

15    attorney is the one that then objects to the

16    cross-examination.  There's not going to be two people

17    popping up for objections.  And we would appreciate the

18    same from the Defendants.

19         THE COURT:  That will be the way they'll

20    handle it.

21         MS. TREADWAY:  But we do not anticipate tag-

22    teaming our witnesses.

23         THE COURT:  Well, I didn't either, and I

24    didn't think the Defendants' counsel thought that.

25      Now, another thing that I want to -- I'm going to

Case 6:07-cr-10234-MLB   Document 331   Filed 02/09/09   Page 5 of 53

5

1   discuss later on today but I might forget it.  When we

2   get around to discussing witnesses, I want counsel for

3   the Government to tell defense counsel by the end of the

4   day what witnesses counsel expects to call the following

5   day so that defense counsel can prepare.  And I expect

6   the same from defense counsel, assuming the Defendants

7   intend to put on defenses, and that's up to them.  They

8   don't have to.  But I don't want situations where people

9   are unprepared.  It's a big waste of my time and the

10  jury's time.  And it will be very helpful if you will

11  follow that rule.

12       Now, it would also be helpful if two of the counsel

13  representing Mrs. Schneider would sit back -- the

14  marshals prefer, and I agree, that two of the counsel

15  sit back in the front row today.  We may not -- we may

16  change that at the time of trial, I don't know, but you

17  decide who's going to do that and please rearrange

18  yourselves accordingly.  By the way, Mr. Leon, it's nice

19  to see you here.

20            MR. LEON:  Good to see you, Your Honor.

21            THE COURT:  All right.  Now, another matter

22  that we need to take up is the matter of going out to

23  the clinic tomorrow.  My initial question of Defendants'

24  counsel is since you all have identified at least at

25  this point your exhibits, why do you need to go to the

Cindy L. Schwemmer, Certified Shorthand Reporter
United States District Court, Wichita, Kansas

1    clinic tomorrow.  Mr. Williamson?

2              MR. WILLIAMSON:  Would you prefer me to

3    address the Court from the table or podium?

4              THE COURT:  Sure.  You don't need to --

5              MR. WILLIAMSON:  Well, Judge, if you recall,

6    and I think it's pretty clear in the pleadings, that our

7    access to the clinic was limited I believe starting

8    January 2nd.  Am I correct on that?  December 31st.  Our

9    exhibits were due January 5th.  Well, we were in the

10   process of completing our preparation for exhibits.  The

11   exhibits that we turned in are not the entire list of

12   exhibits that we would like to present to the jury in

13   order to support our defense.

14             THE COURT:  All right.

15             MR. WILLIAMSON:  So we were -- we had a time

16   table set forth as to when we intended to have that job

17   completed and because we were interrupted, we weren't

18   able to complete that.  We did not want to withhold the

19   exhibits that we already had.

20             THE COURT:  I don't want -- I'm sure they

21   don't either.  I was curious regarding your statement

22   that you were under the impression that you'd have

23   access to the clinic through the trial.  Who gave you

24   that information?  I didn't.

25             MR. WILLIAMSON:  Make sure you understood that

1    I was under the impression.  I don't think anybody made

2    the express representation to me.  And if I understand

3    property law, the seizure law and the order that you

4    provided, none of that speaks to the records or the non-

5    fixtures to the property so --

6              THE COURT:  No, and that's a subject I'm going

7    to bring up in just a moment.  But what it did speak to

8    was that when I signed that order, no one had ever

9    objected to the seizure of the property, and the

10   marshals had to take it over and close it.

11             MR. WILLIAMSON:  Well, frankly, nobody had

12   notice of that, Judge.  Judge, Brian Grace is the

13   attorney listed on the motion that was filed.

14             THE COURT:  Well, your client is represented

15   by Mr. Grace, isn't he?

16             MR. WILLIAMSON:  No.

17             THE COURT:  Who is he -- who does he

18   represent?

19             MR. WILLIAMSON:  Nobody.  And we haven't been

20   able to find --

21             THE COURT:  He doesn't represent anybody?

22             MR. WILLIAMSON:  Let me clarify.  Nobody in

23   this courtroom.  Let me say that.  Nobody here.  And we

24   tested his e-mail address and it came back undeliverable

25   under two different addresses.  Nobody knew about the

1    order until I believe it was filed in the newspaper.  I

2    don't represent the clinic.  Mr. Gorokhov doesn't

3    represent the clinic.  For me, my goal has been prepare

4    for this trial so my client can be found not guilty and

5    I just -- and, again, from my point of view, if they

6    want to seize the property and if you can auction it and

7    it will give fair market value, it doesn't harm anybody.

8    The only problem is we have to be able to prepare for

9    our defense.

10             THE COURT:  I'm going to let you do that and I

11   expect that.  Now, the marshals tell me that there are

12   drugs, money and uncanceled checks and credit cards at

13   the property.  And what they want to do with the drugs

14   is to turn those drugs over to the DEA.  The money,

15   cash, whatever it is, about $50, the credit cards, and

16   the cancelled checks, they would like to turn over to

17   the Defendants in this case.  Is there any objection to

18   that?

19             MR. WILLIAMSON:  May I confer?

20                      (Off-the-record discussion.)

21             MR. WILLIAMSON:  Judge, I don't think there's

22   an objection.  I would like to clarify.  The drugs I

23   believe are samples in a sample room that has been under

24   lock and key.

25             THE COURT:  Well, but here's the thing.  The

1    marshals don't want to have any responsibility for the

2    drugs.  The Defendants no longer have any interest in

3    the drugs.  You presumably, as you say, you want the

4    place to be sold, which means that real estate agents

5    are going to be coming through, et cetera; and, of

6    course, there's also furniture and that sort of thing in

7    there, but that's something you can work out with

8    Ms. Gurney.  But as far as drugs are concerned, we need

9    to get those out of there.

10         MR. WILLIAMSON:  And we don't have an

11    objection to that, Judge.

12         THE COURT:  All right.  The marshals will turn

13    those over to DEA.  And then the money, the credit

14    cards, the uncanceled checks, will be surrendered to

15    you, Mr. Williamson.

16         MR. WILLIAMSON:  Okay.

17         THE COURT:  And you can sign for them.  How

18    about that?

19         MR. WILLIAMSON:  All right, Judge.  Thank you.

20         THE COURT:  All right.  Now, tell me what the

21    situation is -- you've rented some sort of a high speed

22    copier; is that right?

23         MR. WILLIAMSON:  We've rented two high speed

24    document scanners.  I don't know if the Court's aware,

25    but both parties, government and the defense, have

1    exchanged documents electronically.  It's a lot more

2    efficient, saves the environment, all of that good

3    stuff.  And we want to take advantage of that.  What

4    we've done is we've rented two high speed scanners so

5    that we can make sure that as long as we're able to get

6    it set up, properly tested and ready to go, that we can

7    be in and out in the time that we set forth for court.

8         THE COURT:  Have you made arrangements to have

9    those delivered today or something?

10         MR. WILLIAMSON:  I believe the arrangements

11   have been made to have them delivered.  We just have to

12   get access to get them delivered.

13         THE COURT:  Well, here's what I'm going to do.

14   The marshals will work with you on this.  You've made

15   arrangements to have them delivered today, is that what

16   you're saying?

