UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff,            )<br>)<br>v.                                )<br>)<br>LINDA K. SCHNEIDER, a/k/a,   )<br>LINDA K. ATTERBURY,          )<br>d/b/a SCHNEIDER MEDICAL     )<br>CLINIC                           )<br>)<br>Defendant.         )<br>_____) | Case No.   07-10234-02-MLB |

## MEMORANDUM AND ORDER

Presently before the undersigned magistrate judge is the following motion:

>Government's Motion for a Nebbia Determination and Memorandum in Support, filed February 10, 2009  (Doc. 336).

The court has delayed ruling on this motion awaiting a response by Defendants.

**A.    Procedural Issues.**

The Government has now forwarded a letter of February 25, 2009, to the court and Defendant's counsel asking that its <u>Nebbia</u> motion be treated as an unopposed motion under D. Kan. Rule 7.4 because no response was filed within the time provided in D. Kan. Rule 6.1(d)(1), and that it be granted without further notice.  Attached to the letter was the Government's proposed Order.

The court has not identified any specific rule that governs the time for filing responses to motions in criminal cases. While Fed. R. Cr. P. 47 deals with motions in criminal cases, it does not establish a time by which a response must be filed. Likewise, the court's Local Rules do not contain a specific "criminal rule" on this topic. The Local Rules do outline specific procedures for responding to motions in civil cases, *see* D. Kan. Rules 7.1 (Motions in Civil Cases), and Rule 7.1(c) references the time for responses and replies that are set out in D. Kan. Rule 6.1(d). However, D. Kan. Rule 7.5 specifically states that "Local Rules 7.1 through 7.5 shall be applicable to all motions in <u>civil cases</u> . . . , to appeals in bankruptcy, and to motions to review orders of magistrate judges." (Emphasis added.)[1]

The undersigned magistrate judge has reviewed the transcript citation relied upon by the Government in its letter of February 25, 2009, for the proposition that Judge Belot has indicated that Rule 6.1(d)(1) would apply in this criminal case. Clearly, Judge Belot can establish any briefing schedule he believes appropriate as to any particular motion regardless of any Local Rule. The undersigned magistrate

---

[1] The fact that Local Rules 6 & 7 are to apply to civil proceedings is further confirmed by the fact that the Local Rules are numbered to correlate with the numbering of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 6 & 7 deal with computation of time and pleadings allowed in civil cases. Likewise, the Local Rules within Section XV (Rules Applicable to Criminal Cases) are numbered to correlate to the numbering of the Federal Rules of Criminal Procedure, and there is no Local Criminal Rule that correlates to Fed. R. Cr. P. 47.

judge, however, does not read his cited comments as setting a hard and fast rule in this case as to the time to file responses to all motions. Even if the court were to apply the time periods set out in D. Kan. Rule 6.1(d) to the present motion, that does not mean that the court should automatically apply D. Kan. Rule 7.4 -- a rule that is specifically for use in civil cases -- to summarily grant the Government's <u>Nebbia</u> motion. Therefore, the court has concluded that it will not summarily grant the Government's motion for an immediate <u>Nebbia</u> hearing. and will not enter the Government's proposed Order. Instead, because no response has been filed, the court is issuing this Order which sets out the procedure it intends to follow in connection with the Government's motion and the time table to be followed in resolving that motion.

**B.     Factual Background.**

In the present case, the court required a cash deposit of $100,000 as collateral for the $325,000 Appearance and Compliance Bond to be executed by Defendant Linda K. Schneider. *See* Doc. 317 at 14-15. Defendant then filed a motion asking the court to reconsider the amount of the cash deposit, arguing that she could not raise that amount of cash. (Doc. 321.) That motion was denied on February 9, 2009. (Doc. 327.) Two days later, on February 11, 2009, a certified check was presented to the Clerk of the Court in the amount of $100,000 drawn on

a local bank with the name of the remitter shown as "Atterbury Family and Friends." Internal court paperwork related to the cash deposit was completed by the parties presenting the check. That paperwork contained a section stating that "[u]pon exoneration of the terms and conditions of the bond, as determined by the Court, the full amount posted should be returned to Lee Atterbury." Mr. Atterbury has been identified in prior hearings as the father of Defendant Linda K. Schneider a/k/a Linda K. Atterbury.

