1          IN THE UNITED STATES DISTRICT COURT

2

3                     DISTRICT OF KANSAS

4

UNITED STATES OF AMERICA,            )

5                                     )
                         Plaintiff,) District Court

6                                     ) Case No. 07-10234
vs.                                   ) Circuit Court

7                                     ) Case No. 10-3281
STEPHEN J. SCHNEIDER &                )

8  LINDA K. SCHNEIDER, a/k/a           )
LINDA ATTERBURY,                      )

9  d/b/a SCHNEIDER MEDICAL CLINIC,     )
                                      )

10                      Defendants,)
                                      )

11  _____

12

13

14               **TRANSCRIPT OF JURY TRIAL**

15

       On the 26th day of April, 2010, came on to be heard

16  Jury Trial in the above-entitled and numbered cause
before the HONORABLE MONTI L. BELOT, Judge of the United

17  States District Court for the District of Kansas,
Sitting in Wichita.

18

19

20

21  APPEARANCES

22       The Plaintiff appeared by and through Ms. Tanya
Treadway, Mr. Jon Fleenor and Mr. Jabari Wamble;

23

       The Defendant Stephen Schneider appeared by and

24  through Mr. Lawrence Williamson and Mr. Eugene Gorokhov;
       The Defendant Linda Schneider appeared by and

25  through Mr. Kevin Byers.

```
 1                    (Beginning at 9:35 a.m. April
 2                    26, 2010, the following
 3                    proceedings were held.)
 4          THE COURT:  Good morning.
 5          MS. TREADWAY:  Good morning, Judge.
 6          THE COURT:  Today -- and hopefully today, but
 7   if not today then continuing on until tomorrow -- I'm
 8   going to pick a jury to hear this case.  We'll pick 12
 9   regular jurors and two alternates.  The case will be
10   tried downstairs in my courtroom.  This is Judge
11   Marten's courtroom and we're only up here this morning
12   because there are so many of you.  My courtroom is
13   smaller and can't accommodate this many people.  But the
14   trial will be down there.
15          You're here because you have all been notified and
16   have agreed that you will be available for this trial
17   which could take from eight to twelve weeks.  Now that's
18   the attorneys' estimate, not mine.  The attorneys know
19   more about the case than I do, and so I gave you the
20   estimate that they feel the case will take to try.  I'll
21   assure you that, whoever is picked as jurors in this
22   case, I will do everything to make sure that the case
23   moves expeditiously so that it can be tried in the
24   shortest amount of time to be fair to all the parties.
25   It's impossible in a case like this to be totally
```

1    accurate as to how long a case will take.

2         Once we pick the jury and we move downstairs, then

3    I will talk to the jury a little bit more about timing.

4    There will be some times during the trial when we

5    probably won't hold trial during all or part of a day

6    because I have other cases that I have to attend to and,

7    for example, on Wednesday we won't be trying -- we won't

8    be having any proceedings in this case because I have

9    another case that predates -- that I've set a hearing

10   that predates the trial date in this case and I have to

11   attend to that one.  So hopefully we'll get a jury

12   certainly by tomorrow and then we'll be back on Thursday

13   to start the trial.

14        I'm not going to give you a civics lessson about

15   being a juror; but I do want you to know that I

16   appreciate very much your willingness to be jurors.  You

17   all filled out the jury questionnaire; and, as I recall,

18   there's a question in there, maybe more than one

19   question, about prior jury service.  And some of you

20   have had prior jury service, I'm sure.  Others of you

21   have not had prior jury service.  But jury service is

22   important.  It's important for a number of reasons, one

23   of which is that some of you not only may have served on

24   a jury, but some of you may have been involved in

25   litigation before.  Somebody sued you after a traffic

1   accident, for example, or you sued somebody else.  Or

2   some of you may have been involved in a criminal case as

3   a witness, for example.  The only way that we really

4   have in this judicial system of resolving disputes is to

5   have the case presented to a jury.

6       Jurors become judges of the facts, and I can't

7   emphasize that too much.  You don't just sit there and

8   listen.  You have to sit there and listen carefully and

9   pay attention to all the evidence, not make up your mind

10  about the case until you've heard all the evidence.  But

11  because you are judges of the facts, you also have to

12  follow the law that applies to the case.  Now, one of my

13  jobs then is to give you the law that applies and you

14  have to apply that whether you agree with it or not.

15  The outcome of the case will be entirely up to the

16  people who are selected as jurors; and the parties, that

17  is, the Government and the Defendants and the lawyers,

18  are going to expect the very best from people who are

19  selected to be jurors, just as you would expect the very

20  best of anyone, of a juror in a case where you were a

21  party either a plaintiff or a defendant or whatever.

22      We've used the jury questionnaire primarily to move

23  jury selection along.  The questions in the

24  questionnaire are primarily those that have been

25  proposed by the lawyers which they ordinarily might ask

 1    in a much shorter case directly to the prospective

 2    jurors.  Here, the lawyers and I decided that it would

 3    be helpful to present these questionnaires to you ahead

 4    of time so that you can provide the information and have

 5    provided the information in the questionnaires to me and

 6    to the lawyers and the parties only.  I have directed

 7    that the questionnaires have not been shared -- are not

 8    to be shared with anyone other than the Court, the

 9    lawyers and the parties.  And when the jury selection is

10    over, the questionnaires will be returned and kept here

11    in the courthouse.  So I want to assure you that

12    anything that you put in the questionnaire will not be

13    out in the public, for example.  That doesn't mean,

14    though, that the lawyers don't have an opportunity to

15    ask additional questions of you during the jury

16    selection process.  And I'm sure that they will have

17    some additional questions of you, both collectively and

18    perhaps individually.

19         The purpose of the jury selection process is to let

20    the parties, to the extent the law allows, pick the

21    people that are going to hear the case.  That's only

22    fair.  If they didn't want to have a jury, they could

23    try the case to me; but they've elected, which is their

24    absolute constitutional right, to have the case tried to

25    a jury, judges of the facts, and so they have a right,

1    to the extent the law allows -- and I'm going to speak

2    to that in a minute -- to pick the people who will

3    become the judges of the facts.

4         So here's what we're going to do.  Mr. Moody, who's

5    my Courtroom Deputy Clerk, is going to call twelve of

6    you to come sit in the jury box.  Your names have been

7    selected at random by a computer.  Is that a surprise to

8    anyone?  We used to use a -- back in the old days we

9    used to use little slips of paper with your name on them

10   and we had a wheel, a true jury wheel.  It's probably

11   around here someplace.  And the courtroom deputy would

12   have it there on his or her desk and then he would spin

13   the wheel and it was kind of like in bingo, you know,

14   and then reach in and pull out the names.  But, of

15   course, now, everything's done by computer.  So we have

16   your names and we'll call up twelve of you to the jury

17   box.  Because we don't really know anything about you

18   personally, that is, where you work and all of that sort

19   of thing, there's a board there, you can see it, and

20   you'll see it when you get into the jury box, and I'll

21   ask each one of you to provide a little bit of

22   information about yourselves and your families to all of

23   us and that will help the lawyers make a selection when

24   the time comes.  I'll ask you some questions, probably

25   not very many, because most of the questions have been

1    asked in the juror questionnaire.

2        Once that's over, I'm going to let the lawyers

3    question you.  I've given each of them 20 minutes, for a

4    total of 60 minutes, to ask questions to get to know you

5    better from their perspective, not my perspective, but

6    from their perspective.  Now, this is not -- at this

7    point in the trial, they're not arguing their case to

8    you.  They're not making you commit to one way or

9    another how you would vote if the evidence is a certain

10   way.  I don't allow that, and that's TV stuff anyway.

11   This case isn't going to be tried like the cases you see

12   on TV.  Then if there are any challenges for cause, I'll

13   hear those, and if a juror is excused for cause, and

14   that generally means just what it sounds like, that

15   there's a reason to think that juror cannot serve, and

16   then another juror will be called up and the questioning

17   of that juror will be much more brief than previously.

18   And here's my point, I want you all to pay really close

19   attention during jury selection, even though you're

20   sitting out there in the gallery, because the chances

21   are 100% that the first twelve people seated in the jury

22   box are not going to be the people who will be the final

23   twelve jurors.  There will be challenges, hopefully not

24   many challenges, for cause; but in addition to

25   challenges for cause, the parties are entitled to

1    peremptory challenges.  The Government gets six.  The

2    Defendants collectively, there are two defendants, they

3    get ten total.  They don't have to use all of them, but

4    they may.  And the purpose of the peremptory challenges

5    is to let them, as I've told you, the law allows this,

6    select the people that they want to hear and decide the

7    case.  So there will be people excused probably during

8    the peremptory challenge process.  And that means that

9    someone else will be called up.  Here's how we'll work

10   this.  When a new person is called into the jury box, I

11   will have them introduce themselves by reading from the

12   board there so that we know who they are.  I may have a

13   few questions for them.  But here's why I want you to

14   listen carefully because I'm going to say if you had

15   been in the jury box when we went through the other

16   questioning, would you have responded to any of the

17   questions either by me or by the lawyers.  So that we

18   don't have to go through all this again.  You don't want

19   that.  We would be here for a week if we went through

20   everything twice.  So if you -- you have to make a

21   mental note, and if a question is asked that if you'd

22   been up there you would have responded to, you say yes,

23   I would have responded something to a question.  And

24   then I will cover that with you.  For however long it

25   takes.  It usually doesn't take very long.  Then I will

1    allow the lawyers to question that specific juror.  They

2    each have three minutes and three minutes only.  And I

3    will keep track of that.  And I will tell the lawyer

4    when the three minutes is up and the lawyer will sit

5    down.  That's the most expeditious and fair way to

6    handle the jury selection.

7         Once that process is over, in other words, once the

8    challenges have been made and we have our twelve jurors,

9    then we will select two alternates.  That process goes

10   much quicker really.  I will tell you now the purpose of

11   alternate jurors is this.  Alternate jurors sit

12   throughout the trial.  They participate in every aspect

13   of the trial as if they were part of the twelve because

14   if for some reason during the trial one or two of the

15   regular jurors somehow are unable to serve, through

16   illness or something else, then an alternate moves in

17   and takes that juror's place.  So the alternates are

18   every bit as important during the trial as the regular

19   jurors, and they take -- their role is the same.  If, at

20   the end of the trial, and by that I mean when all the

21   evidence is in, when I've instructed the jury about the

22   law, when the lawyers have had their turn to make their

23   closing arguments, all twelve of the original jurors are

24   still there, then the alternates are excused and they

25   don't participate in deliberations.  And that's because

1    the law says they can't.  In a criminal case, only

2    twelve -- there can only be twelve jurors participating.

3         Once the jury begins its deliberations, the case is

4    the jurors'.  It's no longer mine.  It's no longer the

5    lawyers'.  There's never any time limit placed on jury

6    deliberations.  The jury's allowed to deliberate for

7    however long it takes to reach a unanimous verdict.

