IN THE UNITED STATES DISTRICT COURT

DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | District Court |
| vs. | ) | Case No. |
| | ) | 07-10234-01, 02 |
| STEPHEN J. SCHNEIDER and LINDA K. | ) | |
| SCHNEIDER, a/k/a LINDA K. | ) | Circuit Court |
| ATTERBURY, d/b/a SCHNEIDER | ) | Case No. |
| MEDICAL CLINIC, | ) | 10-3281 |
| | ) | |
| Defendants. | ) | |

TRANSCRIPT OF PROCEEDINGS

On the 3rd day of March, 2008, came on to be heard
proceedings in the above-entitled and numbered cause before the
MAGISTRATE DON BOSTWICK, Judge of the United States District
Court for the District of Kansas, sitting in Wichita,
commencing at 3:00 p.m.  Proceedings recorded by digital
recording.  Transcript produced by computer.


APPEARANCES:
The plaintiff appeared by and through:
    Ms. Tanya J. Treadway
    Office of United States Attorney
    290 U.S. Courthouse
    444 S.E. Quincy
    Topeka, Kansas  66683-3592
The defendant Stephen Schneider appeared by and through:
    Mr. Lawrence W. Williamson, Jr.
    Williamson Law Firm, LLC
    218 Delaware
    Suite 207
    Kansas City, Missouri 64105
The defendant Linda Schneider appeared by and through:
    Mr. Eugene V. Gorokhov
    Eugene V. Gorokhov, PLLC
    1800 Wilson Boulevard
    Arlington, VA  22201
     -and
    Mr. Uzo L. Ohaebosim
    218 Delaware
    Suite 207
    Kansas City, Missouri  64105

3-3-08 USA v. SCHNEIDER 07-10234-01, 02

2

1          THE COURT:  This is the criminal docket call for

2   United States District Court for the District of Kansas for

3   Monday, March 3, 2008 at 3:00 o'clock.  We have three cases set

4   on the docket today.  Can I have the appearance for the

5   Government, please.

6          MS. TREADWAY:  May it please the Court, Assistant

7   U.S. Attorney, Tanya J. Treadway, for the Government.

8          THE COURT:  Thank you.  And I thought we would

9   take up Stephen Schneider and Linda Schneider together.  I see

10  we have them both at the table, so can I have the appearance

11  for, first of all, for Stephen Schneider.

12         MR. WILLIAMSON:  Your Honor, Lawrence Williamson

13  appears in person on behalf of Stephen Schneider, who also

14  appears in person.

15         THE COURT:  All right.  Thank you.

16         MR. OHAEBOSIM:  Your Honor, Uzo Ohaebosim appears

17  on behalf of Linda Schneider and co-counsel who was just pro

18  hac'd in, Eugene Gorokhov.

19         THE COURT:  Thank you.  Welcome, Mr. Gorokhov.  I

20  noticed that you're pro hac'd in only for Linda; is that

21  correct?

22         MR. GOROKHOV:  That's correct, Your Honor.

23         I noticed that you're pro hac'd in only for Linda,

24  is that correct?

25         MR. GOROKHOV:  That's correct, Your Honor.

1              THE COURT:  All right.  I just wanted to make

2    certain that we weren't dealing with two situations.  It looked

3    like a motion was filed only on behalf of Linda.

4              All right.  The matter's on today because when we

5    had the last hearing in connection with the Government's motion

6    to either revoke -- to both revoke the appointment of counsel

7    and then also for an order to recoup the fees paid to CJA

8    counsel, I allowed the defendants time to investigate the

9    assets available for hiring, and in order to do that I gave

10   them until today to come forward with any evidence that they

11   wanted to present in connection with the ability of the

12   defendants to hire counsel for them or not, and to present that

13   evidence.  I've entered an order recently also that identified

14   for the parties my feeling that the portion of Document 16, the

15   Government motion to revoke appointment of counsel, appears to

16   be moot at this point.  Any disagreement with that from the

17   defendants?

18              MR. WILLIAMSON:  No, Your Honor.

19              MR. GOROKHOV:  No, Your Honor.

20              THE COURT:  So the only issue then is whether.

21              THE COURT:  All right.  So the only remaining

22   issue then was whether or not there should be an order of

23   recoupment pursuant to 18 U.S. Code, Section 3006A(f), that and

24   the matter comes on then today and I didn't see any additional

25   exhibits or briefs on behalf of either defendant, but I did on

1    behalf of the Government, and I take it that the defendants

2    have had a chance to review those exhibits before court today?