17         MR. WILLIAMSON:  That's correct.

18         THE COURT:  The marshals will work with on you

19   that so that they can be delivered.  But I'm going to

20   restrict this to 8:30 to 5 tomorrow.  I think you ought

21   to be able to get your work done, if you've got two high

22   speed copiers in there, you ought to be able to copy

23   everything that's there.  If for some reason you can't

24   get it done by tomorrow afternoon, then Mr. Oberly,

25   Marshal Oberly will call me and we'll talk about it.

1              MR. WILLIAMSON:  Is he here today?

2              THE COURT:  He's right there.

3              MR. WILLIAMSON:  I knew the face, not the

4   name.

5              THE COURT:  Right.  Because he's in charge of

6   all of that.  And if there's -- I don't anticipate with

7   you guys any kind of a problem about what's to be

8   copied.  And you may take copies from the clinic.  I

9   think you all -- somebody, I don't know who, but it's

10  not up to me, should talk with Ms. Gurney or someone

11  from the Government about the furniture and those sorts

12  of things so that the property can be put in a condition

13  to get it sold.  That seems to me to be in everybody's

14  interest.  Okay.  But that, as they say, my dog is not

15  in that fight, yet.

16    Now, the only other thing I wanted to touch base

17  with you on about the records is you're going to copy

18  the records.  But the records themselves are going to be

19  left there.  Now, what's the status of having those

20  records stored, Mr. Williamson?  Because there's a

21  lawsuit up in Topeka that Judge Bostwick told me about

22  but I don't know anything about it.  It's a state

23  lawsuit.  We don't want to interfere with them.

24             MR. WILLIAMSON:  Well, let me just give you

25  the bottom line.  Nobody wants the responsibility to

1    handle these documents, everybody that we've contacted
2    as far as being a custodian, all the commercial
3    providers.  We made a decision to attempt to work with
4    the state government and I provided a couple of e-mails
5    in exchange and the provider that had been presented to
6    us from early on in the case says, no, we're not going
7    to touch them.  Then another conflict arose in regards
8    to a spouse of U.S. Attorney actually working there.
9             THE COURT:  Well, actually that's not a spouse
10    of an Assistant U.S. Attorney.  And he's no longer there
11    anyway.  He -- hasn't he --
12             MS. TREADWAY:  Yes.  I believe --
13             THE COURT:  He retired, hasn't he?
14             MS. TREADWAY:  They're referring to Mr. Rick
15    Easter and his wife and they're both retired and I don't
16    believe she's even associated with the facility any
17    longer.
18             MR. WILLIAMSON:  I'm representing what I was
19    told by the state.
20             THE COURT:  I read your e-mail and I know what
21    you were told.
22             MR. WILLIAMSON:  So we can't find anybody to
23    want to be a custodian.  With that stated, we can store
24    the records in a commercial storage facility,
25    temperature-controlled, so the documents won't, you

1      know, suffer any natural destruction.

2              THE COURT:  Deteriorate.

3              MR. WILLIAMSON:  We have that in place.  We

4      know the people that are willing to do that.  If we

5      could just make arrangements to get the original

6      documents out, we can get them out --

7              THE COURT:  Okay.  I just want you to move

8      ahead with that with all due deliberate speed because,

9      obviously, if somebody buys the building, they don't

10     want to be responsible for the records.

11             MR. WILLIAMSON:  That's correct.  And we

12     actually believe that having the records out would make

13     it easier to sell the clinic so we want to get them; but

14     we just don't want to do it in a manner where somebody

15     comes complaining to the court that we're doing

16     something with the records.

17             THE COURT:  They won't come complaining to me.

18     They'll come complaining to some poor judge in Shawnee

19     County.  All right.

20        Now, Judge Bostwick told me that somebody has an

21     objection to the Superseding Indictment.  Mr. Gorokhov.

22             MR. GOROKHOV:  That's correct, Judge, and I

23     speak on behalf of Dr. Schneider as well.  We object to

24     the Superseding Indictment coming at this late date.  I

25     believe the Superseding Indictment adds two new deaths

1   that weren't previously part of the first Superseding

2   Indictment and I believe we were at a hearing in April

3   and we said we would be prepared to go to trial on the

4   date that the court set, February 2nd, as long as the

5   Government did not supersede and the government stated

6   they did not intend to supersede at that time.

7           THE COURT:  I've received a letter but I don't

8   have it here in front of me.  Do you have a copy of that

9   letter that Ms. Treadway sent out detailing the changes?

10          MS. TREADWAY:  It was a chart of the

11  charges -- of the changes.

12          MR. GOROKHOV:  I don't have that with me, Your

13  Honor.

14          THE COURT:  Okay.  Here it is.  It's dated

15  December 17.  Have you seen this, Mr. Gorokhov?

16          MR. GOROKHOV:  I'm sure I've seen it, Your

17  Honor, I just don't have it with me and I believe

18  Mr. Williamson is trying to pull it up.

19          THE COURT:  I have a copy here.  Do you want

20  it?

21          MR. GOROKHOV:  Yes, please, Your Honor.  Might

22  I approach.

23          THE COURT:  Yes, sure.

24          MR. GOROKHOV:  Thank you.

25          THE COURT:  I'll have Rachael make you a copy.

1          MR. GOROKHOV:  Thank you, Your Honor.

2                    (Off-the-record.)

3          THE COURT:  Have you had an opportunity to

4    review that letter now, Mr. Gorokhov?

5          MR. GOROKHOV:  Your Honor, if I may just have

6    another moment.

7          THE COURT:  Yes, sir.

8                    (Off-the-record.)

9          MR. GOROKHOV:  Your Honor, I've had an

10   opportunity to review it now.

11         THE COURT:  Okay.  Your objection is the fact

12   that there have been two deaths added?

13         MR. GOROKHOV:  That's correct, Your Honor.

14         THE COURT:  What about all these other

15   additions?

16         MR. GOROKHOV:  These other issues are

17   relatively minor.  The main issue is the two added

18   deaths.

19         THE COURT:  All right.  I obviously have not

20   tried to compare these Indictments.  Are these two

21   additional -- is this just a situation where someone

22   previously listed in the Indictment has now died and

23   you're -- what are you doing here?

24         MS. TREADWAY:  There's actually one less

25   death, Judge.  The problem came in the fact that we had

1    distinguished between accidental versus suicidal deaths.

2    There were 58 accidental and two suicide deaths in the

3    First Superseding Indictment.  That adds up to 60.  And

4    there were 60 people listed in attachment 1.  There are

5    now 59 people listed in attachment 1 and 59 total

6    deaths.  We removed one individual from the list of

7    deceased individuals because that individual, Mark P,

8    who was the last death in 2005 in the First Superseding

9    Indictment, has now been ruled as an inconclusive cause

10   of death.  So we removed him because he no longer is an

11   accidental mixed drug intoxication death.  So there are

12   not any new deaths.  And I would have alerted the

13   Defendants had there been new deaths.  However, we did

14   alert the Defendants in our 404(b) notice that after

15   July, 2007, there were additional deaths.  Those are not

16   listed in the Indictment and they are not listed in

17   Attachment 1.  They are essentially not charged.  They

18   are later after the first Indictment came down and after

19   the first investigation.  Those deaths occurred from

20   July, 2007, through January of 2008.

21            THE COURT:  All right.  Mr. Gorokhov, now,

22   knowing that, do you have an objection?