The Government's present motion for a Nebbia hearing was filed on February 10, 2009 -- the day before the $100,000 was deposited with the Clerk -- but the Government noted that the court could allow the defendant to be released and then make its determination. (Doc. 336 at 2.)

**C.    Substantive Issues.**

The court has reviewed the authorities cited by the Government in its brief and notes that none are from the Tenth Circuit or from this District. The undersigned magistrate judge has issued one prior order for a hearing pursuant to United States v. Nebbia, 357 F.2d 303 (2nd Cir. 1966), but that case was resolved on other grounds before the hearing could be scheduled. *See* United States v. Amezola, No. 02-10066-01-WEB, 2002 WL 1284287 (D. Kan., Jun. l5, 2002).

In its motion, the Government does not refer to or cite a specific provision of

the Bail Reform Act, 18 U.S.C. § 3142(g)(4), which deals with the issue of a hearing concerning the source of collateral to secure a bond and which states:

> In considering the conditions of release described in subsection (c)(1)(B)(xi) [agreements to forfeit property, including money] or (c)(1)(B)(xii) [a bail bond] of this section, the judicial officer may upon his own motion, <u>or shall upon the motion of the Government,</u> conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required. (Emphasis added.)

This section was a new provision in the Bail Reform Act of 1984, Pub. L. 98-473, 98 Stat. 1980 (Oct. 12, 1984). The legislative history of the provision is set out in 4 U.S. Code Congressional and Administrative News, pp. 3206-3207 (98th Cong. Second Sess. 1984):

> Subsection (g) also contains a new provision designed to address a problem that has arisen in using financial conditions of release to assure appearance. The rationale for the use of financial conditions of release is that the prospect of forfeiture of the amount of a bond or of property used as collateral to secure release is sufficient to deter flight. However, when the proceeds of crime are used to post bond, this rationale no longer holds true.
>
> * * * *
>
> The source of property used to fulfill a condition of release is thus an important consideration in a judicial officer's determination of whether such a condition will assure the appearance of the defendant. [fn 70 omitted] In

5

recognition of this, the Committee has provided in subsection (g) that the judicial officer, in considering the conditions of release described in sections 3142(c)(2)(K) [now subsection (c)(1)(B)(xi)] and 3142(c)(2)(L) [now subsection (c)(1)(B)(xii)], may upon his own motion, or shall upon the motion of the government, conduct an inquiry concerning the source of property to be designated for potential forfeiture or to be offered as collateral to secure a bond. The reference to "collateral to secure a bond" refers not only to property of the defendant or a third party which is to be directly used to secure release, but also money or other property which may be pledged or paid to a surety in order to secure his execution of a bond. The judicial officer must decline to accept the designation or use of property that, because of its source, would not reasonably assure the appearance of the defendant. [fn 71]

Such inquiries into the source of property used to secure release are currently used to some extent, and are commonly referred to as *Nebbia* hearings. [fn 72] However, because of a lack of clear statutory authority to conduct such hearings, particularly with respect to corporate sureties, [fn 73 omitted] many courts have refused government requests for any inquiry into the source of property used to post bond. Therefore, the Committee has, in subsection (g), provided for this statutory authority so that judicial officers may make informed decisions as to whether financial conditions of release will be sufficient to assure appearance of defendants.