8    Now, unanimous means that all twelve jurors have to

9    agree.  They have to agree on guilty verdicts if there

10   are guilty verdicts returned.  They have to agree

11   unanimously on not guilty verdicts.  In other words,

12   unlike I think in Kansas, at least in civil cases, you

13   can have majority votes, ten and two or something like

14   that.  You can't have that in Federal Court either in

15   civil cases or in criminal cases.  And, one of the

16   functions of the jury -- the jurors have to consider

17   every charge individually as to each defendant.  In

18   other words, it's not an all or nothing type of

19   deliberations.  You have to -- you will have a copy of

20   the Indictment.  You will have a copy of my

21   instructions.  And you'll have whatever time you need to

22   go through those and make a determination as to your

23   verdicts.

24        So, that's a basic outline of the case.  I've

25   eliminated, obviously, the portion of the case that

1    relates to presentation of evidence.   The Government

2    goes first because the Government has the burden of

3    proof beyond a reasonable doubt.   The Government does

4    that by calling witnesses who testify under oath,

5    subject to cross-examination by Defense counsel.   There

6    will be documents introduced, presumably, and the

7    Government will put on its case first.   At the end of

8    the Government's case, the Defendants have an

9    opportunity, if they wish, to put on a case by

10   testifying -- by calling witnesses, by putting on

11   documentary evidence just the same as the Government;

12   but the difference is that they're not required to do

13   that.   There's no requirement in a criminal case for the

14   Defendants to put on any form of a defense.   This is

15   universal in criminal justice in this country.   And the

16   jurors cannot, if that happens, cannot consider that in

17   any way as indicating that the Defendants must be guilty

18   because they didn't tell you their side of the case.

19       You'll get more detailed instructions on this as we

20   go along.   The thing that I want you to remember,

21   uppermost in mind -- and you'll hear me use this term

22   several times during jury selection -- the juror that

23   we're looking for, and by we I'm talking about me and

24   the lawyers and the parties, are looking for, is someone

25   who can agree to be fair and impartial.   Fair and

1    impartial.  That means a person who can agree to listen

2    to all the evidence, not just part of it, but all of it;

3    not make up his or her mind about the case until all the

4    evidence is in; and then keep an open mind when you hear

5    the Court's instructions and keep an open mind when you

6    hear the closing arguments of counsel.  Not until you

7    enter the jury room to discuss the case can you then

8    begin to make up your mind about the case.  And the

9    point is this:  During the trial you're not going to be

10   discussing the case.  There will be times when you're

11   going to be in the jury room but I'm not going to permit

12   you to talk about the case.  There's a reason for that

13   but I'll cover that with the people who are actually

14   selected.  So you must, during the trial, not talk to

15   your fellow jurors, to your friends, to anybody else

16   about the case.  You can't make up your mind until the

17   case is in.

18       Now, you've heard me -- you know to some extent I

19   think what this case is about because of the

20   questionnaire.  The style of the case is United States

21   of America against Steven J Schneider and Linda K

22   Schneider, also known as Linda Atterbury, doing business

23   as Schneider Medical Clinic.  The case number is

24   07-10234.

25       The Government is represented by Tanya Treadway,

13

1    who is standing, who is an Assistant United States

2    Attorney from Topeka.  And would you please introduce

3    your co-counsel and the case agents.

4             MS. TREADWAY:  I would be pleased to do so,

5    Judge.  Thank you.  My co-counsel in this case are:  Mr.

6    Jon Fleenor from our Kansas City office.  Jon has been

7    with our office since 2008.  He was previously with the

8    Attorney General's office here in Kansas.

9         And this is Mr. Jabari Wamble, who is with the

10   Medicaid Fraud and Abuse Division of the Attorney

11   General's office.

12        And seated here in front are some of my case agents

13   and people that you may see as witnesses.

14        And my great paralegal who will be at the table

15   with us all the time.  This is Sean Moore.  Sean works

16   in our Topeka office and previously worked here in

17   Wichita.  Has been a long term employee with our office

18   and worked as a paralegal.

19        Next we have Mr. Martin Redd who's with the Drug

20   Enforcement Administration, the DEA.

21        Next we have Rebecca, Becky Martin, who's with the

22   Federal Bureau of Investigation.  By the way, Martin

23   works out of the Overland Park office and Becky works

24   here in Wichita.

25        Next we have Mr. James Greer, who is with Health

1    and Human Services Office of Inspector General, Office

2    of Criminal Investigation.  That's a very long title.

3    That's Kathy Sebelius' group form of government.  And

4    Mr. Greer works out of the Kansas City office.  Formerly

5    from California.

6        And seated to his right is Mr. Perry Seaton, who is

7    also with H-H-S but he is with the Department of

8    Evaluation, and he will be a witness in this case and

9    you will be seeing him as one of our experts.

10       That's our trial team.  Thank you.

11            THE COURT:  All right.  And when the time

12   comes I will ask people in the jury box if they're

13   acquainted with any of those people who are introduced.

14       The Defendant Steve Schneider is represented by

15   Mr. Lawrence Williamson, who is standing.  And,

16   Mr. Williamson, will you please introduce your client.

17            MR. WILLIAMSON:    I am Lawrence Williamson.  I

18   actually practice in Kansas City.  I practiced here for

19   about four years, moved up to Kansas City about a year

20   and a half ago.

21       And this is Dr. Stephen Schneider, long time

22   resident of Haysville since about 1983.  Thank you.

23            THE COURT:  Linda Schneider is represented by

24   Kevin Byers, her lead counsel.  Mr. Byers is standing.

25   And would you please introduce Mr. Gorokhov and your

 1   client please.

 2          MR. BYERS:  Thank you, Your Honor, I will.  I

 3   am Kevin Byers, as Judge said.  I'm from Columbus, Ohio.

 4   I've been an attorney for 22 years.

 5          This is Linda Atterbury, also known as Schneider.

 6   Long term resident of Haysville and Wichita area.

 7          And this is Eugene Gorokhov, from the Washington

 8   D.C. area.  He is co-counsel with me for Linda.

 9          THE COURT:  All right.  There's another lawyer

10   representing Mrs. Schneider named David Leon.  He may be

11   here at times.  He is what's called local counsel and

12   he's a Wichita lawyer.

13          Who's this gentleman behind you, Mr. Williamson or

14   Mr. Byers?

15          MR. WILLIAMSON:  This is Shawn Hamm, our

16   paralegal for Mr. Byers' office, Your Honor.

17          THE COURT:  All right.  Thank you very much.

18   Robert.  All right.  I'm going to have Mr. Moody swear

19   you to answer questions truthfully and then we will put

20   twelve of you in the jury box.

21          Now, can all of you hear me?  Anybody who can't

22   hear me.  If at any time anybody can't hear me or can't

23   hear one of the lawyers, raise your hand, get our

24   attention.  They want you to hear what they have to say.

25   And they'll be addressing you from the podium and, of

1    course, this is all electronic in here.  But if you

2    can't hear -- and feel free to move up when people go up

3    to the jury box.  If you want to move up closer, you

4    certainly may do that.  So Mr. Moody, would you please

5    swear the jury panel.

6             MR. MOODY:  If the jurors would please rise

7    and raise your right hand.

8                   (Jury panel sworn to answer voir

9                   dire questions.)

10            THE COURT:  Introductions in order here.

11   Robert Moody is my Courtroom Deputy Clerk.  He'll be

12   here throughout the trial, or most of the trial

13   certainly.  His job is not just to attend to this case

14   but he manages all of my cases as they move through my

15   part of the court here.

16        Cindy Schwemmer is my court reporter.  She has been

17   my court reporter since I started this job over 18 years

18   ago.  And I will tell you, as I tell every jury that

19   I've ever had, she's the most important person in the

20   trial.  Her job is to take down accurately everything

21   that is said by anybody so that if the case is reviewed

22   at a higher level for some reason, that court will have

23   an accurate and complete transcript of the trial.  She

24   doesn't make a transcript for you all.  I think

25   sometimes jurors think that they're going to go into the

1    jury room with a transcript.  That's not the case.  But

2    she will be here through the trial.

3         Rachael Silva, who's sitting down here is my senior

4    law clerk.  I have two law clerks.  Ms. Silva and

5    Krystle Dalke.  And you may see -- you're going to

6    primarily see Ms. Silva during the trial.  You may see

7    Mrs. Dalke from time to time.  Law clerks are lawyers

8    and they come to work for federal judges for a period of

9    time -- I was a law clerk 35 years ago in this very

10   courtroom -- and do all kinds of things for the judge to

11   help him or her with their cases.  I like to say that

12   the law clerks are my lawyers.  They do legal research.

13   They write drafts of memoranda.  They help with the jury

14   instructions.  All kinds of things.  You will see me

15   talking with Ms. Silva frequently probably.  If a

16   question, for example, comes up during the trial that

17   requires some legal research, I'll talk to her about

18   that and she will be able to do that and help me out.

19   State judges, trial judges, don't have law clerks.  And

20   I have friends who are trial judges in the state court,

21   and for some reason -- I don't know how they manage

22   their work without the law clerks.

23        There's one other thing that I was going to tell

24   you all, personal, for those of you who are sitting back

25   there saying, God, I don't know whether I want to be on

1   a jury or not.  I was a juror several years ago in state

2   court.  Not federal Court.  And at that time I had been

3   a federal judge for I suppose 15 years.  I don't

4   remember the exact date that I served.  And I was amazed

5   at what I learned from the process of being a juror that

6   I didn't know.  It was a civil case.  It was a traffic

7   accident case, wasn't a long case, but I learned a great

8   deal more about being a juror in that case than in

9   talking with jurors who have served on my cases.  And I

10  don't know how many jury trials I've had now, but last

11  time I checked several years ago it was more than 150.

12  And I'm telling you that because I think those of you

13  who will be picked will find that your service is not

14  just important, but that it is -- will be very

15  interesting and challenging for you.  As it was for me.

16          All right.  Let's fill the jury box please.

17                          (REPORTER'S NOTE:  Pursuant to

18                          District Court Rules and

19                          Procedure, to preserve the

20                          privacy of members of the jury

21                          panel, their names will be

22                          replaced by their Seq Number as

23                          listed in the Master Jury List

24                          for this date.)

25          MR. MOODY:  Juror No-001.  Juror No-001, if

1     you could take the seat closest to us in the back row

2     please.  Yes, sir.  Juror No-007.  Juror No-010.  Juror

3     No-014.  Juror No-018.  Juror No-020.  Juror No-022.

4     Juror No-022, if you could take a seat in the front row,

5     please, closest to us.  Thank you.  Juror No-023.  Juror

6     No-024.  Juror No-025.  Juror No-027.  Juror No-030.

7              THE COURT:  Now, I'm going to pause just a

8     moment here.  What you have in front of you are the

9     lists of Government and Defense witnesses.  These are

10    the prospective witnesses.  That doesn't necessarily

11    mean that all of these people are going to be called;

12    but I'd like to take a moment, have you read through

13    those lists.  If you recognize anybody on that list, or

14    think you recognize somebody on that list, we'll want to

15    know that.  So let's just kind of stand at ease here and

16    you look through those.  You all have a pencil, I think.

17    You can make a mark or whatever if you think that you

18    know someone.

19                   (Off-the-record.)

20              THE COURT:  Has everybody had an opportunity

21    to go over the list?