3              MR. WILLIAMSON:  We have, Your Honor.

4              MR. GOROKHOV:  Yes, Your Honor.

5              THE COURT:  Okay.  Let me turn to the defendants

6    for a moment.  The Government has come forward with evidence,

7    if admitted today, in connection with the ability of the

8    defendants to pay or the assets that are available.  What's the

9    defendants' position in connection with the recoupment

10   argument?

11             MR. WILLIAMSON:  Yes, Your Honor.  Would you like

12   me to stand?

13             THE COURT:  You can be seated if you want, but you

14   might pull the mic just a little closer to you.  As you know,

15   we record these proceedings.  We just want to make sure we get

16   a good recording.  If she gives you the high sign while you're

17   talking, you need to hold up a little closer.  Go ahead.

18             MR. WILLIAMSON:  Your Honor, we had a chance to

19   meet with our clients regarding the Government's motion, also

20   had an opportunity to speak with Ms. Treadway regarding this

21   issue.  The defendants do take issue as to the numerical amount

22   that the Government -- the conclusion that it drew regarding

23   the assets.  However, we do not oppose the recoupment of fees

24   to court-appointed counsel.

25             The only issue that we really had, and we didn't

1    file a response based on the listening of the transcript from

2    the past hearing, questions that Your Honor asked of the

3    Government, but our concern was if these -- and so it's clear,

4    these assets are not in a liquidated form.  We would have to

5    take steps to liquidate these assets to make them usable.  But

6    our concern was that if we took those steps to liquidate the

7    assets, that the Government may later make a claim against the

8    attorneys for substitute assets.  And that was our primary

9    concern.

10            It's my understanding, based on the Government's

11   reading of Jarvis and the representations that were made to the

12   Court, that if the -- if these funds are actually liquidated,

13   paid to the Government -- the CJA counsel, paid to further

14   their legal representation, that the Government cannot come

15   after either myself, Mr. Gorokhov, Jay Greeno or John Rapp

16   later on.  And based on that we don't have an objection to

17   paying reasonable fees that were incurred during the first part

18   of the representation in this case.

19            THE COURT:  Mr. Ohaebosim, do you or Mr. Gorokhov,

20   either one --

21            MR. GOROKHOV:  Yes, Your Honor.  Just to clarify,

22   I think in addition to the attorney's fees we'd like to clarify

23   that it would be a wider application to the defense generally,

24   experts, investigators and so forth and so on.  We just don't

25   want there to be any ambiguity whatsoever with respect to the

1    subsequent forfeiture of these fees.  And, furthermore, we

2    would just ask if the Court could make that part of an order,

3    just out of an abundance of caution, so that we can be

4    absolutely sure that these monies can go to the defense, with

5    no threat of future action.

6            THE COURT:  Okay.  Well, first of all, in

7    connection with the actual recoupment, only one of the CJA

8    panel has submitted a voucher.  That voucher's been reviewed

9    and approved by Judge Brown at this point.  I have talked with

10   the other counsel.  He is going to get his in shortly.

11           As I would read the procedure from reading the

12   cases, what I then need to do is to provide copies to you,

13   counsel for both defendants, of the vouchers that the

14   Government has -- that have been submitted and approved by

15   Judge Brown, to see if you have any objection to the

16   reasonableness of those fees, and if you do, to give you a time

17   within which to file any objections.

18           Those documents are going to remain under seal

19   because they're administrative in nature at this point and not

20   a matter of public record.  So what I will do is I will set up

21   as part of the order a timetable after I forward to you or have

22   the clerk forward to you copies of both sets of those, to make

23   certain that you have a time to object, and I would assume ten

24   days or something ought to give you an opportunity.

25           I could tell you, having reviewed them, I don't

1    think it's going to take you very long to at least make an

2    analysis of what we have to date.  I can understand the concern

3    on your -- on the remaining part of your topic, though.  I want

4    to turn to the Government on that issue.

5              As you correctly called to my attention at the

6    earlier hearing, the Jarvis case would appear to say that the

7    items that were identified as substitute assets were not.