23            MR. GOROKHOV:  Your Honor, if I may just have

24   one moment to compare the First Superseding Indictment

25   to the Second Superseding Indictment, I can address that

1    issue.

2                   (Off-the-record.)

3         MR. GOROKHOV:  With that, we don't have any

4    further objections.

5         THE COURT:  All right.  Then my understanding

6    is that Judge Bostwick has arraigned these Defendants on

7    the Second Superseding Indictment; they pled not guilty

8    and that's what we'll go to trial on.

9         Now I want to talk today about the following

10   motions which seem to be ripe.  The Motion to Reveal the

11   Deal, Dockets 245, 246; the Motion for Emergency

12   Hearing, which we're having, 248, 256; the Motion for an

13   Order to Show Cause, 256, 267; the Motion to Exclude

14   Experts, that's the Government's motion to exclude

15   experts, 254, 266; the sealed motion.  The Defendants'

16   objection to Government's exhibits.  I think that just

17   became ripe today and I don't think I'll take that up

18   today.  All of the other motions that have been filed up

19   to today have not had -- there has not been an

20   opportunity for responses so I don't see any point in

21   taking those up today.

22        With respect to Docket 245, the Motion to Reveal

23   the Deal.  I think -- my question about this is I have

24   already ordered months and months ago the Government to

25   disclose any *Brady* and *Giglio* information.  I think as

 1    Ms. Treadway pointed out, there was a separate, a

 2    subsequent order about that.  What was the point of

 3    filing this motion?  Is there something that I don't

 4    know about that's different than I've already ordered to

 5    be done?

 6              MR. GOROKHOV:  Your Honor, there's two

 7    reasons.  The first one is just to make sure that the

 8    record is clear.  We are filing it out of an abundance

 9    of caution.  The second point is the Government says in

10    its response that they'll provide those materials

11    sometime before the witness goes on the stand; and we

12    would request in an order today if we could get that

13    material in advance.  As the Court knows, there's an

14    enormous amount of witnesses in this case and getting

15    the material somewhat in advance rather than just merely

16    in time to use it would be I think more efficient for

17    the defense.

18              THE COURT:  What's your position on that,

19    Ms. Treadway?

20              MS. TREADWAY:  Well, Judge, except for a

21    couple of witnesses, we are still winnowing, and I

22    certainly don't want to burden the Defendants with

23    information that is not going to be used.  So once we

24    winnow our witnesses to those that we believe that we

25    are actually going to call in our case in chief, we will

1    deliver to them *Giglio* material.  Quite frankly, Judge,

2    there is almost no *Giglio* material.  A few of our

3    witnesses have past criminal histories.  But really

4    there just isn't a lot.  But rather than sending them

5    information which is going to be burdensome and not

6    helpful seemed to be inefficient and so once we

7    determine our witnesses, we will provide that evidence

8    to them.  And we've, on an ongoing basis, we've been

9    providing them *Brady* information that we have become

10   aware of over time.

11             THE COURT:  Is that satisfactory?

12             MR. GOROKHOV:  Yeah, that's satisfactory.  The

13   scenario we were afraid of, Your Honor, would be if we

14   get the stuff the minute before the witness goes on the

15   stand.

16             THE COURT:  That scenario would make me very

17   unhappy.

18             MR. GOROKHOV:  Thank you, Your Honor.

19             THE COURT:  All right.  I think that we have

20   covered the matter of access to the clinic.  Is there

21   anything further that we need to discuss on that issue?

22             MS. TREADWAY:  Judge, we would like to know

23   who is going to have access to the clinic because we

24   have obvious objections to some people.

25             THE COURT:  Mr. Williamson or somebody

1    responded to that and indicated there was two ladies, as

2    I recall.

3              MR. WILLIAMSON:  A lady and a gentleman.

4              MS. TREADWAY:  If it's Sean Hamm, Judge, we

5    would object to Mr. Hamm being present.  Mr. Hamm has

6    already lied to the United States Marshals and the

7    United States Marshals are not comfortable with him

8    being present because of those lies that were told them

9    the very first day they encountered him.  And therefore

10   we would ask the Defendants procure someone else in

11   addition to Ms. Behan.

12             THE COURT:  Well, he's one of them if he's

13   Albert Sean Hamm and Amy Behan.

14             MR. WILLIAMSON:  That's correct, Your Honor.

15   Just for the record, Mr. Hamm, as I understand it, I was

16   not there, did not lie to the marshals.  A), he was

17   instructed by us not to disclose anything to any law

18   enforcement officers without one of counsel being

19   present.

20             THE COURT:  Mr. Williamson, no one lies to one

21   of my marshals.  No matter what you told him.  He's not

22   your client.

23             MR. WILLIAMSON:  I understand that.

24             THE COURT:  And he did lie to my marshals.

25             MR. WILLIAMSON:  In what regard?

```
 1          THE COURT:  Just -- you won't be questioning
 2    me.  I've talked to my marshals.  He did not fully
 3    disclose why he was there.  That's not the issue.
 4    What's he going to be doing out there tomorrow?
 5          MR. WILLIAMSON:  I mean, honestly, he is the
 6    catalyst of helping us get these documents digitized and
 7    electronicized. (ph)  He won't be doing anything without
 8    our supervision, without us being there.
 9          THE COURT:  Which one -- are you going to be
10    there tomorrow?
11          MR. WILLIAMSON:  Yes.
12          THE COURT:  Is anybody going to be there for
13    Mrs. Schneider?
14          MR. WILLIAMSON:  I think we all --
15          MR. GOROKHOV:  I'll be there tomorrow, Your
16    Honor.
17          THE COURT:  I'm confident, I'm confident,
18    Ms. Treadway, that with these two lawyers there, there
19    will not be a problem.  So Mr. Whatever his name is,
20    Hamm, can be present.  I trust the lawyers to handle
21    this.  But that kind of -- that kind of advice was very
22    poorly given, Mr. Williamson, to tell somebody who's not
23    your client to not be candid with law enforcement.
24          MR. WILLIAMSON:  Let me clarify for the
25    record.  That's not what I said.  What I said was he was
```

1    instructed not to disclose anything without us present.

2    And, Judge, he has worked --

3              THE COURT:  It's the same, Mr. Williamson.

4    You weren't present.

5              MR. WILLIAMSON:  He is a lay person without

6    knowledge of work product and I don't want us having any

7    burden of disclosure of work product who is not us.  And

8    he was never instructed to lie and so I --

9              THE COURT:  I don't believe for a minute that

10   you instructed him to lie.  That's not my point.  I've

11   made my point.  It won't be a problem tomorrow because

12   you will be there.

13             MR. WILLIAMSON:  Absolutely, Judge.

14             THE COURT:  All right.  Now, let's see, as far

15   as all of this business about holding people in

16   contempt.  I'm not going to take up these motions to

17   hold people in contempt now.  If there's -- if I'm going

18   to hold anybody in contempt in this case for not doing

19   something, it will only be under two circumstances.