---

[fn 71] The judicial officers may also decline accepting property if the defendant refuses to explain its source. See *United States v. DeMorchena,* 330 F.Supp. 1223 (S.D.Cal. 1970), in which the court refused to accept a $50,000 surety bond secured by $55,000 delivered in cash to the bondsman

> until the defendant presented evidence as to the source of the money.
>
> [fn 72] *United States v. Nebbia,* 357 F. 2d 303 (2nd Cir. 1966).

The above provision of the Bail Reform Act, particularly when considered in light of the legislative history, requires this court to conduct a hearing as to the source of the $100,000 cash deposit since the Government has requested such a hearing.[2]

While the Bail Reform Act requires a hearing if the Government requests one, the Act does not, however, describe how any such hearing is to be conducted. A review of the cases cited by the Government demonstrates that courts have used varying procedures for conducting Nebbia hearings with some courts holding the hearing on the record in a closed courtroom and outside the presence of the Assistant United States Attorney and its agents. *See* United States v. Kaila, No. CR-08-2021-LRS, 2008 WL 1767728 (E.D.Wash, Apr. 15, 2008); *see also* United States v. Ellis DeMarchena, 330 F.Supp. 1223, 1227 (S.D.Cal. 1971) (offering to conduct an *in camera* examination of defendant's wife or other person with knowledge of the source of the collateral and to seal the proceedings).

---

[2] One court has concluded that while Nebbia authorizes a hearing if the court determines one is appropriate, it does not support the Government's contention that it is entitled to such a hearing as a matter of right. United States v. O'Brien, 895 F.2d 810, 817 (1st Cir. 1990). While O'Brien was decided after enactment of the Bail Reform Act of 1984, the opinion neither cites the provisions of 18 U.S.C. § 3142(g)(4) discussed above, nor does it reference the legislative history set out above.

**D.     Orders of the Court.**

Before deciding how to conduct a hearing concerning the source of the $100,000 cash deposit, and under what conditions that hearing should take place, the court hereby orders Defendant Linda K. Schneider, and her counsel, to submit to the undersigned magistrate judge for *in camera* inspection all documents which show the source of the funds used to acquire the certified check from the bank. So that there will be no confusion as to what is specifically being required, the court requires the following documentation:

1. An affidavit setting out the names of all persons or organizations who contributed any funds toward the acquisition of the $100,000 bank certified check, together with an identification of any relationship *i.e,* family, friend, etc., that the person and/or organization has with or to Defendant Linda K. Schneider;

2. The nature of each such contribution, whether by check, money order or cash, and the amount each person or organization contributed:

    A. If the contribution was by cash, the person receiving the cash and using it in any manner to acquire the $100,000 bank certified check shall submit an affidavit stating the name of the person from whom the cash was received

and the date the cash was received. In addition, the person or organization that provided the cash shall submit an affidavit stating the source of the cash delivered for use as any part of the deposit.

B.  If the contribution was by a check drawn on the account of an individual or organization, a copy of the check shall be provided; or, if a copy of the check is not readily available, a copy of the bank statement for the account on which the check was drawn showing the date and amount of the check. In addition, the person or organization that provided the check shall submit an affidavit stating the source of the funds in the account on which the check was drawn.

C.  If the contribution was by a money order or other such financial instrument. including without limitation any wire transfer, etc., a copy of the money order or financial instrument shall be provided. In addition, the person or organization that provided the money order or other such financial instrument shall submit an affidavit stating the

>source of the funds used to acquire the money order or financial instrument.

The above information shall be submitted to the undersigned magistrate judge not later than **5:00 p.m. on Friday, March 13, 2009.**  <u>The court will not accept mere statements of counsel as to the source of the funds and will require adherence to the above-described requirements.</u>

After review of the above information *in camera*, the court will determine how any such hearing will be conducted and/or what additional evidence it will require to be presented at, or before, any such hearing.

IT IS SO ORDERED.

Dated at Wichita, Kansas, this 25th day of February, 2009.

                                              s/   Donald W. Bostwick
                                              DONALD W. BOSTWICK
                                              United States Magistrate Judge