22        Now, when I sent out the questionnaire, I told you

23    a little bit about what this case is about.  And I

24    suspect that some of you, when answering the

25    questionnaires, you do know something about what this

 1    case is about.  There have been news media reports about
 2    it.  There was one in the newspaper this morning.
 3    Nothing wrong with news media reports about a case,
 4    certainly before the case starts.  Once the jury is
 5    picked and the case starts, of course, one of the
 6    instructions that I give to the jury is that they're not
 7    to read any news media reports about the case.  Because
 8    you'll know everything you need to know about the case
 9    from what happens in the courtroom.  But -- and there's
10    certainly nothing disqualifying about the fact that you
11    may know something about the case.  The key, as I've
12    told you before, is not what you know about the case,
13    not what you may even think about the case at this
14    point.  It's your ability to be fair and impartial.  In
15    other words, whatever you may think about the case now,
16    it means your ability to put that aside, put that out of
17    your mind, and decide the case based on the facts and
18    the law.  Not on what the newspaper has said, or the TV
19    has said, or the lawyers may have said in commenting on
20    the case.  It's not that hard, truly.  It may sound hard
21    but it really isn't.  You're going to hear a great deal
22    of evidence in this case and in all probability, to the
23    extent you may think you've read something or seen
24    something on television about this case, what you've
25    seen may not have a great deal of -- may not correspond

1    much to the evidence because, after all, the reporting

2    that's done prior to a case is not done on the basis of

3    things that have happened in the courtroom generally.

4    But I do want to bring that to your attention.  The key

5    is being fair and impartial.  The ability to be fair and

6    impartial.  So you know a little bit about -- or most of

7    you, many of you, may know a little bit about the case.

8        I'm not going to read the charge to you.  The

9    charge is quite lengthy.  And you don't need to know

10   much about it in order to go through the -- this

11   questioning process.  But the Government has charged

12   these Defendants, first of all, with a conspiracy.

13   Conspiracy regarding the distribution of controlled

14   substances.  Controlled substances are narcotic

15   substances, for example, that the Government regulates

16   for which a prescription is required.  That's probably

17   the easiest way to define a controlled substance.  And a

18   conspiracy is simply an agreement between two or more

19   people to violate the law.

20       The Government has charged the Defendants with

21   health care fraud and conspiracy to commit health care

22   fraud.  And also the Government has charged money

23   laundering.

24       Money laundering is a term that you might not be

25   terribly familiar with and so I will tell you what money

1   laundering is.  Money laundering means a transaction

2   designed to hide the source, location, nature, ownership

3   or control of money or property derived from an unlawful

4   source.  That's what money laundering is.

5        Now, these -- and the charges are in somewhat more

6   detail and if the lawyers feel for some reason that they

7   want to go into that with you, that's their privilege

8   during the 20 minutes that they have; but the point of

9   me telling you about the charge is simply this.  So

10   that -- to refresh your recollection for those of you

11   who may have read something about the case; to tell you

12   a little bit about the case for those of you who may not

13   know anything about the case.  But here is what's

14   important.  The charges against these Defendants are not

15   evidence of any kind against them.  The charge is

16   brought by an Indictment which is -- you will get to

17   see, those of you who are ultimately selected as jurors.

18   It's a written document that places the Defendants and

19   their lawyers on notice of what the Government is

20   charging them with committing violations of federal

21   criminal law.  It is not evidence of any kind.  These

22   Defendants, both of them, have pled not guilty to all

23   the charges in the Indictment and they are presumed

24   innocent of those charges; and they are to be presumed

25   innocent by the jurors who are selected to hear the

1    case.  They're presumed innocent throughout the trial,

2    not just throughout the Government's case.  They're

3    presumed innocent even if they put on evidence, which

4    they're not required to do but may if they wish.

5    They're presumed innocent.  They're presumed innocent

6    when I read the instructions to you.  They're presumed

7    innocent when the lawyers make their closing arguments.

8    They're presumed innocent until such time, if ever, that

9    the evidence convinces all twelve of the jurors beyond a

10   reasonable doubt of their guilt, not collectively, but

11   of the individual charges, and consider each Defendant

12   individually.

13        And I will tell you what the term beyond a

14   reasonable doubt means.  Proof beyond a reasonable doubt

15   is proof that leaves the jurors firmly convinced of the

16   Defendants' guilt.  There are very few things in this

17   world that we know with absolute certainty; and in

18   criminal cases the law does not require proof that

19   overcomes every possible doubt.  If, based on your

20   consideration of the evidence, you are firmly convinced

21   that the Defendant, or either of them, is guilty of the

22   crimes charged or any of them, then you must return

23   verdicts of guilty.  If, on the other hand, you think

24   there is a real possibility that the Defendants, either

25   individually or together, are not guilty of any or all

1    of the charges, you must give them the benefit of the

2    doubt and find them not guilty.  That's what it is.

3    You'll hear this several times.  Proof beyond a

4    reasonable doubt isn't more than that and it isn't less

5    than that.  That's exactly what it is and that's the

6    instruction that you will get.

7         All right,  I'd like to start this process, but are

8    all of you comfortable at this point?  Is there anybody

9    that needs a break?  Yes, sir.  Anybody else?  Sir?

10             UNIDENTIFIED POTENTIAL JUROR IN GALLERY:  Your

11   Honor.

12             THE COURT:  Yes, sir.

13             UNIDENTIFIED POTENTIAL JUROR IN GALLERY:  Can

14   we have a restroom break?

15             THE COURT:  Yes, of course.  Let's do this.

16   Let's take about ten minutes for everybody to take a

17   restroom break.  Okay.  The men's restrooms are down at

18   the end of this hall and there are restrooms above on

19   the third floor and the fourth floor in the same

20   location.  The ladies' restroom is down at the end of

21   this hall and around the corner.  When you come back, I

22   want those of you who are seated in the jury box to

23   return to the seats where you are.  Okay?  Because we

24   know who you are now.  Rest of you can come back.  I

25   think ten minutes.  We'll make sure you're all back

1   before we reconvene.

2              (Off-the-record discussion).

3        THE COURT:  That's right, there is a restroom

4   on the first floor but you have to go downstairs, you

5   know, and to get back up you have to come back up the

6   elevator.  But you go to the center of the main hall and

7   then you go down the main hall and there's a restroom on

8   each side at the end of the hall.  There should be

9   enough for everybody.  All right.  We'll take a recess

10  for about 10 or 15 minutes.

11             (Recess.)

12       THE COURT:  Juror No-001, am I pronouncing

13  that correctly?  Would you tell us about yourself

14  please.

15  A    (Juror No. 001)  Okay.  My name is Juror No-001.

16  Park City, Kansas.  I work out at Cessna Aircraft,

17  Pawnee Division.  37 years, four months.  I'm married.

18  Wife works at Via Christi.  Operator.  Education, North

19  High, '72.  Vocational printing, '72.  15 hours at WSU.

20  Number of children: three.  Ages: 29, 24 and 19.  My

21  oldest son is a manager at Wells Fargo in San Francisco.

22  My other son, 24, works at Wells Fargo.  My daughter,

23  19, University Tulsa, Oklahoma.

24            THE COURT:  Thank you, very much.  You may be

25  seated.  Can you use the microphone though.  Wait, I'm

1    not finished with you.

2    A   I'm a little nervous.

3          THE COURT:  Okay.  Were you able to read

4    through those lists of potential witnesses?

5    A   Yes.

6          THE COURT:  Did you recognize anybody on that

7    list?

8    A   No, sir.

9          THE COURT:  All right.  Thank you very much.

10   It's not necessary to stand.  Unless I can't hear you.

11   If I can't hear you, I'm going to make you stand up.  So

12   that will encourage you to speak up.

13       Did you know any of the people who were introduced?

14   A   No, sir.

15         THE COURT:  All right.  Now, you know my

16   general schedule in the case.  Is that going to present

17   a problem for you?

18   A   No.  No, sir.

19         THE COURT:  Thank you.  I've gone through your

20   questionnaire, and I don't think that I have any

21   questions based on your questionnaire.  You've heard me

22   say that the Defendants are charged but are presumed

23   innocent of the charges; that the Government has the

24   burden of proof beyond a reasonable doubt; that the

25   Defendants have no burden of proof of any kind in the

1     case.  Do any of those rules of law bother you or would

2     it be impossible for you to follow those if you're

3     picked to be a juror?

4     A    No, sir.

5              THE COURT:  All right, sir.  Now, I'm just

6     trying to remember if I asked this question -- and I

7     think I did -- on the questionnaire.  But I'll ask it a

8     little bit differently.  Is there anything about what

9     I've told you the role of a juror will be in this case

10    that would make it impossible for you to be fair and

11    impartial?  And by that, what I mean is this.  And I'll

12    say this to all of you so I don't have to constantly

13    repeat this.  I told you what it means to be a juror.

14    You have to be fair and impartial and all of that.  But

15    the thing that I neglected to tell you earlier is that

16    you have to be willing to be decisive.  In other words,

17    you have to be willing to decide the case.  I'm not

18    suggesting that you have to decide it in any particular

19    way; but at the end of the case, I always give the

20    jurors instructions about how they are to act or

21    participate when they are in the jury room and those

22    instructions say in essence that you have to be willing

23    to listen to your fellow jurors and their feelings about

24    the case and you have to be willing to express your own

25    feelings about the case; and if you are convinced by

1  your fellow jurors that your feelings are wrong, you

2  have to be willing to accept that.  You never have to

3  decide the case in a way just for the purpose of

4  returning a verdict.  All jurors are individuals in the

5  jury room, but they have to be willing to listen and

6  they have to be willing to decide.  I had a case several

7  years ago, it was a civil case so I can be a little more

8  candid about it.  I don't remember much about the case

9  but I remember that it was well tried and that we went

10 through a very similar jury selection process.  When I

11 explained the jurors' role to them, nobody had any

12 questions.  I explained to them that they had to be

13 willing to decide the case, whatever the decision was, I

14 wasn't suggesting that in any way.  Had no reason to

15 think there was a problem.  Finished up the case.  The

16 jury was in there deliberating and I began to get notes

17 from the jurors:  We can't decide the case, we can't

18 decide the case.  What actually happened was that one of

19 the jurors went into the jury room and said I just don't

20 want to do this, I'm sorry, but I don't want to

21 participate in deliberations, I don't want the

22 responsibility of deciding the case.  I had to declare a

23 mistrial in that case, hung jury, as some people call

24 it.  And that can't happen -- it can happen, but it

25 shouldn't happen because I try very hard to make sure

1    that the jurors understand what their role is going to

2    be.  The another thing I didn't tell you and that is

3    this -- and I preface this by saying I'm not in any way

4    suggesting that this will be your verdicts -- but if you

5    find the Defendants guilty, or either of them guilty, of

6    any or all of the charges, I am the one who sentences

7    the Defendants.  I decide what the sentences will be.

8    It's never up to the jury.  And you would receive an

9    instruction that you cannot consider in any way as part

10   of the case or part of your deliberations what the

11   result of your verdicts would be, whether they would be

12   not guilty or guilty.

13        Now, I'm sorry to give you that speech, Juror

14   No-001, but I felt I'd left that out.  Anything about

15   that that would bear on your ability to be a fair and

16   impartial juror?