8    Basically if you would -- if I can use the phrase kind of

9    generically, encumbered, Jarvis says you can't file a lis

10   pendens notice under state law on any of the real property, for

11   example.  Jarvis also says that there's no relation back in

12   connection with substitute assets that would present the

13   problems that we would have with the transfer of assets that we

14   normally see in a case where the assets have been identified in

15   the indictment.

16             I don't know, however, whether that answers all

17   the questions of the defendants, so let me turn to the

18   Government.  You've heard what they have to say.  What's the

19   Government's position on that argument?

20             MS. TREADWAY:  Well, Judge, I'm not really sure

21   what all their arguments are because I have not seen a brief on

22   it, nor their case law.  But I will reiterate that Jarvis is

23   the controlling law of the circuit, and the Government is bound

24   by it.  To the extent that that answers the defendants'

25   questions, I believe that it already has, because they

1    obviously don't have a problem moving forward, hiring

2    attorneys.  They've already done that.  And they don't have a

3    problem recouping the CJA costs.  So I don't believe that

4    there's an argument amongst counsel, but I don't think it's

5    appropriate either for the Court to enter an order saying that,

6    you know, these assets are all substitute assets that nobody

7    can reach forever.  I mean, that's beyond the Court's

8    jurisdiction at this point.

9            I'm certainly not able to lien them, relate them

10   back, grab them in any way, shape or form, and we so informed

11   the Court previously.  And the defendants are at will to sell

12   these assets, to liquidate these assets and pay for attorneys.

13   And that's up to them.  But to date I don't believe any assets

14   have been liquidated.  So that brings up the additional point

15   of there's obviously other assets out there that we don't know

16   about, Judge, that are being used to pay attorneys, retain

17   attorneys.  If we don't know about those assets, we cannot make

18   any representations about where those assets come from, and

19   whether they're forfeitable or not.

20           MR. WILLIAMSON:  May I respond?

21           THE COURT:  You may.

22           MR. WILLIAMSON:  Your Honor, I think it's well

23   within this Court's jurisdiction to protect the attorneys from

24   future actions, and I think it's -- if you provide an order

25   based on the motion by the Government, then that order has to

1    say whether or not these liquidated assets that are going to be

2    used can later be sought by the Government.  And we don't

3    believe that it can, and we believe case law allows this

4    Court -- and it would be Jarvis -- to enter an order stating

5    that relation back does not apply and that the attorneys -- the

6    fees and expenses that are paid to the defense of this case

7    will not be subject to a forfeiture action pursuant to Jarvis.

8    If there is an appeal that needs to be had later, the

9    Government is free to do so, but at this point we need the

10   assurance that we don't have to come later filing -- or

11   fighting some action against fees that were paid to us based on

12   something that happened now.  That's first.

13           Second, the other assets argument I think is

14   wholly inappropriate for this matter.  The Government doesn't

15   know who paid for the defendants' fees.  They have been

16   incarcerated and haven't had access to any assets.  I just

17   don't think that's even appropriate consideration argument at

18   this point.  The whole issue right here right now is whether or

19   not the Government is going to come after us, because we've

20   already conceded that, hey, we can pay back the -- or the

21   clients can pay back the Government once -- and I think that's

22   one thing we need to make sure is clear -- once we can take

23   steps to liquidate these assets, which are going to take steps,

24   i.e., power of attorneys and other steps to bring this to

25   fruition, and I think that's the sole issue before this court.

1          THE COURT:  Do you have any law that says that if

2   the defendant -- if the Government identifies something in the

3   indictment as a substitute asset so that <u>Jarvis</u> applies, that

4   it is somehow bound in the future not to supersede the

5   indictment and to put in the superseded indictment an

6   allegation that some of the property that before was identified

7   as substitute property is, in fact, subject to forfeiture?

8   That's -- what you're asking me to do is guarantee you that the

9   status quo is going to remain forward from here on, and I don't

10   know that I can do that.  So that's -- I want to see if you've

11   got some case law that says I can do that, because, to me, the

12   issue again is whether or not the Government, in its

13   indictment, has designated these as substitute assets, which

14   would be governed by <u>Jarvis</u>, or whether they've designated them

15   as assets subject to forfeiture, such that there is a relation

16   back on it.