20   I'll take it up at the end of the case if I feel it's

21   appropriate.  Unless the contempt is a direct contempt

22   to me.  And if a direct contempt -- if there's a direct

23   contempt to me then I will take it up.  I don't think

24   there will be.  I don't anticipate any problems during

25   this trial that would give rise to any kind of a direct

1    contempt.

2        You all -- most of you all did not know Judge

3    Theis.  Judge Theis referred to matters like this as

4    rabbit trails.  And I don't like rabbit trails either.

5    It's a waste of time.

6        Now let's take up the Government's Motion to

7    Exclude the Defendants Experts or Limit the Experts.

8    Now, let me make a record on this because I've read all

9    this and I'm a little bit uncertain here the status of

10    the Defendants' experts.  I take it that Dr. McClave,

11    M-C-C-L-A-V-E, is going to be a witness.

12            MR. GOROKHOV:  That's correct, Your Honor.

13            THE COURT:  And is Ms. Cobuzzi, C-O-B-U-Z-Z-I,

14    still going to be a witness?

15            MR. GOROKHOV:  Ms. Cobuzzi is a witness, Your

16    Honor.

17            THE COURT:  All right.  And Dr. Karch, is he

18    going to be a witness?

19            MR. GOROKHOV:  Yes, Your Honor.

20            THE COURT:  And Dr. Cole, is he going to be a

21    witness?

22            MR. GOROKHOV:  Yes, Your Honor.

23            THE COURT:  What about Dr. Passick?

24            MR. GOROKHOV:  Yes, Your Honor.

25            THE COURT:  Why hasn't some kind of disclosure

1    with respect to Dr. Passick been made?

2              MR. GOROKHOV:  I believe there was a

3    disclosure, Your Honor.  It was in the -- it was in both

4    the initial and the amended disclosure.

5              THE COURT:  Well, maybe I just overlooked it.

6    I have the amended expert disclosures, that's the

7    Defendants' amended experts disclosure.  My docket is

8    254-3, filed January 1, 2009.  Have you all got a

9    different one?

10             MS. TREADWAY:  I believe that's the exhibit to

11   my motion, Judge.  But it should be the correct

12   disclosure.

13             THE COURT:  All right.  Consisting of 15

14   pages.  Is that what you have?

15             MR. GOROKHOV:  Your Honor, I don't have it

16   here.

17             THE COURT:  Well, have you got it,

18   Mr. Williamson?

19             MR. WILLIAMSON:  I'm looking at the first one

20   now, Judge.  I'm looking for the second one.

21             THE COURT:  I can't tell even when it was

22   served.

23             MS. TREADWAY:  That would have been the one

24   that came to us in September, Judge.

25             MR. GOROKHOV:  Your Honor, while I'm finding

1    the document, I believe that there is no issue with

2    disclosure of Dr. Passick because initially I think we

3    omitted it by mistake and I think we later turned it

4    over to the Government.  The Government's motion, I

5    believe, did not make any mention specifically of --

6              THE COURT:  Well, I understand that, but all

7    I'm trying to figure out here is what I'm dealing with

8    in terms of these written disclosures.  Now, I've got

9    the original disclosure which lists a Mr. Marion.  Is he

10   still going to be a witness?

11             MR. GOROKHOV:  No, he will not, Your Honor.

12             THE COURT:  So Mr. Marion is no longer a

13   witness.  And then in the original disclosure I see Dr.

14   Passick on Page 11.  So now we have Dr. Passick --

15             MR. GOROKHOV:  Yes, Your Honor.  And I believe

16   there was no -- as I recall, there was no objection to

17   his -- to that aspect of the original disclosure.

18             THE COURT:  Okay.  I'm just trying to get

19   myself straight here.

20       Now, what is the Government's objection to the

21   present disclosures?  Do you want to argue that or do

22   you want me to just get it off the written document?

23             MS. TREADWAY:  Well, Judge, I think that we've

24   made it clear in our motions that what the Defendants

25   understand a summary of an opinion to be and what the

26

1    Court and Government understand the summary of an

2    opinion to be are two different things.  I think

3    probably the most marked example of that is Dr. Karch.

4    They have announced his theory but they have not

5    announced his opinion.  If he is going to take the stand

6    and say it is my opinion that patient X did not die of a

7    drug overdose but instead died of this condition, we

8    don't have that opinion.  And we will not have that

9    opinion, in my estimation, before trial.  He reviewed

10   the slides back in November.  It's now six, eight weeks

11   later, and we still have nothing from him.  So while we

12   have his theory, we don't have his opinion.

13        Similarly, we have that for Ms. Cobuzzi.  I have

14   absolutely no idea what her opinion is.  I have

15   absolutely no idea what Dr. McClave's opinion is.

16   According to Dr. Passick, he's not going to render any

17   opinions.  So I don't really know what his purpose in

18   the trial is as an announced expert.

19        So the Government's problem is, Judge, is we can't

20   prepare for cross-examination because we don't know what

21   their opinions are.  And that is limiting our ability to

22   prepare.  It will also cause a probable hiccup in the

23   trial proceedings because if we are faced with those

24   opinions that we do not now know, cannot now test,

25   cannot now ask anybody about or prepare for, we will

1    need a recess to prepare for cross-examination of these

2    opinions that will be revealed for the first time at

3    trial.  And we believe that is unfair.  We believe the

4    Defendants have completely failed to comply with Rule 16

5    and they should be limited to the disclosures as they

6    are because they think they're absolutely fine.  If they

7    think they're absolutely fine, then they should have to

8    live with 'em, Judge.

9                THE COURT:  Mr. Williamson, are you --

10               MR. WILLIAMSON:  Myself and Mr. Gorokhov will

11   address this issue.  Briefly, we understand that summary

12   of an opinion is just that, a summary; and if you take a

13   look at Barbara Cobuzzi's disclosures, you'll note that

14   her opinion is that the Schneider Medical Clinic was not

15   billing fraudulently, and if there was any mistakes, it

16   was made in good faith.  That is a summary of an

17   opinion.  We also note that we reserve the right for her

18   to testify in rebuttal to what the Government's

19   witnesses state on the stand.  And I would point out to

20   this Court that the Government as recently as December

21   5th has continued to provide results from their, quote,

22   unquote, expert that have not been previously provided.

23   So I think it's not in good faith for them to ask us to

24   limit our witnesses when they still are producing other

25   witness information.  In addition to that, which will be

28

1   subject to an upcoming motion, they have now identified

2   another expert that has not been previously identified

3   to us, or at least no opinion has been filed.

4          THE COURT:  Why don't we take that up at the

5   appropriate time instead of using that as an excuse for

6   not -- your experts not stating their opinions.

7          MR. WILLIAMSON:  We're not saying it's an

8   excuse.  We're saying before you come ask this court for

9   an equitable remedy, you have to come with clean hands.

10  And we're saying that our expert's opinions are what

11  they are.  Dr. Karch is not going to stake the stand and

12  say that a person did not die from a drug, they died

13  from X.  His opinion is perfectly stated in regards --

14  and at most what he is going to do is what an expert is

15  supposed to do in these proceedings which is explain why

16  he reached that summary or reached that opinion.  He is

17  allowed to do that with the materials that he has.