17   A   (Juror No. 001)  No.

18             THE COURT:  All right.  Thank you very much.

19   Let's now go to Juror No-007.

20   A   (Juror No. 007)  My name is Juror No-007.  I live in

21   Bentley.  I work at UniTruck Equipment as a diesel

22   mechanic.  I've been there six years.  I am married.  My

23   spouse is named Rebecca.  She's a hair stylist.  I have

24   a high school education.  A bit of college, not much.  I

25   have four kids.  They are 15, 12, 10 and 7, so they're

30

1   not working.  They're just going to school.  And that's

2   it.

3           THE COURT:  Juror No-007, were you able to

4   review the list of witnesses?

5   A  Yes, sir.

6           THE COURT:  Potential witnesses.  Did you

7   recognize any of them?

8   A  No, sir.

9           THE COURT:  And were you able to -- did you

10   recognize any of the names of the individuals who were

11   introduced?

12   A  The attorneys and stuff?

13           THE COURT:  Yes, sir.

14   A  No, sir.

15           THE COURT:  And their staff.

16   A  No, sir.

17           THE COURT:  All right.  Now, I've noticed in

18   your questionnaire, one answer is that you believe that

19   Stephen Schneider is guilty and that you believe Linda

20   Schneider is guilty by association.  Is that still your

21   view of the case as you know it at this point, after

22   hearing what I've had to say?

23   A  Yes, sir.

24           THE COURT:  All right.  Thank you very much.

25   I'll excuse you.  And I'll say this to Juror No-007 and

1    to everybody else.  I appreciate your candor.  To get a

2    fair and impartial jury, we have to ask these questions

3    and people have to give honest answers and I appreciate

4    that very much that you did.  And you're excused and

5    thank you.

6    A    Thank you.

7              MR. MOODY:  Juror No-034.

8              THE COURT:  Good morning.  Will the schedule

9    cause you any problems Juror No-034?

10   A    (Juror No 034)  Possibly.

11             THE COURT:  Tell me about that if you would.

12   A    I just help take care of my two grandkids, and I

13   have three elderly people that I'm on watch for.

14             THE COURT:  What's your schedule with respect

15   to your grandchildren?

16   A    I keep them three days a week and then volunteer at

17   church a couple days a week.

18             THE COURT:  I'm sorry.  You keep them three

19   days a week?

20   A    Uh-huh.

21             THE COURT:  During the day?

22   A    Uh-huh.

23             THE COURT:  Is that something that you can

24   arrange for someone else to take care of them?

25   A    Possibly.

```
 1              THE COURT:  All right.
 2   A    I'm just the top one.
 3              THE COURT:  And what about, you said you are
 4   on watch for elderly people.  I'm not sure what that
 5   means.
 6   A    Well, I just mean like my in-laws are elderly and
 7   I'm the one that would step in to help if something
 8   happened and they're not in very good health.
 9              THE COURT:  Do you anticipate that anything is
10   going to happen?  By that I mean is one of them in the
11   hospital or anything like that?
12   A    Not this week.
13              THE COURT:  Well, I understand.  The point
14   here is that during the trial we need people here who
15   can agree to be here during the trial; and not just be
16   able to be here, but to not be so concerned about
17   something else that they can't listen to the evidence,
18   can't be fair and impartial.  If you don't hear what's
19   going on and if you're sitting there thinking about, you
20   know, an elderly relative or something.  I'm not trying
21   to talk you out of being a juror.  I'd like for you to
22   stay and I -- but how do you feel about it?
23   A    I've been more concerned as it's gotten closer that
24   my head wouldn't be where it needed to be.
25              THE COURT:  Well, I think what I'm going to do
```

 1    is I'll let the lawyers inquire into that a little bit.

 2    I don't want people to feel that they have to be here if

 3    they're concerned about something else; but everybody's

 4    concerned about something else.  I can't imagine that

 5    there's anybody here in this courtroom that doesn't have

 6    something, some other concern; and if that was a reason

 7    for being excused from jury service then we would never

 8    be able to have jury trial.

 9    A    Sure.

10            THE COURT:  You understand that?

11    A    Sure.

12            THE COURT:  All right.  And I don't think

13    you've had an opportunity yet to review the list.  Would

14    you do that real quickly for me.

15    A    Sure.

16                    (Off-the-record.)

17            THE COURT:  Yes, ma'am.  Do you recognize any

18    of the names?

19    A    I know the brother of one of 'em but--

20            THE COURT:  Who would that be?

21    A    Wes Garten.

22            THE COURT:  Which list is he on?

23    A    The thick one.

24            THE COURT:  On the Government or the

25    Defendants' list?

1    A    The Defendant.

2           THE COURT:   And you know the brother of the

3    witness?   The witness name is Garten?

4    A    Uh-huh.

5           THE COURT:   Who's the brother that you know?

6    A    His wife is Adele.   I was good friends with her.

7    Russ.

8           THE COURT:   Have you had any conversations

9    with Russ or his wife about this case?

10   A    I have not.

11          THE COURT:   All right.   Now, in going through

12   your questionnaire you've got -- you answer one question

13   that indicates that you would tend to think that the

14   Defendants are not guilty and then you have another one

15   that says you tend to think they may be guilty.   And I

16   guess my question is based on what we've talked about

17   this morning, what are your feelings about being a fair

18   and impartial juror?

19   A    I think I could be.   My answer on that was that I --

20   there's a friend that I volunteer with at church who is

21   aware of the Defendants, and in visiting with him over

22   the last year, he has felt like the husband was more

23   innocent and the wife not, and so that was where, if I

24   had to say, that's where my feelings were leading but --

25          THE COURT:   Yes, ma'am.   I appreciate that.

 1    A    But just from conversations with him and his

 2    experiences --

 3              THE COURT:  Well, that's why I said earlier

 4    that many of you probably have had conversations with

 5    others about this case.  It would be impossible even in

 6    cases that don't receive any publicity to have people

 7    who come in here with a blank slate mind who have no

 8    opinions about anything.  But the point that I'm raising

 9    at this time with you is now that you know what a juror

10    has to be, to be fair and impartial, could you put your

11    conversations and any of those thoughts that you may

12    have had out of your mind and decide the case based on

13    the evidence and the law that I tell you applies?

14    A    I would try.

15              THE COURT:  You've got to do more than try.

16    You've got to be willing to do it. I'm sorry to put you

17    on the spot but that's kind of the way it has to be

18    here.  That's why I told the story about the juror who,

19    you know, goes into the jury room and says, well, I said

20    that when the judge was asking me that -- or I didn't

21    say anything and now I don't feel that way.  You've got

22    to be willing to not let outside influences, whatever

23    they may be, influence you.  Can you do that do you

24    think?

25    A    I guess I'm hesitating on that.  Hesitant, yes.

1          THE COURT:  Would you feel -- let me ask it

2     this way.  This is some friends of yours at church?

3     A    (Nods in the affirmative.)

4          THE COURT:  Whatever your verdict would be,

5     either as an individual or the jury's verdict would be,

6     would you feel that you would have to explain or justify

7     that verdict to your friend at church?

8     A    Probably.

9          THE COURT:  And you feel that thinking that

10    you would have to explain that verdict, whatever it

11    would be, would effect your ability to be fair and

12    impartial?

13    A    It might.

14         THE COURT:  I'm going to let the attorneys

15    question Juror No-034 at this point if they have any

16    questions.  Ms. Treadway?

17         MS. TREADWAY:  Thank you, Judge.

18         THE COURT:  Three minutes.

19         MS. TREADWAY:  Good morning Juror No-034.  I

20    don't want you to feel like we're picking on you here.

21    But as the Judge said, it's very important for both

22    parties to have fair and impartial jurors.  And that's

23    all we're asking.  And we appreciate your honest

24    answers.  Also on your questionnaire there were two

25    things that caught my attention.  And the first one was

1    about the facts of the case and the second one was about

2    you.  And that first issue was that you knew a church

3    member that lost a parent who had been a patient at the

4    Schneider Medical Clinic.  How has that effected you in

5    terms of being called for jury duty in this case?  Does

6    that worry you?

7    A   It's a case where I know the family and -- but I'm

8    not close enough that I've gone through a lot with them.

9    I just was aware that we needed to be praying for them

10   and lifting them up.  I have a little hesitation, yes.

11         MS. TREADWAY:  And, again, similar to Judge's

12   questions, would you feel that would effect your ability

13   to continue to volunteer at church or to continue to

14   speak with them or pray with them or pray for them if

15   you came back with a verdict that perhaps they didn't

16   like?

17   A   Well, I hope that they would know that we did the

18   best job we could and that we would move past it.

19         MS. TREADWAY:  But you're a little worried

20   about that, aren't you?

21   A   Sure.

22         MS. TREADWAY:  And the thing that I'm very

23   concerned about, again, talking to the Judge as he was

24   talking to you earlier about this juror that couldn't

25   make a decision.  You said that you had former jury

1    service and you found it nerve racking.  The charges in

2    this case are very serious and this is going to be a

3    long case.  And I am worried about you.  Do you believe

4    that sitting on this jury for a length of time and

5    making the decisions that you would have to make, given

6    all the information that we have about your church

7    involvement, do you think that this is going to be nerve

8    racking and upsetting to you?

9    A    It could be, yes.

10            MS. TREADWAY:  Judge, I would move to strike

11    for cause.

12            THE COURT:  Mr. Williamson?

13            MR. WILLIAMSON:  Good morning.  I won't take

14    very long.  I just want to just ask a couple of

15    follow-up questions.  I think His Honor has done an

16    excellent job in telling you guys what we really need in

17    order for this system to work and I really want to thank

18    you for your candor.  And I see you're struggling with

19    answers.  And it looks like you're really taking a

20    serious thought before you make an answer.  As you sit

21    there right now, are you able to say that if you were

22    selected as a juror you would do everything in your

23    power to be fair and impartial to the Defendants in this

24    case?

25    A    I hope I would.

1    MR. WILLIAMSON:  Okay.  Your Honor, at this

2  point we would object.  I just think that she hasn't

3  said that she absolutely couldn't.  She hasn't said she

4  absolutely could.  I know it's a little difficult.  I

5  think she's really struggling through the answers and we

6  can't ask more than that from a person.  At least from

7  Mr. Schneider's point of view.

8    THE COURT:  All right.  Mr. Byers.

9    MR. BYERS:  Good morning.  This should be

10  close to the end of this for you.  I just want to try

11  and follow up a little bit on your comment in the

12  questionnaire about you think Mrs. Schneider might be a

13  little more guilty or a guilty party when contrasted

14  with her husband.  And is that still your feeling even

15  after hearing the Judge's explanation about the

16  presumption of innocence that is attached to these

17  people that everybody in here enjoys when they're

18  charged with a crime?

19  A    It was a good reminder that I need to be open.

20    MR. BYERS:  Okay.  As far as trying to follow

21  up on Ms. Treadway's questions about this church member.

22  And this is something that you've known from these

23  prayer sessions or announcements about praying for this

24  family that this was also somehow connected with the

25  Schneider Medical Clinic?

1    A    Well, they're a family in our church that we were

2    aware that they were going through losing a loved one.

3            MR. BYERS:  As part of that awareness, the

4    Schneider Clinic was somehow involved or mentioned?

5    A    Yes.

6            MR. BYERS:  Do you remember exactly how that

7    occurred?