17          I don't know whether they can change that by

18   superseding indictment, and I'd like -- I'd be interested if

19   you have any case law, to have you submit something to me on

20   that, because that's my concern.  I think that's what she's

21   trying to say.  I want to be clear on that.

22          MR. WILLIAMSON:  I don't know of any, Your Honor.

23   I don't know -- I'll let Mr. Gorokhov answer if he knows of

24   any.  I think that the -- what it comes down to is that I don't

25   think there's any case law that says you can't do it.  And

1   you're the judge, you make the law, and the Tenth Circuit can

2   either -- district judge and the Tenth Circuit can either

3   uphold that and clarify.  If the Court would like supplemental

4   briefing if Mr. Gorokhov doesn't know of any, we're more than

5   happy to supply that, but I haven't come across this situation.

6           THE COURT:  Mr. Gorokhov?

7           MR. GOROKHOV:  Yes, Your Honor.  The answer to

8   your question is I don't know of any case law with regard to

9   issuing an order.  What I can say, Your Honor, is that, with

10  respect to the guarantee of the status quo issue, if we are to

11  treat these assets truly as substitute assets, there has to be

12  determination, and Your Honor hit on this in the last hearing,

13  in the January 16th hearing, was the fact that we have to

14  have -- we have to be sure.  Either it is or is not.  Either

15  we're dealing with money that may be subject to later action or

16  not.

17           I can represent on behalf of myself that I would

18  not accept any money if there was any remote possibility of a

19  future action by the Government.  So as far as I'm concerned,

20  that money is virtually useless.

21           Now, the Jarvis does seem to be fairly clear that

22  there is no relation back with respect to substitute assets,

23  but as Your Honor knows, I mean, forfeiture law is a briar

24  patch, really, and, you know, there are -- arguments have been

25  made based on state law.  In the Jarvis case it was the state

1    law of New Mexico.  That case doesn't discuss the state law of

2    Kansas, Oklahoma, or the country of Mexico, which the

3    substitute assets in issue are in all three of those

4    jurisdictions.  So at least on my part, I'm not willing to, you

5    know, accept a fee with the risk of all the vicissitudes of

6    forfeiture law later coming into play and putting these fees at

7    risk, and I don't think our experts would either.  And

8    Mr. Williamson can, I think, address that on his behalf.

9              THE COURT:  Okay.  Let me turn back to the

10   Government.  You heard the question I presented to them.

11   What's your position?  Do you think that you can now, after the

12   fact, go back to the grand jury, supersede the indictment and

13   change the character of these assets from substitute assets to

14   forfeitable assets and albeit not maybe go back retroactively

15   but go forward with the theory that you have some kind of

16   superpower over those assets?

17             MS. TREADWAY:  Judge, I have to answer quite

18   truthfully.  At this point in time I do not believe that is

19   likely.  Our financial analysts have done a very thorough job

20   in identifying forfeitable assets that are directly forfeitable

21   as either facilitating property or proceeds property.  To the

22   extent that that is accurate, we have accurately identified the

23   assets as substitute assets and not directly forfeitable

24   assets.  I do not see that changing.

25             However, that does not answer the question as to

1    where the other assets have come from to pay counsel and where

2    they might come from to pay counsel.  Therefore, the request is

3    much too broad as we stand here today, because obviously there

4    are other assets.  I don't know where they're coming from and I

5    don't need to know where they're coming from at this point in

6    time, but I cannot represent that those assets being used to

7    pay counsel beyond the assets that we identified as substitute

8    assets in the indictment now are forfeitable, 'cause I don't

9    know where they're from and I don't know about them.  So that

10   is what I am worried about, is some broad language that says

11   all fees paid to counsel for the defense or investigators for

12   the defense are beyond the Government power.  I just don't know

13   that standing here today, and the Court doesn't either.

14              THE COURT:  Let me turn that back to you.

15              Do you agree with that general approach?

16              MR. WILLIAMSON:  I think that I would be okay with

17   the language that limits the Government's ability to seek the

18   items that have been identified in the motion and presented to

19   this court thus far.  I would be okay with that.  And I think

20   any other "assets" that -- any other assets that are not before

21   this court are not relevant today and can be addressed at a

22   later time if such issue arises.  So I don't think we're asking

23   for the Court to give an order or any other assets that the

24   Government may locate.  We're saying, look, Government, you

25   have located a finite set of assets, and we need to be certain

 1    that, based on what you've found thus far and the case law,

 2    that we can move forward with this case and represent our

 3    experts, that they're not going to have any subsequent

 4    government actions.  And I'm okay with the language limiting it

 5    to the assets that have been identified thus far or that were

 6    identified in Government motion, I think it was Docket 16.  And

 7    they're listed there and I think it totaled up to 691,000.