18         THE COURT:  Yes, Mr. Gorokhov.

19         MR. GOROKHOV:  Your Honor, subsequent to the

20  production of our Rule 16 disclosures there was a

21  hearing where the Government claimed that they were not

22  sufficient.  At that hearing the Court went through the

23  disclosures and gave us specifically the points where

24  the disclosures needed to be amended.  We amended the

25  disclosures in good faith as directed by the Court;

1    produced them to the government.  Subsequent to that, I

2    think the Government complained again.  I was not at

3    that hearing, but my understanding is that the Court

4    said counsel should settle this issue among themselves.

5    I don't believe we -- either side did anything about the

6    issue after that hearing.

7         THE COURT:  Well, let me stop you there for

8    just a second.  In the amended disclosure with respect

9    to Dr. McClave, you say the Government has not provided

10   any information regarding its methodology in determining

11   its sample sizes and selecting its random samples so Dr.

12   McClave does not yet have sufficient information to

13   address these matters.

14      Now, did you get that information?

15        MR. GOROKHOV:  No, Your Honor.  The Government

16   refused to tell us any more about the methodologies.  We

17   made a -- this argument was part of our motion to compel

18   more detailed disclosures from the Government which the

19   Court denied.  So at this point we're going to be

20   relying on direct testimony and we're going to be -- and

21   Dr. McClave is going to be relying on that information.

22        THE COURT:  All right.  Then go ahead.

23        MR. GOROKHOV:  As I said, Your Honor, we

24   amended the disclosures in good faith according to what

25   the Court told us at that hearing.  Subsequent to that,

Cindy L. Schwemmer, Certified Shorthand Reporter
United States District Court, Wichita, Kansas

1   there were no further orders on the issue.  The

2   Government now claims that we're in contempt of

3   something, of Rule 16 and of the Court's order, where

4   the Court's never made a determination.  The Court's

5   never evaluated the amended disclosure.  The only

6   disclosure that the Court evaluated was the first

7   disclosure which we amended per the Court's

8   instructions.

9           THE COURT:  Well, as I have indicated

10  previously, I made a big mistake in this case by not

11  requiring the filing of reports.  Regardless of what the

12  Tenth Circuit case said.  That case was -- I should have

13  thought that through.  It would have made life a lot

14  easier for everybody.

15          MR. GOROKHOV:  I agree, Your Honor.

16          THE COURT:  Here's, for instance, Ms. Cobuzzi,

17  Paragraph 18, Ms. Cobuzzi will state that the coding and

18  billing practices of the clinic do not appear.  To me,

19  what that should say is Ms. Cobuzzi will state her

20  opinion that the coding and billing practices of the

21  clinic do not appear fraudulent.  This is not that big a

22  deal in my opinion.

23      The one with Dr. Karch, I'm a little concerned

24  about Dr. Karch in that he came into the case rather

25  late; but, here again, Paragraph 9 says Dr. Karch will

1    testify that as some of the Governments experts have

2    previously written postmortem, dah, dah, dah.  I'm going

3    to assume that when it says that a witness will state,

4    that is saying the witness will state his or her

5    opinion.

6         MR. GOROKHOV:  That's correct, Your Honor.

7         THE COURT:  But, and this applies both to the

8    Government and to the Defendants, their testimony is

9    limited to the disclosures that have been filed.  I'm

10   not going to try this case on the basis that the witness

11   has further opinions which haven't been disclosed or

12   that there's some problem about it.  It's just much

13   easier at this point to do that.  I think that with that

14   in mind, that's how we're going to handle it.  Now, for

15   instance, though, with Dr. Karch, Paragraph 10, he will

16   testify that the laboratory findings are scientifically

17   impossible with respect to at least the following

18   patients.  No, it's those patients.  Those are the ones

19   who are listed.  If he has opinions as to others, he

20   can't state them.  Now, is there any question about any

21   of this?

22        MR. GOROKHOV:  Yeah, Your Honor.  We do have a

23   question.  I think -- I believe much of the Government's

24   disclosure uses the very same language, at least the

25   following deaths, and then it has a list of deaths.

1          THE COURT:  Then it's -- what's fair for the

2     goose is fair for the gander.  If it's at least and it

3     lists names, those are the only -- that's the only

4     testimony I will hear.  Is that clear, Ms. Treadway?

5          MS. TREADWAY:  Yes, Judge, that's what we

6     always assumed.

7          THE COURT:  Well, I don't know.  But that's

8     what -- that's going to be the rule.  And that's the

9     rule we'll follow.  Both sides.  It's the way cases

10    ought to be conducted.

11     Now, does that take care of the Government's

12    Renewed Motion to Exclude Experts?  Is there anything

13    else that we need to hear about on that?

14         MS. TREADWAY:  Well, Judge, I would like to

15    respond to Mr. Gorokhov's claim that the Government has

16    not provided them information for Dr. McClave.  I have

17    provided that information in open court.  I have

18    provided that information in writing.  I have provided

19    that information on the spread sheets and the data.  I

20    have specifically spoken to Mr. Gorokhov and

21    Mr. Williamson on multiple occasions trying to tell them

22    what our fellow did and they completely ignore me or

23    choose not to understand what I'm telling them.  So for

24    Mr. Gorokhov to get up and state that we have not given

25    them information is simply untrue, Judge.  We've given

1    them more than adequate information.

2         THE COURT:  I'm confident that you have and

3    that perhaps Mr. Gorokhov just misspoke.  But I remember

4    that from a previous hearing.  Is there something else

5    that you would like to have, Mr. Gorokhov, to understand

6    the methodology of how all this was arrived at?

7         MR. GOROKHOV:  No, Your Honor.  I would just

8    say that, you know, The court ruled against us on the

9    motion to compel more detailed disclosures and that we

10   understand the Court's ruling.  We maintain our position

11   from that -- from that filing.  But we understand that

12   the Court has ruled against us and we have --

13        THE COURT:  Well, that's not the same thing as

14   saying the Government hasn't provided you with anything.

15   That's my ruling.  That's -- that will be the ruling.

16   But that's where we're at on that.  And if Mr. McClave

17   can't make it with that information then -- or Dr.

18   McClave or whoever it is -- I guess we'll just have to

19   deal with that at the time.

20        MR. GOROKHOV:  Thank you, Your Honor.  Before

21   we close, may I just briefly confer with Mr. Williamson.

22   I want to make sure that --

23        THE COURT:  Of course.

24        MR. GOROKHOV:  -- that we have nothing to add.

25             (Off-the-record discussion.)

1          MR. WILLIAMSON:   Judge, may I interject Dr.

2    Schneider's position?

3          THE COURT:   You may.

4          MR. WILLIAMSON:   As I understand the Court's

5    ruling on this, this expert issue, that your opinion is

6    is that whatever has been disclosed up until this point

7    from both parties.   But remember I mentioned to you that

8    there are some more disclosures that have been disclosed

9    up to this point that aren't before this court.