8    A    Well, her parent was under the care of Dr.

9    Schneider.

10           MR. BYERS:  So it was just sort of general

11   knowledge?

12   A    Yes.

13           MR. BYERS:  There wasn't a particular

14   announcement or something published in the bulletin or

15   something like that?

16   A    No.

17           MR. BYERS:  Okay.  That's all I have.  Thank

18   you.  We join in the motion for cause, strike for cause.

19           THE COURT:  I'm sorry.

20           MR. BYERS:  We join in the Government's strike

21   for cause.

22           THE COURT:  I think so.  Juror No-034, I think

23   you probably can be a fair and impartial juror but I'd

24   like -- I don't want you to agonize over it and I think

25   that may be what you're doing.  So I'm going to excuse

1    you for cause.  Again, with my thanks and the lawyers'

2    thanks.  Hope we didn't embarrass you too much but --

3    A    No.  No, I understand.

4              THE COURT:  All right.  Thank you very much.

5    Call another juror please.

6              MR. MOODY:  Juror No-036.

7              THE COURT:  Good morning Juror No-036.

8    A    (Juror No-036)  Good morning.

9              THE COURT:  Will the schedule cause you any

10   problem?

11   A    No, sir.

12             THE COURT:  Thank you.  Would you please take

13   the time to look over the list of potential witnesses

14   for me.  Let me know when you've done that.

15                    (Off-the-record.)

16             THE COURT:  Did you recognize any names?

17   A    No, sir.

18             THE COURT:  And did you recognize any of the

19   people who were introduced here today?

20   A    No, sir.

21             THE COURT:  I've gone through your

22   questionnaire.  I only have one question from the

23   questionnaire, and that is, without going into any

24   details, you have been the victim of a crime.  Is there

25   anything about that that would bear on your ability to

1   be a fair and impartial juror?

2   A   No, sir.

3           THE COURT:  All right.  Thank you very much.

4   But I neglected to have you tell us about yourself.

5   A   My name is Juror No-036.  I'm from Mulvane.  And for

6   the past 16 months I've been out of work so I've been

7   driving my husband crazy at home.  I've been married for

8   24 years.  My husband is a mechanic.  And I have a

9   Bachelor's Degree in Business Administration.  I have

10  two children.  One 23 and one 18.  And she'll be

11  graduating this year.  My son works as a shift

12  supervisor at Wendy's in Derby.  And my daughter lives

13  with us.

14          THE COURT:  What's she going to do when she

15  graduates?

16  A   She is going -- she is going to be the smart one.

17  She's going to Florida and moving down there to college.

18          THE COURT:  Good.  All right.  Can you think

19  of any reason why you can't be a fair and impartial

20  juror in this case?

21  A   No, sir.

22          THE COURT:  All right.  Thank you very much.

23  Let's move on to Juror No-010.

24  A   (Juror No-010)  I live in Andover.  I work for the

25  Defense Commissary Agency.  I'm married.  My spouse

43

1    works at Spirit.  I have a high school education.   Two

2    children, 33 and 24.  The 33 year old works for Kraus

3    Heating and Air Conditioning.  And the 24 year old is --

4    goes to WSU and is self-employed.

5             THE COURT:  What is he self-employed in?

6    A   I help him out with sports photographly and he's

7    also getting into some computer businesses.

8             THE COURT:  All right, sir.  Again, will

9    this -- does the schedule that I've indicated, will that

10   cause you any problems?

11   A   No.

12            THE COURT:  All right, sir.  Let me take a --

13   have you had an opportunity to look over the list?

14   A   Yes.

15            THE COURT:  And do you recognize anybody on

16   that list?

17   A   Possibly Dr. Moeller might have treated my youngest

18   son about 18 years ago.

19            THE COURT:  He's the --

20   A   Is he the ear, nose and throat doctor?

21            THE COURT:  I don't think so.

22   A   Okay.  It may be somebody else then.

23            THE COURT:  I think there's a Moeller here

24   that does dermatology.

25   A   That would be --

 1                MS. TREADWAY:  He is a psychiatrist, is he

 2    not?

 3                THE COURT:  But who listed him?

 4                MR. WILLIAMSON:  We did, Your Honor.  He's a

 5    psychiatrist, Your Honor.

 6                THE COURT:  A psychiatrist.

 7                MR. WILLIAMSON:  Yes, sir.

 8                THE COURT:  All right.  Well, in any event --

 9    A    No.

10                THE COURT:  That isn't who worked on your son.

11    Let me look real quick here at your questionnaire.

12    You've seen a TV report but wasn't paying much attention

13    to it.

14    A    No.  I learned more from the questionnaire and what

15    you just said earlier.

16                THE COURT:  I've seen -- no adverse reflection

17    on the media -- but I always like the media to know that

18    not everybody is hanging on their every word about a

19    case.

20        Your home was robbed in the '80s.  Is there

21    anything about that that will effect your ability to be

22    fair and impartial?

23    A    No.  Nothing.

24                THE COURT:  You said here in answer to -- I

25    don't quite understand your answer to question number

1    22.  Say:  Yes; don't know; couldn't attend; back

2    problems.  Does that-- is that relating to when you were

3    called as a juror before and you didn't get to serve

4    because --

5    A    Yes.  I was having back problems, home from work,

6    and I was relieved --

7              THE COURT:  How are you doing now?

8    A    Well, it will never go away.

9              THE COURT:  I know, I've got them too.  But --

10   and I see you also had another problem that I've had a

11   couple of times.  We won't go into that except do you

12   feel that physically you can sit as a juror.  I have

13   frequent breaks; and if you were uncomfortable for some

14   reason during the trial itself, you just raise your hand

15   and we would take a break.  Is that going to cause you

16   any problems?

17   A    No.  That's fine.

18             THE COURT:  All right.  Thank you very much.

19   Let's go to -- I didn't ask you, I don't think, if you

20   recognized any of the people who were introduced.

21   A    No.

22             THE COURT:  All right.  Thank you.  Let's go

23   on to Juror No-014.

24   A    (Juror No-014.)  Live in Hutchinson, Kansas.  My

25   occupation is Dover (sic) Aerospace Center as production

```
 1    control coordinaqtor.  Been married 25 years.  My wife,
 2    Lori, is director of business and finance for USD 308.
 3    Education.  I have a Bachelor's in Applied Business.  I
 4    have three children.  My oldest, she's 22, at the
 5    University of Kansas in Lawrence.  Emily is 19 at
 6    Johnson County Community College, Overland Park.  My son
 7    Tanner, 17, student at Hutchinson high school.
 8              THE COURT:  Have you had an opportunity to
 9    look over the list of potential witnesses?
10    A    Yes, sir.
11              THE COURT:  Do you recognize any names?
12    A    No, sir.
13              THE COURT:  Do you recognize any of the people
14    who have been introduced here today?
15    A    No, sir.
16              THE COURT:  Just out of curiosity, do any of
17    you know each other that are sitting up here now?  That
18    would be unusual, but -- I've looked through your
19    questionnaire.  You've had a little bit of exposure to
20    the news media on this.  You've heard everything I've
21    said here today.  Is there anything about what you may
22    have seen or heard in the news media that would bear on
23    your ability to be fair and impartial?
24    A    No.  I've learned more today than what I've seen on
25    the media.
```

47

1          THE COURT:  Well, I thought that might be the

2   case.  You had some relatives who -- did you work as a

3   Deputy Sheriff in Barton County?

4   A   Yes, sir.

5          THE COURT:  And how long ago?  14 years ago?

6   A   Yes.

7          THE COURT:  You've got a nephew who's a state

8   trooper and another who's a jailer here in Sedgwick

9   County?

10  A   I forgot to add on there my brother in-law is the

11  Undersheriff for Ellworth County.

12         THE COURT:  Okay.  Well, you've got quite a

13  bit of friends and family who are in law enforcement.

14  My questions about law enforcement are really pretty

15  straightforward.  Law enforcement officers are trained

16  in certain ways; but one of the ways they're trained is

17  that defendants are presumed innocent of crime and the

18  fact that they may end up being charged with a crime

19  doesn't mean that they're guilty.  I assume you received

20  that kind of training?

21  A   Yes, sir.

22         THE COURT:  Do you believe in that?

23  A   Yes, sir.

24         THE COURT:  I think the simplest most straight

25  forward way to get at that with you or anybody else who

1    has family or friends in law enforcement, when you look

2    over at the Defendants in this case, do you see two

3    innocent people?

4    A    Yes, sir.

5              THE COURT:   And is there any question in your

6    mind that you will hold the Government to its burden of

7    proof and that if you -- or the jury as a whole believes

8    that the Government hasn't met that burden of proof,

9    would you have any trouble in returning verdicts of not

10   guilty?

11   A    No, sir.

12             THE COURT:   Would you have to justify those

13   verdicts to any of these people listed?

14   A    No, I wouldn't.

15             THE COURT:   All right.   Let's see.   I think

16   that pretty much takes care of that.   You've been called

17   to a jury before but you haven't served.   That is it.

18   Thank you Juror No-014.

19       Let's go to -- is it Juror No-018?

20   A    Juror No-018.

21             THE COURT:   All right, sir.   Tell us about

22   yourself, Juror No-018.

23   A    (Juror No-018)  My name is Juror No-018.  I live in

24   Wichita.  I am a manufacturing engineer at Hawker

25   Beechcraft.  I am married.  My wife is an accountant.  I

1    do have a Master's Degree, an MBA, from Baker

2    University.  And we do not have any children.

3                THE COURT:  Is the schedule going to be a

4    problem for you?

5    A    No, it is not.

6                THE COURT:  Thank you.  You've had an

7    opportunity to go over the lists?

8    A    Yes, I have.

9                THE COURT:  Do you recognize anyone on that

10   list?

11   A    I do not.

12               THE COURT:  And do you recognize anyone who's

13   been introduced here today?

14   A    I do not.

15               THE COURT:  I'm going to look real quickly

16   through your questionnaire.  I don't see any answers

17   that I want to question you about.  Do you know of any

18   reason why you cannot be a fair and impartial juror in

19   this case?

20   A    I do not.

21               THE COURT:  Thank you very much.  And let's go

22   to -- is it Juror No-020.

23   A    Juror No-020.

24               THE COURT:  Juror No-020.  I apologize for

25   mispronouncing names.

1    A    (Juror No-020)  You're not the first one.

2            THE COURT:  Well, people have been

3    mispronouncing my name for 67 years so I'm not sensitive

4    to that.  Tell us about yourself please.

5    A    My name is Juror No-020.  I live here in Wichita.

6    I'm a sales and marketing manager for an agriculture

7    implement company.  I am married.  My wife is an

8    occupational therapist for the Sedgwick County

9    Cooperative.  I have four year degree in business and I

10   have two children, both girls, ages 10 and 8.

11           THE COURT:  Did you know any of the people who

12   were introduced here today?

13   A    No, sir.

14           THE COURT:  Now, in answer to several of the

15   questions you have indicated that you have formed

16   opinions at least with respect to Stephen Schneider.

17   Actually opinions with respect to both Defendants.  Is

18   there -- do you -- we appreciate your opinions.  Have

19   you -- do you still hold those opinions today?