 8    Again, we don't agree with that amount, but for the principal

 9    and for the purpose of this hearing, I don't think it really

10    matters how much it is.  So I'm okay with that, Your Honor.

11              THE COURT:  It is the items that the Government, I

12    think, in their additional motion, which is Document 16,

13    identified as substitute, and when we went through 'em before,

14    we talked about the dollars.  And it was -- the Government had

15    placed a value of $691,102.14 on 'em, but at the last hearing

16    they acknowledged that there was two or three items that were

17    mischaracterized, and those were about $8,865 worth of items.

18    And if you'll give me a moment, I think I can even identify

19    which ones we're talking about here.

20              MS. TREADWAY:  Judge, if I can aim the Court, I

21    believe what you're talking about are the personal property

22    items, the 1995 GMC Jimmy, the 1992 Bayliner Bowrider boat, the

23    1986 Bayliner boat.

24              THE COURT:  Okay.  I believe that is right.  Those

25    are the items, I think, that we identified before.  I'm just

1    trying to get my worksheet out here.

2              All right.  If then the Government's

3    representation that those are substitute assets that are not

4    subject to basically reconsideration, that would be the type of

5    order that the defendants would be satisfied with in this case?

6              MR. GOROKHOV:  No, Your Honor.

7              MR. WILLIAMSON:  No, Your Honor.

8              THE COURT:  And it would be the assets identified

9    in the Government motion that are related to that value, not

10   the fact that you agree with the value?

11             MR. WILLIAMSON:  That's correct.

12             THE COURT:  All right.  With that being said then,

13   I want to give you -- well, I guess, if you have any additional

14   authorities on the forfeit issue that you think I need to look

15   at, I'd like to have them within a week.  So if you'll give me

16   any supplemental authority by the 10th, then I'll get you an

17   opinion on this issue.

18             What I will also do is that I will, as soon as the

19   last matter comes in and is approved by Judge Brown for

20   payment, I will then forward to counsel the copies, under seal,

21   of the vouchers that were approved so that you have an

22   opportunity to review 'em, and then I'll give you seven days to

23   object to those also.  If there are any charges you thought

24   were inappropriate, you have a right to at least object to

25   having the reimbursement applied to those items.

1        I suppose, to be accurate in this matter, I would

2    only send the respective voucher to the party representative.

3    In effect we have two defendants, we're taking up the two

4    defendants together, so I would send to Mr. Williamson the

5    voucher that had been submitted by CJA panel that had been

6    appointed to represent Mr. Schneider, send to Mr. Ohaebosim and

7    you, Mr. Gorokhov, the ones that would be approved by your

8    client, and then you would each have your individual right to

9    object just to the items that your -- that would be the subject

10   to the order, and whatever reimbursement order I make obviously

11   has to be dedicated to a specific defendant.  It isn't going to

12   be a joint order, but it would be an order individualized by

13   defendant.  I think that's the way to proceed.

14        Does the Government have any input on that

15   procedure?  Do you agree with my analysis?

16        MS. TREADWAY:  I think that's an excellent

17   procedure, Judge.

18        THE COURT:  All right.

19        MR. WILLIAMSON:  Your Honor, the only other, I

20   guess, thing I said ask the Court to discuss in regards to this

21   is how long would we have to reimburse, because again we have

22   to go in and attempt to liquidate?  And Mr. Schneider's counsel

23   is located in Kansas City so it takes me a few hours to come

24   down and see him.

25        THE COURT:  Do you have a proposal as to what you

1    think it would take?  And, again, without disclosing numbers at

2    this point, I think I can tell you that the numbers we're

3    looking at are all going to be in the six-digit range.  I take

4    that back.  Are going to be in the four-digit range.