10         THE COURT:   Yeah.

11         MR. WILLIAMSON:   A), I want to make sure this

12   ruling does not cover that because that will be subject

13   to another motion; but, B), I want to make sure that I

14   understand the ruling right.   If we have Dr. Karch who

15   says that you cannot scientifically make a determination

16   as to cause of death under certain circumstances as he

17   did in his disclosures, are you saying -- is he allowed

18   to say, well, in order for -- I made this opinion and

19   these are the steps that I took to make this opinion, I

20   reviewed A through Z and this is my ultimate opinion.   I

21   mean, that's why I'm not necessarily clear on what's

22   going to be the limitation.

23         THE COURT:   I'm not either.   Because I haven't

24   heard Dr. Karch testify.   All I know is what I just

25   said.   In your disclosures you said he will testify that

1    the laboratory findings that are scientifically

2    impossible indicate either incompetence or error on the

3    part of the laboratory with respect to at least the

4    following patients.  And I said not at least.  Those are

5    the only patients he may testify about.

6             MR. WILLIAMSON:  Okay.  In regards to the

7    incompetence and error.  That's where I want to make

8    sure that we understand.  That he made a specific

9    finding that there was some incompetence and errors with

10   these autopsies.

11            THE COURT:  That's what he said.

12            MR. WILLIAMSON:  But he also made an overall

13   finding that in all these cases you cannot make a

14   determination as to cause of death.

15            THE COURT:  I'm confident that the Goernment

16   understands that's going to be his testimony, that their

17   people just don't know how to do it right.

18            MR. WILLIAMSON:  Okay.

19            THE COURT:  Right?

20            MR. WILLIAMSON:  Well, partly.  To the

21   limitation that's expressed by this Court in that

22   opinion.  I think we have an understanding.

23            THE COURT:  I think we do, too.  I don't think

24   there's any point in trying to deal with this.  But I

25   will tell you that I recognize that expert testimony is

36

1   going to be important in this case, but I like to keep a

2   pretty tight reign on expert testimony.  It has to be

3   helpful to the jury.  It can't be that -- the testimony

4   of an advocate.  Are you listening to me, Mr. Gorokhov?

5           MR. GOROKHOV:  Yes, Your Honor, we are.

6           THE COURT:  So some -- I don't know any of

7   these witnesses.  I've never heard them testify.  So you

8   better advise your expert witnesses that I will be

9   looking at these disclosures as they testify and if they

10  start getting into areas that are not in the

11  disclosures, I'm going to cut them off.  So forewarned

12  is forearmed.  And that applies to the Government and to

13  the Defendants equally.

14          MS. TREADWAY:  Judge, if I can, I think I

15  understand where Mr. Williamson was going.  I think

16  that, for instance, if one of our experts is saying not

17  legitimate prescription practices and it resulted in

18  patient X's death.  They are not limited to simply that

19  testimony.  That's their opinion.  And they're allowed

20  to explain the basis of that opinion and how they got to

21  it even though that is not --

22          THE COURT:  Of course they're allowed to

23  explain the basis.  Naturally they're allowed to explain

24  the basis of their opinion.

25          MS. TREADWAY:  Right.  And that's what I

1    believe Mr. Williamson was concerned about that our

2    disclosures do not go into all of that in detail.  What

3    they go to is to the opinion.  And what I think he was

4    worried about -- if I'm speaking correctly -- is that

5    the witness will be allowed to say why they reached that

6    opinion.  And I know you're not excluding that.

7            THE COURT:  All right.  Now, in Docket 266 --

8    let's get to Mr. Williamson's point here.  It says the

9    Government adds two entirely new expert witnesses.  Who

10   are they?

11           MS. TREADWAY:  Well, Judge, they're not new

12   expert witnesses in the sense that they're talking about

13   something that hasn't been disclosed.  Again, in

14   preparing witnesses and trying to schedule witnesses,

15   sometimes you have to substitute witnesses for the same

16   purpose.  We had previously announced a Medicare witness

17   by the name of Jamie Dalber and we told them what her

18   disclosure was.  We are now maybe having to switch

19   horses to a woman by the name of Joan Madsen.  But she

20   will testify exactly like Ms. Dalber.  And so the

21   disclosure is almost word for word what it was as to

22   Ms. Dalber.  So it's really just a situation of

23   availability of witnesses.

24           THE COURT:  Well, who's the other, quote, new

25   expert?

1          MS. TREADWAY:  That person is Steve Sulper.

2    And essentially what we are doing is we're splitting

3    Mr. Brown's testimony into two individuals.  Mr. Sulper

4    developed the stratified sample of 500 patient files to

5    be pulled.  And then Mr. Brown actually did the RAT

6    statistics computer program.

7          THE COURT:  Did the what?

8          MS. TREADWAY:  It's the randomization of how

9    to pick the patients.  It's simply, again, this is not

10   expert opinion, Judge, except to the extent that it

11   requires some technical knowledge of statistics.  But

12   Mr. Sulper is essentially going to testify to the first

13   half of what Mr. Brown was going to testify about.

14   Again, simply because as we prepare for witnesses, we

15   find people are either uncomfortable or not as good a

16   witness as perhaps someone else is.  And we're just

17   substituting Mr. Sulper for that half of the equation.

18   But, again, all of this has been disclosed multiple

19   times to the defense.  It's not really new information,

20   Judge.  And I don't believe that we've ever had any

21   dispute about the qualifications of any of these people

22   that have been listed as 702 witnesses.  Mr. Brown and

23   Mr. Sulper will not be offering any opinions but will

24   simply be telling the jury how the random sample was

25   drawn.  So in that respect, they're really not experts.

1                THE COURT:  All right.

2                MR. WILLIAMSON:  Judge, the rules are set for

3     a reason.  You cannot switch witnesses because your

4     witness couldn't communicate as well as you would like

5     for them to the jury.  We have deadlines.  And the

6     Government, as much as they would like to, cannot set

7     this court's rules and cannot rewrite the Federal Rules

8     of Criminal Procedure.  We have an expectation of who

9     witnesses were.  And if you listen closely to what the

10    Government just said, their experts couldn't communicate

11    the randomization of these patient charts, which is

12    exactly what Mr. Gorokhov just said:  Look, we don't

13    know what they did to pull these charts, thus our expert

14    could not provide an expert opinion.  They're stuck with

15    the people they chose.  We're gonna file a motion on

16    this --

17               THE COURT:  I agree with you.

18               MR. WILLIAMSON:  Thank you.

19               THE COURT:  You're stuck with the people you

20    chose.  You'd be raising hell, Ms. Treadway, if they

21    were trying to do that to the Government.

22               MS. TREADWAY:  Well, Judge, we already agreed

23    to a substitute of theirs.

24               MR. WILLIAMSON:  Not less than 30 days before

25    trial.

40

1          THE COURT:  All right.  Why don't we take a

2     short recess here and then we'll finish this up.

3                    (Recess.)

4          THE COURT:  Now, in Docket -- well, I don't

5     have the docket number -- but the government's

6     supplement to its notice to use experts.  There are

7     other individuals named in there other than the two

8     people who are identified as experts, Ms. Madsen and

9     Mr. Sulper.

10          MS. TREADWAY:  Judge, may we address this

11     issue just for a minute to make sure that we understand

12     your ruling.  Again, perhaps I didn't make myself very

13     clear.  Mr. Sulper is not offering any expert opinions.