20   A    Yes, sir.

21           THE COURT:  All right.  Ms. Treadway, do you

22   have any questions of this juror?

23           MS. TREADWAY:  No, Judge.

24           THE COURT:  Mr. Williamson?

25           MR. WILLIAMSON:  No, Judge.  We'll just ask

1    that you excuse Juror No-020 for cause.

2              THE COURT:  Mr. Byers?

3              MR. BYERS:  No questions.  Join in the

4    suggestion.

5              THE COURT:  I think, based on your answers, it

6    would be appropriate to excuse you for cause.  Thank you

7    very much for your candid answers.

8    A    Thank you.

9              THE COURT:  And you're excused.

10             MR. MOODY:  Juror No-038.

11             THE COURT:  Good morning Juror No-038.

12   A    (Juror No-038)  Good morning.

13             THE COURT:  Would you tell us about yourself,

14   please.

15   A    My name is Juror No-038.  I'm a resident of Wichita,

16   Kansas, most of my life.  Work at Cessna Aircraft

17   Company as an engineering manager for about 30 years.

18   My wife is a medical nurse practitioner here in Wichita

19   also.  Education:  Bachelor of Science Mechanical

20   Engineering and a Master's in Business Administration.

21   No children.

22             THE COURT:  All right, sir.  Would you take a

23   moment and look through the list for me while I read

24   through your questionnaire.

25   A    Yes, sir.

1          (Off-the-record.)

2          THE COURT:  Do you recognize anyone on the

3   list?

4   A   No, sir, not that I know.

5          THE COURT:  Did you recognize anyone who's

6   introduced here today?

7   A   No, sir.

8          THE COURT:  And in answer to your question

9   about service over in Sedgwick County when they told you

10  you wouldn't have to report again for two years.  Two

11  answers.  First, that's a different court.  Number two,

12  when I served over in Sedgwick County they called me

13  again in six months.

14      I don't really see any answer to your questions

15  that concern me.  Oh, I should ask you:  Is the schedule

16  going to cause you a problem?

17  A   I have flight reservations in June for a trip out of

18  state.

19          THE COURT:  Well, June what?

20  A   June 10, 11th, 12 and 13.

21          THE COURT:  What kind of trip is it?

22  A   It's a personal trip.

23          THE COURT:  If you're picked, the same

24  question that we were talking to Juror No-034 about,

25  will you be so concerned about perhaps missing that trip

1    that you couldn't be fair and impartial?

2    A    No, sir.

3              THE COURT:  Fair enough.  Thank you.  There's

4    a couple of answers about your experience in doctors'

5    offices.  Have you had a bad experience in a doctor's

6    office?

7    A    Can you repeat the question.

8              THE COURT:  Well, I said here in question 18:

9    Have you ever had an experience with any person in the

10   health care industry in which you felt you were treated

11   improperly?  And you said:  Yes, doctors' office visits.

12   A    Yes.  Just a run-in or two with a doctor I used to

13   have and basically moved on to a different doctor.  But

14   his prognosis --

15             THE COURT:  Anything about that that's going

16   to bear on your ability to be a fair and impartial juror

17   in this case?

18   A    Not that I can think of.

19             THE COURT:  Obviously it was not with this

20   doctor?

21   A    No, sir.

22             THE COURT:  All right.  Can you think of any

23   reason why you can't be a fair and impartial juror in

24   this case?

25   A    No, sir.

1          THE COURT:  Thank you very much.  Let's pass

2     the microphone up to Juror No-022.

3     A    (Juror No-022)  Yes, sir.

4          THE COURT:  Let me find your questionnaire

5     Juror No-022.

6     A    Okay.

7          THE COURT:  Would you tell us about yourself

8     please.

9     A    Yes.  I live in the City of Marion, Kansas.  My

10    occupation is a regional sales manager for a health and

11    life insurance agency.  I'm married for 33 years.  My

12    spouse is a topographer for Marion County.  Have high

13    school education and some business schooling.  I have

14    three children.  The oldest is 29.  He is a factory

15    worker, resides in the City of Manhattan.  My second son

16    is 26.  He is an auto technician and lives in the City

17    of Salina.  And my youngest daughter is 24.  She is a

18    secondary -- or a second grade school teacher living in

19    the City of Manhattan.

20         THE COURT:  Have you had an opportunity to

21    review the lists?

22    A    Yes.

23         THE COURT:  Recognize anybody?

24    A    Possibly.  One on the Government's list.  Barbara

25    McCormick may be somebody that I knew years ago.  Had a

1    Bob McCormick from Pratt, Kansas, that worked for us for

2    a period of time.  But it's been quite a few years ago.

3              THE COURT:  Who is that, Ms. Treadway?

4              MS. TREADWAY:  She is the girlfriend of a

5    patient at Schneider Medical Clinic by the name of

6    Tabbie Herbert.

7              THE COURT:  She have any connection with

8    Pratt?

9              MS. TREADWAY:  I do not believe so.  Not to my

10   knowledge.  It probably is -- it's a common name.  It's

11   probably a different person.

12   A    I didn't recognize any of the others.

13             THE COURT:  Did you recognize anybody who was

14   introduced here today?

15   A    No, sir.

16             THE COURT:  Did I ask you about the schedule?

17   A    Well, six to eight weeks I could figure out a lot of

18   other things I'd rather do; but I should be able to work

19   it, no problem.

20             THE COURT:  Thank you.  You say you've heard

21   about the case on the news, radio and TV.  Anything

22   about what you've heard that's going to effect your

23   ability to be fair and impartial?

24   A    None whatsoever.

25             THE COURT:  And you've had a couple of

56

1    experiences with the police, and I'm not going to get

2    into those in any detail except that you say you were

3    ticketed for speeding for less than ten miles an hour.

4    Where was that?

5    A    State of Iowa.

6              THE COURT:  Where?

7    A    The state of Iowa.  About eight tickets within a

8    year and a half.

9              THE COURT:  Well, they must have been hurtin'

10   for money up there or something.  And the other one that

11   you mentioned in Paragraph 20.  Anything about any of

12   these events that would effect your ability to be fair

13   and impartial?

14   A    No, sir.

15             THE COURT:  Obviously they didn't concern any

16   of the facts of this case.

17   A    No.

18             THE COURT:  Can you think of any reason why

19   you can't be a fair and impartial juror?

20   A    None.

21             THE COURT:  Thank you.  Juror No-023.  Tell

22   us -- well, let me ask you:  Is the schedule going to

23   cause you a problem?

24   A    Some difficulties probably, yes, sir.

25             THE COURT:  Well, what kind of difficulties?

```
 1    A    I work in -- the department I work at, we're a small
 2    department.  I'm a night-shifter.  I'm one of two
 3    night-shifters.  So being gone on for eight to twelve
 4    weeks could probably pose a problem, I would imagine.
 5               THE COURT:  Tell me a little bit more about
 6    what you do.
 7    A    I'm a registered respiratory therapist.  I work at
 8    Galichia Heart Hospital and Via Christi as well.
 9               THE COURT:  Well, one thing for sure, I don't
10    want any juror working at night, the night shift, and
11    work until midnight or, you know, whatever your shift is
12    and then coming in here in the daytime.  I mean, this
13    would be your job --
14    A    Right.  I understand.
15               THE COURT:  -- during that period of time.
16    A    Absolutely.
17               THE COURT:  I don't know how you could
18    possibly stay awake.
19    A    You're exactly right.
20               THE COURT:  Your employers at Galichia and Via
21    Christi, what would they think -- what would be their
22    reaction about you being a juror?  Would they let you
23    off of your responsibilities?
24    A    I imagine they would -- I imagine they probably
25    would but it would pose some difficulties for them I
```

1    would think.  And in the hospital, I think, yes.

2            THE COURT:  Difficulties but not

3    insurmountable difficulties?

4    A    Probably not insurmountable, no, sir.

5            THE COURT:  Well, how do you feel about it?

6    Would you be sitting here during the trial during the

7    day worried about people who need your care as a

8    respiratory therapist?

9    A    I don't want to sound bad, but, no.

10           THE COURT:  These honest answers, I'm not

11   kidding you, that's what we need here.  The thing is,

12   like I said before, almost everybody has something they

13   would rather do.  I'm sure of that.  And particularly in

14   terms of work.  You have a responsibility to work.  But

15   it's unfair to other people to excuse people who would

16   rather be someplace else or are somewhat concerned but

17   still could be a juror.  Let me ask it this way.  If you

18   were here with the Government or over here with the

19   Defendants, would you be satisfied to have someone in

20   your frame of mind be a juror during the trial?  That

21   is, someone who can concentrate on the evidence and pay

22   attention to the case and not be worried about something

23   going on at your employers or with your patients.

24   A    Yes.

25           THE COURT:  All right.  Fair enough.  Did you

1    look at the list?

2    A   Yes, sir.

3            THE COURT:  Recognize anybody on there?

4    A   I did, sir.  On the Defendants' list.

5            THE COURT:  And who's that?

6    A   Dr. Chaparella.  Obviously just through work.  Dr.

7    Gadalla, through work.  I work at Galichia's hospital.

8    And I think that's about it.  There was a possibility of

9    maybe somebody -- I'm horrible with names -- but maybe

10   Christy Wolf.  Maybe.  But I may be thinking of somebody

11   completely different.  Possibly somebody I may have

12   worked with.  I'm not sure.

13           THE COURT:  Who listed Christi Wolf?

14           MR. WILLIAMSON:  We did, Your Honor.

15           THE COURT:  Who is that, Mr. Williamson?

16           MR. WILLIAMSON:  Employee of the Schneider

17   Medical Clinic, former employee.

18           THE COURT:  Do you know if this person worked

19   for the Schneider clinic?

20   A   I'm almost positive it's a different person.

21           THE COURT:  All right.  Now, these doctors

22   that work out there at Galichia, the real question about

23   being a juror when you know somebody who is a witness is

24   you have to be willing to judge the credibility of that

25   person by the same standards that everybody else is

```
 1    instructed with respect to their credibility.  In other

 2    words, you can't, you know -- I'm not saying this is

 3    going to happen -- but one of these doctors comes in and

 4    testifies and you don't believe 'em.  You just don't

 5    think that he's credible, for whatever reason.  Would

 6    you have to -- would you say to yourself, well, even

 7    though I don't find that witness to be credible, because

 8    I know him I'm going to believe him just because I know

 9    him?  Would you have any problem in that regard?

10    A   So I guess what you're asking is if I felt like what

11    he is saying isn't credible but because I know him I

12    would think that's okay?  Is that what you're --

13              THE COURT:  Correct.

14    A   No, sir.

15              THE COURT:  You would be able to judge his

16    credibility just like everybody else's?  Including

17    people you don't know from Adam?

18    A   Yes, sir.

19              THE COURT:  All right.  Fair enough.  Let me

20    look through your questionnaire real quick.  You have

21    very small writing.

22    A   I'm sorry, Your Honor.  I apologize.

23              THE COURT:  You don't need to apologize.  I'm

24    just stating that it takes me a little longer to read.

25    Basically your answers are that you know about the case
```

1   and you've had some discussions with co-workers about

2   the case.  Anything about that, any of these discussions

3   or your knowledge of the case that would bear on your

4   ability to be fair and impartial?