5                    MR. WILLIAMSON:  Okay.

6                    THE COURT:  Excuse me.  I see a little -- I see a

7    little --

8                    MR. WILLIAMSON:  We almost had to take a recess,

9    Judge.

10                   THE COURT:  No, I think we're talking about

11   something in the four-digit issue.  So let's just say that if

12   we were looking at reimbursement of an amount that was $10,000

13   or less, give me what kind of a time frame that you propose,

14   both of you, just assuming it was divided equally between the

15   two of you?

16                   MR. GOROKHOV:  Your Honor, I think we could do it

17   within 30 days of the liquidation and, you know, we could

18   provide documentation of when they were liquidated to assure

19   the Court it was done in accordance with that.

20                   MR. WILLIAMSON:  The fear is -- frankly, I haven't

21   had to be a power of attorney for somebody incarcerated when

22   you're dealing with life insurance funds, and I don't know what

23   the red tape is going to be in regards to that, so we just have

24   a general order, say once the items are liquidated, defendants

25   have 30 days to repay the assets.

1          THE COURT:  What I would probably do would be to

2     place the burden on counsel to advise the Court at the time

3     that sufficient assets had been liquidated -- I don't want to

4     wait until all of them are liquidated.

5          MR. WILLIAMSON:  That's correct, just sufficient

6     assets to cover --

7          THE COURT:  Sufficient assets to make the

8     reimbursement order, and give you 30 days from that time.  And

9     if it goes beyond a certain time -- I may put a limit on how

10    quickly you liquidate the assets so that we don't let this

11    thing drag on and on, but make that a reasonable period of time

12    and then run the clock from there.  Would that work?

13         MR. WILLIAMSON:  Absolutely, Your Honor.

14         THE COURT:  All right.  Okay.  Government would

15    also have the right to submit anything else that you wish to

16    submit to me on these issues that have been brought up today,

17    on the substitute argument, on substitute assets, but I think

18    that, subject only to your right to then review the actual

19    vouchers and make any objections, I have everything I need.

20    I'll wait till you give me anything else that you do find for

21    submissions, and then I'll issue an order shortly.

22         MR. WILLIAMSON:  Can we take up one more matter

23    while we're here?

24         THE COURT:  Yes.

25         MR. WILLIAMSON:  We have, I believe, a scheduling

1    order set for March 14th.

2                MS. TREADWAY:  The status conference.

3                THE COURT:  Status conference.

4                MR. WILLIAMSON:  I guess what my request would be

5    if we could cancel that status conference.  What we're going to

6    do, Your Honor, is we plan to make a motion to set bond by the

7    end of this week, and I know the Court has had a hearing prior

8    to counsel becoming involved.  We would propose to allow that

9    briefing to become ripe and we're going to request a hearing on

10   that, and to maybe just hold a hearing on the status conference

11   at the same time, instead of setting something for on the 14th

12   and then having to come back within a few weeks.

13               THE COURT:  I appreciate that, but as you may

14   understand, I don't -- the status conference is not before me,

15   it's before Judge Brown.

16               MR. WILLIAMSON:  Okay.

17               THE COURT:  So basically it's his determination of

18   how he wants to proceed.  I will advise Judge Brown of your

19   request, but I think that you need to talk with his chambers

20   directly and basically tell them what you've told me, and see

21   how he wishes to proceed on that matter, because that is

22   something solely under his control.

23               MR. WILLIAMSON:  Okay.

24               THE COURT:  All right?  All right.  Anything

25   further then we need to take up today in either of these two

3-3-08  USA v. SCHNEIDER 07-10234-01, 02

20

1   cases?  Anything from the Government?

2              MS. TREADWAY:  No, judge.

3              THE COURT:  All right.  For the defendant?

4              MR. WILLIAMSON:  No.

5              (Whereupon, the proceedings were concluded at 3:26

6              p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I, Johanna L. Wilkinson, United States Court Reporter in and for the District of Kansas, do hereby certify:

That the above and foregoing proceedings were digitally recorded;

That thereafter said proceedings were transcribed under my direction and supervision by means of computer-aided transcription, and that the above and foregoing constitutes a full, true and correct transcript of said proceedings;

That I am a disinterested person to the said action.

IN WITNESS WHEREOF, I hereto set my hand on this the 29th day of March, 2011.


s/ Johanna L. Wilkinson
Johanna L. Wilkinson, CSR, CRR, RMR
United States Court Reporter