14     He is a person that's testifying from expertise.  And

15     essentially all he will be testifying about is why 500

16     files needed to be reviewed as opposed to 400, 300 or

17     whatever.

18          THE COURT:  Who was going to do that before?

19          MS. TREADWAY:  Mr. Brown.  But I did not

20     understand that Mr. Brown had confirmed what Mr. Sulper

21     did.  I understood that Mr. Brown did both parts.  But

22     that was my mistake.  And when I talked to Mr. Brown, he

23     made that clear.  So these are fact witnesses.  They're

24     not opinion witnesses.  And to prevent either party from

25     substituting a better fact witness at the time of trial

 1    really puts handcuffs on both parties.  And we certainly

 2    wouldn't want to handcuff the Defendants that way.  And

 3    I don't think that it's fair to handcuff the Government.

 4            THE COURT:  Have the Defendants offered any

 5    new witnesses, fact or otherwise, other than the ones

 6    that they've listed at the time of their disclosure?

 7            MS. TREADWAY:  They've listed 49 doctors.

 8            THE COURT:  We're going to get to that.  My

 9    question is have they offered any -- done what you've

10    done, tried to supplement their notice or their witness

11    list?

12            MS. TREADWAY:  Yes.  And we even agreed to it.

13            THE COURT:  That's fine.  You've agreed to it.

14    They're not agreeing to at least those two individuals.

15    My question is are they agreeing to these other

16    individuals that are listed here?

17            MS. TREADWAY:  We haven't received a motion,

18    Judge, so we're not really sure what their objections

19    are -- perhaps if we could have.

20            THE COURT:  Well, let's talk about it.  Here's

21    Everett Barger, III.  Any objection to him?

22            MR. WILLIAMSON:  Judge, I'm actually not

23    prepared to make these objections here today.  I was

24    prepared to have a brief in front of the Court before

25    Thursday of this week.

```
 1              THE COURT:  Then, all right, then I'll tell
 2     you what I'll do.  I'll just let you make your response
 3     to this.
 4              MR. WILLIAMSON:  Okay.  And just so --
 5              THE COURT:  And that includes now -- we're
 6     going to make responses because that includes Ms. Madsen
 7     and Mr. Sulper.  So what I said about those two
 8     witnesses, I retract that.  I'll let you make your
 9     responses to all of the witnesses listed in the
10     Government's supplement of its notice of intent to use
11     experts and then I will rule.
12              MR. WILLIAMSON:  Okay.  Can I ask the Court to
13     rule on the expert issue now with Ms. Madsen and
14     Mr. Sulper?
15              THE COURT:  No.  I'm going to do it my way,
16     Mr. Williamson.  That way there will be a clear record
17     that you've had an opportunity to respond.  The ruling
18     may be the same, but I'm going to let you respond.
19       Now let's take up -- let's get this matter of the
20     sealed witness out of the way and then I want to talk
21     about witnesses generally.  Let's see.  I believe the
22     way this starts out is the Government's Motion in
23     Limine.  That's how all this got started.  So we'll take
24     that up.  Then we'll have -- that's Docket 233.  And
25     then the Defendants' response is Docket 269.
```

1          MS. TREADWAY:  Judge, may we approach the

2    bench.  I need to inform the Court about something that

3    we just found out today.

4          THE COURT:  Come up.

5

6

7                     (NOTE:  Pgs 44 - 58 of this

8                     transcript are filed UNDER

9                     SEAL.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                        (The following proceedings

3                        continued in open court.)

4

5           THE COURT:  All right.  I think the last thing

6    I want to talk to you about today is your witnesses.

7    There are apparently -- and if we take both sides

8    here -- hundreds of witnesses that have been listed.

9    And I appreciate the fact that you did that, that you

10   listed all the people that you think may be called.

11   But, obviously, you know, we're going to have to

12   considerably cut that list down, both sides.  I'm not

13   going to tell you how to do it because I don't know how

14   to do it.  But we've set aside four to five weeks to try

15   this case.  And none of us want this case to go on even

16   that long if we can help it.  And certainly no longer

17   than that.  And there's, obviously, from looking through

18   here, repetition or potential repetition in these

19   witnesses.  So, we're going to have another hearing in

20   this case on the 26th.  At what time, Robert?

21           MR. MOODY:  At 2:30.

22           THE COURT:  On the 26th at 2:30.  And what day

23   of the week is that?

24           MR. MOODY:  That is on a Monday, Judge.

25           THE COURT:  It's a Monday.  So the Friday

61

1    before that, I want you to file amended witness lists
2    cutting down these witnesses to what you all feel is a
3    reasonable estimation of who you will need at trial.
4    Now, I may cut it further than that or I may put time
5    limits on presentation of evidence, but I'm not going to
6    do that today.  There's only a certain number of people
7    that need to come in and testify on any particular
8    issue, but I don't know who those people are.  But if
9    I'm forced to, I will make that decision and I would
10   prefer that you all have the first shot at it.
11       Now, when we meet again we will have some other
12   things to talk about:  The motions that aren't ripe;
13   things that we've discussed here at the bench.  But I
14   think we've covered everything that can be covered
15   today.  Ms. Treadway, is there anything else that we
16   need to cover today?
17            MS. TREADWAY:  The only other motion I think
18   that is ripe, Judge, is the Defendants' objections to
19   all the Government's exhibits.
20            THE COURT:  Well, I don't know how to handle
21   that.  We'll take that up -- I have not even looked at
22   the Government's exhibits.  I've not looked at the
23   Defendants' exhibits.  I don't know who the witnesses
24   are going to be that would be testifying about the
25   exhibits.  I'm not sure there's any way that I'm really

62

1    ever going to be able to definitively say the Government

2    can't use such and such an exhibit or the Defendants

3    can't use such and such an exhibit.  But I'll take a

4    stab at it.  Yes, sir, Mr. Williamson.

5              MR. WILLIAMSON:  Two things, Judge.  One in

6    regard to our objection to exhibits.  It may be prudent

7    to take it under -- I can't think of the term --

8              THE COURT:  Advisement.

9              MR. WILLIAMSON:  Yeah, take it under

10   advisement.  And we want to make sure that our

11   objections are preserved for appellate purposes.

12             THE COURT:  Don't worry about that.

13             MR. WILLIAMSON:  In regard to the witness list

14   that we just -- that you just asked us to revise, it's

15   very difficult for us to limit any more than what we

16   already have.  We took a good stab at trying to limit a

17   number of witnesses and our -- A), I'm sure the Court's

18   aware, we don't have to call any witness.

19             THE COURT:  Of course not.  I'm assuming,

20   though, that right now anyway, you're intending to.

21             MR. WILLIAMSON:  Correct.  Our witnesses are

22   going to be directly dependent upon what the

23   Government -- who testifies to what at trial, how strong

24   we believe their testimony is, what's needed to rebut

25   their testimony.  And it's just going to make it very

63

1   difficult on us to try to foresee that.  I mean, we

2   can't foresee it without hearing them testify first.  I

3   can tell the Court that we don't intend to call

4   cumulative witnesses.  We don't intend to put on people

5   that we truly feel are unnecessary.  But beyond --

6          THE COURT:  Well -- I didn't mean to interrupt

7   you.