5   A   Yes.

6          THE COURT:  Tell me.

7   A   Well, I don't want to say too much.  I don't want to

8   taint anybody's thoughts about the process, but I did

9   treat a number of his patients, yes, and that --

10         THE COURT:  Well, let me ask it this way.

11  Based on the fact that you've treated patients, do you

12  feel that you could be a fair and impartial juror?

13  A   No, sir.

14         THE COURT:  All right.  Any questions,

15  Ms. Treadway?

16         MS. TREADWAY:  No, Judge.

17         THE COURT:  Mr. Williamson?

18         MR. WILLIAMSON:  No, Judge, just move to

19  excuse for cause.

20         THE COURT:  Mr. Byers?

21         MR. BYERS:  Same thing, Your Honor.  Thank

22  you.

23         THE COURT:  Thank you, Juror No-023, for your

24  candid answers.  I'm going to excuse you.

25  A   Thank you.

62

1          THE COURT:  I think what we are going to do is

2     we'll finish up with the questioning of the people who

3     are in the jury box and then we'll take our lunch

4     recess.  Everybody comfortable at this point?

5        Okay.  Who's next?

6              MR. MOODY:  Juror No-040.

7          THE COURT:  Good morning, Juror No-040.

8     A   (Juror No-040)  Good morning.

9              THE COURT:  Is the schedule going to cause any

10    problems?

11    A   A problem but not a crisis.

12             THE COURT:  Say that again.

13    A   It's a problem but not a crisis.

14             THE COURT:  Not a crisis.  Okay.  In terms of

15    being a problem -- well, you better tell me about the

16    problem.

17    A   Well, my job entails a lot of travel.  I'm gone

18    basically three nights out of every five working nights.

19    But it's not a life or death job.  It's just a lot of

20    travel so--

21             THE COURT:  Tell me what your job is.

22    A   Well, I'm an occupational safety consultant and I

23    specialize in oil and gas.  So I travel to Illinois and

24    all over Kansas, a little bit of Oklahoma.  So, the

25    clients won't be happy but that's okay.  You know.  They

1    want to see me but it's just a matter of rescheduling

2    stuff.

3              THE COURT:  I see.  All right.  While I'm

4    looking through your questionnaire, would you tell us a

5    little bit about yourself please and also would you look

6    at the list.

7    A    Yeah.  My name is Juror No-040.  I live in Wichita,

8    Kansas.  As I said, I'm an occupational safety

9    professional, consultant.  I'm married.  My wife is a

10   para educator at Mayberry Middle School in Wichita.  My

11   education, I have a BS in Education from Kansas State

12   University.  Also hold a Certified Safety Professional

13   qualification.  Have three children.  My stepdaughter is

14   21.  Her name is Kelly.  She lives in  New Mexico.

15   She's a part-time student and waitress.  My son Kevin is

16   20, soon to be 21.  He is also in New Mexico.  He is in

17   the naval reserve.  He's also a licensed plumber working

18   in Albuquerque.  And my youngest -- our youngest is my

19   daughter.  She's 13 and she's an 8th grader at Mayberry

20   Middle School.

21             THE COURT:  You haven't had time to look

22   through the list yet.

23   A    Not completely, no.

24                    (Off-the-record.)

25             THE COURT:  Anybody?

```
 1    A    None.
 2              THE COURT:  And how about the people who were
 3    introduced?
 4    A    I do not recognize anyone.
 5              THE COURT:  All right, sir.  Your answer to
 6    one of your questions, to paraphrase, says that if
 7    someone died while under the care of the Defendants
 8    that -- I think you say that would effect you
 9    negatively.  But you know at this point that that's an
10    issue in the case.  In other words, there's no proof at
11    this point or there may never be any proof that someone
12    died.  That's a claim that the Government is making that
13    has to be proved beyond a reasonable doubt.  The
14    Defendants not only deny that but they are presumed
15    innocent of that claim or any other claim.  Can you
16    listen to the evidence and put that out of your mind?
17    Or is that something that you just are not going to be
18    able to put out of your mind during your term as a juror
19    if you're chosen?
20    A    I can't remember the exact wording of my answer, but
21    I think it mentions direct -- excuse me -- direct cause.
22    Part of my training in safety is to analyze situations
23    and look for both root causes and contributing causes.
24    And I think if the actions of a doctor were the root
25    cause or contributing cause in a direct manner, that
```

65

1    would, to me, indicate they were in part responsible for

2    that.  The mere fact that a patient dies is not an

3    issue.  Patients die all the time.

4             THE COURT:  Well, but my point is that that's

5    something that the Government has charged and has to

6    prove.

7    A    Uh-huh.

8             THE COURT:  Would you hold the Government to a

9    lesser burden of proof because your training tells you

10   that?

11   A    Well, I wouldn't expect to do their job for 'em.  I

12   mean, they would have to prove that this is the cause

13   and it was under the control of the doctor.

14            THE COURT:  And you'd listen -- would you be

15   able -- I'm not trying to put words in your mouth.

16   Would you be able to listen to the witnesses who would

17   testify about that and not insert your own training and

18   experience into it?

19   A    Yes.

20            THE COURT:  All right.  You all understand

21   that's important?  That's what I meant earlier when I

22   said that we don't expect people to come in here with a

23   blank mind.  Everybody has experiences.  But you can't

24   go back in the jury room and say, well, I know what

25   those witnesses said but, hey, that's not the way I

```
 1    conduct my affairs.  And you can't -- you can avoid
 2    doing that, I take it?
 3    A   Yes.
 4          THE COURT:  That's the only question that I --
 5    wait a second.  I missed a page here.  All right.  Can
 6    you think of any reason why you can't be a fair and
 7    impartial juror?
 8    A   No.
 9          THE COURT:  Let's go to Juror No-024.
10    A   (Juror No-024)  Yes, sir.
11          THE COURT:  Is the schedule going to cause you
12    a problem?
13    A   No, sir.
14          THE COURT:  Would you tell us about yourself
15    please.
16    A   My name is Juror No-024. I live in Wichita, Kansas.
17    I work at Walmart as a zone supervisor.  I am not
18    married.  Have a high school education and one son who
19    turned one yesterday.
20          THE COURT:  Is the fact that you have a little
21    baby going to present a problem for you as being a
22    juror?
23    A   No, sir.  I work 40 hours a week as it is, 40 hours
24    plus as it is so --
25          THE COURT:  And you've had an opportunity to
```

```
 1    review the questionnaires --
 2    A    The witnesses?
 3              THE COURT:  The list.
 4    A    Yes, sir.
 5              THE COURT:  Do you recognize anybody on that
 6    list?
 7    A    No, sir.
 8              THE COURT:  And how about the people who were
 9    introduced?
10    A    No, sir.
11              THE COURT:  Where is it that you work 40 hours
12    a week?  Tell me again.
13    A    Walmart.
14              THE COURT:  At walmart.
15    A    Yes, sir.
16              THE COURT:  You say in answer to one of the
17    questions that you saw a picture of Mrs. Schneider on
18    the news.  You've heard various comments from people
19    about Dr. Schneider.  You don't know whether they're
20    true or not.
21         You've heard all my questions to the other
22    potential jurors about news media coverage and that sort
23    of thing.  Is there anything about what you've heard or
24    read about this case that would cause you to be unable
25    to be fair and impartial?
```

1   A   No, sir.

2           THE COURT:  Can you think of any reason why

3   you can't be a fair and impartial juror in this case?

4   A   No, sir.

5           THE COURT:  Thank you.  Juror No-025.

6   A   (Juror No-025)  Yes, sir.

7           THE COURT:  Anything about the schedule that's

8   going to cause you a problem?

9   A   No, sir.

10          THE COURT:  How about the list, anybody on

11  that list that you know?

12  A   I recognize three names.

13          THE COURT:  Yes, sir.  Who are they?

14  A   Dr. Joseph Galichia.  Dr. Rabi Bajaj.  And Dr. Brad

15  Dopps.

16          THE COURT:  Do you know them personally or

17  just recognize the names?

18  A   I don't know them personally.  My former

19  brother-in-law used to be the personal trainer for Dr.

20  Galichia.  And Dr. Bajaj, when my wife and I at the time

21  were a young struggling couple, she used to clean his

22  house.

23          THE COURT:  And there was somebody else?

24  A   Dr. Dopps.  Just name recognition.

25          THE COURT:  Okay.  Well, you heard my

1    questions to Juror No-040.  Assuming any or all of these

2    people testify, it would be presumably some kind of

3    medical testimony.  I haven't asked you what you do, but

4    do you have any medical training yourself?

5    A   Just basic first aid, CPR type thing.

6            THE COURT:  Well, is there anything about the

7    fact that you either know these people or know who they

8    are that would bear on your ability to be fair and

9    impartial?  In other words, the same questions that I

10   asked of Juror No-04.  You know who Dr. Bajaj is, sort

11   of.  Would you believe everything that Dr. Bajaj said or

12   not believe anything that he said just because you know

13   who he is?

14   A   There would be no relevance.

15           THE COURT:  Same with the others?

16   A   Correct.

17           THE COURT:  You'd be able to judge their

18   credibility as you would anyone else?

19   A   Correct.

20           THE COURT:  Fair enough.  All right.  You

21   didn't know anybody who was introduced?

22   A   No, sir.

23           THE COURT:  Well, tell me a little bit more

24   about yourself.

25   A   My name is Juror No-025.  I live in the City of

1   Wichita.  I'm an aircraft avionics exchange

2   administrator.  I am divorced.  In three months I'll

3   have my Bachelor's in Business Administration.  I have

4   two children, ages 14 and 18.  One's a student and one

5   is misdirected at this time.

6            THE COURT:  Well, I won't go into that.  We've

7   all been there.  Your ex-wife, what does she do?

8   A   She is the administrative assistant to the dean at,

9   I believe, it's Friends University.

10           THE COURT:  Okay.  You don't know much about

11  the case according to your questionnaire.  Whatever you

12  do know, is there anything about it that would bear on

13  your ability to be a fair and impartial juror?

14  A   No, sir.  I don't follow it.

15           THE COURT:  You were robbed many times when

16  you were managing a restaurant.  When did that occur?

17  A   That would be early '90s.

18           THE COURT:  And you've had some bad experience

19  with law enforcement officers -- officer, I guess.

20  Anything about these robberies -- were you injured or in

21  any way personally harmed in these robberies?

22  A   No, sir.

23           THE COURT:  Were the robbers or any of them

24  ever caught?

25  A   I don't believe they were.

1          THE COURT:  So you never had to go to court

2    and testify about it or anything?

3    A   No, sir.

4          THE COURT:  Obviously that doesn't have

5    anything to do with the facts of this case.  But is

6    there anything about the fact that you were involved in

7    being the victim of a crime that would cause you to

8    somehow favor one side or the other or not favor one

9    side or the other?

10   A   No, sir.

11         THE COURT:  And apparently you got stopped by

12   somebody out on the road and the trooper or whoever it

13   was had poor road side manners and was rude.  That

14   doesn't have anything to do with this case, does it?