8          MR. WILLIAMSON:  I was just going to say

9   beyond that, it's very difficult for us to narrow it any

10  further.

11         THE COURT:  Well, let's look at Document 260

12  here.  This lists your potential witnesses.  Here you

13  say the following witnesses will testify to the

14  operation of the clinic, including but not limited to,

15  ta-dah, ta-dah, ta-dah.  And I haven't counted up here,

16  but looks to me like you've got about 15 or 20 people

17  here listed as potential witnesses.  Surely -- I don't

18  understand why you would not be able to cut this list

19  down without hearing the testimony of the Government

20  witnesses because if all of these people can testify as

21  to those topics, what difference does it make.

22         MR. WILLIAMSON:  I think it makes a huge

23  difference if we have five people saying that this was a

24  legitimate enterprise and we were doing things A way, B

25  way, C way, as opposed to if we have 15 or 20.  And the

1    Government has multiple individuals listed as former

2    employees and I just --

3              THE COURT:  I'm not going to let them do it

4    either.

5              MR. WILLIAMSON:  But we don't -- so if you

6    limit them to three, are we limited to six?  If you

7    limit them to four, are we limited to four?  And that's

8    why we're saying at this point it's difficult for us to

9    limit.  At this point we can tell the Court that we

10   would be willing to revisit this before the defense case

11   in chief goes; but if we -- in other words, if we take

12   somebody out now and somebody testifies on direct

13   examination a certain way that we believe that a witness

14   that we excluded could rebut, now they're not in our

15   disclosures.  And for appellate purposes they're going

16   to say, well, you waived it when you removed them.  And

17   we don't want to remove anybody --

18             THE COURT:  Well, I suppose you could make a

19   proffer to me at that point in time that so and so needs

20   to testify on this discrete issue that was raised by --

21   on the Government's case.  But here you say:  The

22   following witnesses will testify to the care they

23   received while in the care of Schneider Medical Clinic.

24   And I don't think that I'm exaggerating by saying -- I

25   haven't counted them up -- but there appear to be

1    approximately 100 people listed as witnesses.  Right?

2              MR. WILLIAMSON:  I would say that's probably a

3    fair estimation.

4              THE COURT:  Well, I'm not going to let you

5    call 100 people, obviously.  So my suggestion to you

6    would be that you pick out the people that you think you

7    really need to call -- if you're going to put that

8    evidence on -- that would be the best witnesses for that

9    and list those people.  Now --

10             MR. WILLIAMSON:  If I may, Judge.  The problem

11   I have with that is they listed 50 people that allegedly

12   died while under Dr. Schneider's care.

13             THE COURT:  Right.

14             MR. WILLIAMSON:  Are we doing a quid pro quo

15   number where you list 50, you get 50?

16             THE COURT:  No.

17             MR. WILLIAMSON:  And that's what we're saying

18   is, look, they're saying this man operated a pill mill

19   and we're saying we have evidence that he did not

20   operate a pill mill.  That is a -- that is a direct -- I

21   mean, it's so important that I can't even express it.

22             THE COURT:  Do you think that I would allow

23   100 people to get up and say that he operated a pill

24   mill or 100 people to get up and say that he didn't?

25             MR. WILLIAMSON:  Well, obviously --

1          THE COURT:  I don't know how they're going to

2     put that evidence on -- and I presume that he's

3     innocent -- they have to prove that, but --

4          MR. WILLIAMSON:  Well, if they put on one

5     individual to talk about 50 occurrences that happened at

6     the clinic then --

7          THE COURT:  I'm telling you we're not going to

8     have any more of these arguments about this.  You cut

9     down your witness list.  Both sides.  So that this case

10    can be tried reasonably within four to five weeks, which

11    is what you said it could be tried in.  There's no way

12    I'm going to allow the Government to call all the

13    witnesses it's listed.  There's no way I'm going to

14    allow the Defendants to call all the witnesses they've

15    listed.  Now, I'm giving you an opportunity to do this

16    yourselves.  I've told you that if something comes up

17    during their case and you say, well, gosh, I've just got

18    to call LaDonna Trask to counter that one discrete

19    point, you can make that point during the trial.  But I

20    expect this list to be cut down on both sides or I'll

21    cut it down and nobody will like it.  Now, I've made

22    myself clear on this.  We're not going to have too many

23    more of these discussions back and forth.

24          MR. WILLIAMSON:  Judge, may I just risk --

25    take the risk of exasperating you just a little bit

67

1      further.  Can we stagger it?  Can they give us their's
2      and two days later, we get ours --
3              THE COURT:  If that would make you happy then
4      we'll do it that way.
5              MR. WILLIAMSON:  Happier.
6              THE COURT:  Well, I doubt that I'll ever
7      really be able to make you happy, Mr. Williamson.
8              MS. TREADWAY:  Judge, this is a collateral
9      issue but --
10             THE COURT:  My point here is that's not my job
11     to make the lawyers happy.
12             MR. WILLIAMSON:  We'll make a good faith
13     effort at it, Judge.
14             MS. TREADWAY:  This is a collateral issue to
15     the witnesses, Judge.  In order to schedule things, has
16     the Court made a determination as to what times and days
17     we'll run the trial?
18             THE COURT:  My inclination at this point is to
19     run the trial Tuesday, Wednesday, Thursday and Friday.
20     So that you all can have some extra time to prepare, get
21     everything together, and so that I can deal with the
22     other stuff that I have to deal with here.  Which is --
23     this case is a very important case to everybody, but
24     it's certainly not the only one that I have to deal
25     with.

68

1              MS. TREADWAY:  Is that a 9 to 5 trial day,

2     Judge?

3              THE COURT:  Pretty much 9 to 5, yeah, unless

4     you'd like it longer.

5              MS. TREADWAY:  Never, Judge.  It just helps

6     us, you know, it helps us plan to get the witnesses in.

7              THE COURT:  These are things that I would

8     really like to discuss with you a little bit more on the

9     26th when we're closer to trial and when we know a

10    little bit more about how this case is going to go.  All

11    right.  Now, anything else?  How can I make you all

12    happy?  Mr. Williamson?

13             MR. WILLIAMSON:  Dismiss the indictment.

14             THE COURT:  I don't think so.  All right.

15    Well, it's 4:30, we've spent three hours -- two hours at

16    this.  So I'll see you all again on the 26th.

17                   (Adjourned at 4:30 p.m.)

18

19

20

21

22

23

24

25

Cindy L. Schwemmer, Certified Shorthand Reporter
United States District Court, Wichita, Kansas

1

2                     C E R T I F I C A T E

3

4          I, Cindy L. Schwemmer, United States Court

5    Reporter in and for the District of Kansas, do hereby

6    certify:

7               That the above and foregoing proceedings were

8    taken by me at said time and place in stenotype;

9               That thereafter said proceedings were

10   transcribed under my direction and supervision by means

11   of computer-aided transcription, and that the above

12   and foregoing constitutes a full, true and correct

13   transcript of said proceedings;

14              That I am a disinterested person to the said

15   action.

16              IN WITNESS WHEREOF, I hereto set my hand on

17   this the 30th day of January, 2009.

18

19

20

21                           s/ Cindy L. Schwemmer

22                           Cindy L. Schwemmer

23                           United States Court Reporter

24

25