15   A   No.

16         THE COURT:  All right.  We're not going to

17   have any troopers in here -- was it a trooper?

18   A   I don't recall.

19         THE COURT:  I've never heard of a trooper

20   being rude, but it's possible.  You are a former

21   Sedgwick County Reserve Deputy.  When did you do that

22   work?

23   A   I believe it was I would say from '91 or '92 until

24   '94, '95.

25         THE COURT:  Now, I've had reserve deputies on

1    juries before, but why don't you tell us what you did as

2    a reserve deputy.

3    A   I was a commissioned law enforcement officer for

4    Sedgwick County.  Had the same right, privileges and

5    empowerment as a regular deputy.  It's just that I was a

6    volunteer.

7              THE COURT:  How much did you work?

8    A   About 40 hours a month.

9              THE COURT:  And was your job basically to -- a

10   road deputy?  Drove around?  Or what did you do?

11   A   I did two positions.  I worked as a detention deputy

12   and also in road patrol.

13             THE COURT:  Okay.  Well, cutting to the chase,

14   does the fact that you're a former law enforcement

15   officer make you somehow feel that these Defendants are

16   guilty just because they've been charged with a crime?

17   A   No, sir.

18             THE COURT:  You recognize and would you follow

19   the presumption of innocence and make the Government, if

20   it can, prove their guilt beyond a reasonable doubt?

21   A   Yes.

22             THE COURT:  All right.  Juror No-025, can you

23   think of any reason why you can't be a fair and

24   impartial juror in this case?

25   A   No, sir.

```
 1              THE COURT:  Thank you very much.  Juror
 2   No-027.
 3   A   Yes.
 4              THE COURT:  Will the schedule cause you a
 5   problem.
 6   A   No.
 7              THE COURT:  Thank you.  Have you had an
 8   opportunity to look over the list?
 9   A   Yes, I have.
10              THE COURT:  Recognize anyone on either of
11   those lists?
12   A   I do recognize a few.
13              THE COURT:  Tell me who they are.
14   A   David Batman.  I know him as a citizen of Haysville.
15   I worked for the City of Haysville.
16              THE COURT:  He's a what?
17   A   As a citizen that would come in just to pay water
18   bill or something like that with the city.
19              THE COURT:  I see.  Do you know him personally
20   or do you just know the name?
21   A   I know him by face because I see him every month.
22              THE COURT:  And who else?
23   A   And I also know James Kitchings, the former chief of
24   police in Haysville.
25              THE COURT:  Okay.  And you know him just
```

1   through work or do you have a more personal

2   relationship?

3   A    Just through work.

4           THE COURT:   Through work?

5   A    Uh-huh.

6           THE COURT:   Okay.

7   A    I also know Deborah and Jack Mann.   Deborah Mann is

8   my -- was my supervisor for when I -- I actually worked

9   for the police department in Haysville for several years

10  and she was my supervisor.   I know her husband Jack by

11  association.

12          THE COURT:   Okay.   Go ahead.

13  A    I also know Tim Norton, County Commissioner and also

14  former Mayor of Haysville.   And I see him probably on a

15  weekly basis.

16          THE COURT:   Okay.   Well, very quickly.   You

17  know my questions about this.   There's no guarantee that

18  any of these people are going to testify.   Of course,

19  what we ask the lawyers to do is to provide the list of

20  everybody they think might testify.   I'm very doubtful

21  all of these witnesses are going to testify; but

22  assuming that any or all of those people do, is there

23  anything about your knowledge of them or your

24  relationship with them that would cause you not to be

25  able to believe what they say?   Or in the alternative,

75

1   believe anything they said?  If they come in here and

2   testify that the sun rises in the west and sets in the

3   east, by golly, you're gonna believe 'em.

4   A   No, sir.

5           THE COURT:  All right.  And did you know any

6   of the lawyers, parties who were introduced here today?

7   A   Only the Defendants by recognition in Haysville.

8           THE COURT:  By person or you just know that

9   they live there?

10  A   I just know that they live there.

11          THE COURT:  Anything about that that's going

12  to bear on your ability to be fair and impartial?

13  A   No.

14          THE COURT:  Now let's look at your

15  questionnaire real quick.  You say you don't know them

16  personally but you've seen some news reports.  Anything

17  about those -- and up say you haven't formed any

18  opinions.  Anything different about your answers in your

19  questionnaire based on what we've talked about here this

20  morning?

21  A   No.

22          THE COURT:  Do you have any question in your

23  mind that these Defendants are presumed innocent of these

24  charges; that they're not guilty as they sit here; that

25  the Government has the burden, if it can, to prove their

1   guilt beyond a reasonable doubt?  Any questions about

2   that in your mind at all?

3   A   No.

4          THE COURT:  You say you know CPR.  Anything

5   about that that you'd substitute your own knowledge?  If

6   there's any medical testimony, you'd substitute yours?

7   A   No.

8          THE COURT:  And tell me, the last question

9   that I'm interested in.  I didn't ask you what you do

10   now but I'll get around to that.  You say you work as a

11   communications officer from '97 to '06, for several

12   different cities surrounding Haysville.  What's -- does

13   that mean you were on the radio talking to officers and

14   that sort of thing?

15   A   Yes.  It's a dispatcher, emergency call answer.

16   Haysville doesn't have 911, so unless you call 911, you

17   would call the police department and I would be the

18   person on the other end.

19          THE COURT:  Okay.  Well, obviously, in a job

20   like that you come into contact with police officers.

21   Let me just ask it this way.  If you were the Defendants

22   in this case, would you be worried that just because you

23   know a lot of police officers and your work that you'd

24   somehow favor the Government's side of the case?  How do

25   you feel about that?

1    A    Well, I believe the police officers are people just

2    like everybody else and I would be confident that I

3    would be able to be fair.

4              THE COURT:  Right.  I doubt -- I don't know

5    that there are going to be any Haysville police officers

6    testifying in this case; but the way I always tell

7    jurors is that I hope law enforcement, whether it's a

8    police officer, a trooper, an IRS agent, whatever, that

9    we all respect the fact that they have important jobs to

10   do; but when they come in here -- and I'm saying this to

11   all of you -- when they come in here and testify,

12   whether it's for the Defendants or the Government, they

13   don't get any credit because of their service in law

14   enforcement.  Or the other side of it, they're not

15   looked down upon because they're in law enforcement.  Do

16   you have any problem with that?

17   A    No.

18             THE COURT:  All right.  Landlord filed a

19   lawsuit against you.  Anything about that that's going

20   to be --

21   A    No.

22             THE COURT:  Okay.  And you've had -- you have

23   used prescription medication for pain.  Anything about

24   that that you think will effect your ability to be fair

25   and impartial here?

```
 1    A    No.

 2              THE COURT:  Okay.  Juror No-027, can you think

 3    of any reason why you can't be a fair and impartial

 4    juror?

 5    A    No.

 6              THE COURT:  Thank you.  Juror No-030.

 7    A    (Juror No-030)  Yes, Your Honor.

 8              THE COURT:  Thank you for waiting so long.

 9    Where'd you grow up?

10    A    Hutchinson, Kansas.

11              THE COURT:  Okay.  Well, when I grew up I had

12    a friend named Dicky S******,  but not in Hutchinson.

13    Is the schedule going to cause you any problems?

14    A    I don't believe so.

15              THE COURT:  All right, sir.  And did you

16    recognize any names?

17    A    No, I did not.

18              THE COURT:  Or recognize any of these folks

19    who have been introduced?

20    A    No, I did not.

21              THE COURT:  Tell us about yourself please.

22    A    My name is Juror No-030.  I live in Hutchinson,

23    Kansas.  I work at Krause Corporation.  I'm a tool-maker

24    there.  I'm married for 12 years.  My wife is a full

25    time online student.  And I have a high school
```

1    education, some college, some vocational experience.

2    And we do not have any children.

3              THE COURT:  What's your wife studying?

4    A    She's studying to be a psychologist.

5              THE COURT:  Good for her.  And she is doing

6    that all online?

7    A    Yes.  Through Ashford University.  She is almost

8    ready to finish up a Bachelor's.

9              THE COURT:  I'm looking at your questionnaire.

10   You've heard about the case.  Anything about what you've

11   heard about the case that's caused you to form an

12   opinion here that would bear on your ability to be a

13   fair and impartial juror?

14   A    No, Your Honor.

15             THE COURT:  You know first aid and CPR.  If

16   you hear any testimony about that, can you listen and

17   decide the case based on what you hear from the witness

18   stand and not what you know?

19   A    Yes, sir.

20             THE COURT:  You say a close friend of mine

21   works for the Attorney General and I do ask him about

22   legalities in various situations.  Who is that person?

23   A    His name is Patrick Rosterman.

24             THE COURT:  Is he a lawyer up there?

25   A    Yes.  He works for Judge Six.

80

1        THE COURT:  Yeah.  Have you talked with him

2   about this case?

3   A   No, not this case in particular.

4        THE COURT:  All right.  Have you talked with

5   him about anything that somehow in your mind might

6   relate to this case?

7   A   The only thing I've talked to him about anywhere

8   related to this is the jury process.  Basically, how

9   it -- well, the process we're going through.

10        THE COURT:  The torture that you're undergoing

11   at this particular point in time?

12   A   Yes, exactly.

13        THE COURT:  Did he tell you about anything

14   that relates to what we are doing here today or just

15   generally about being a juror in the jury selection

16   process?

17   A   Basically he reiterated something that I firmly

18   believe is the Defendants are innocent until proven

19   guilty.

20        THE COURT:  You understand -- I'm not going

21   to -- I was going to say I'm not going to harp on it,

22   but I am going to harp on it because it's so important

23   that -- not only the presumption of innocence but the

24   Government's burden of proof.  And I've read what it

25   means to prove beyond a reasonable doubt.  Do you have

1   any problem with that definition of proof beyond a

2   reasonable doubt?

3   A   No, Your Honor.

4           THE COURT:  I don't see any other questions in

5   here that I want to cover with you. Can you think of any

6   reason why you can't be a fair and impartial juror?

7   A   No, sir.

8           THE COURT:  All right.  Now, I'm going to

9   recess until 1:15.  And I'm going to ask you all in the

10  jury box, first of all, to come back where you're

11  seated.  Secondly, would you please put your question --

12  the list of witnesses up there on the bar.  And will

13  you -- I'll tell you what I'm going to do.  I'm going to

14  recess until 1:30.  Okay?  A little longer than

15  ordinary.  When you all get back from lunch, I want you

16  to come up here and look through these lists so that

17  when you're called up here, you'll have already done

18  that.  I'm going to ask Mr. Moody to leave -- and put

19  your pencils up there, too, Ladies and Gentlemen, and

20  I'm going to ask Mr. Moody to put some scrap paper up

21  there and you can write down any names that you

22  recognize.  You're free to go wherever you want to go.

23  There's a pretty good place to eat over in the Epic

24  Center, that tall building over there.  But you can go

25  eat wherever you want.  And I'll see you at 1:30 and at

1    that time the lawyers then will have their opportunity

2    to question the folks here in the jury box.  Anybody

3    have any questions at this point that they need to --

4    Okay.  Are you all enjoying yourselves?  I'll see you at

5    1:30.

6                    (Recess.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25