IN THE UNITED STATES DISTRICT COURT

DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | District Court |
| vs. | ) | Case No. |
| | ) | 07-10234-01, |
| STEPHEN J. SCHNEIDER and | ) | 02 |
| LINDA K. SCHNEIDER, a/k/a | ) | |
| LINDA K. ATTERBURY, d/b/a | ) | Circuit Court |
| SCHNEIDER MEDICAL CLINIC, | ) | Case No. |
| | ) | 10-3281 |
| Defendants. | ) | |

TRANSCRIPT OF PROCEEDINGS

On the 16th day of January, 2008, came on to be
heard proceedings in the above-entitled and numbered
cause before the HONORABLE DON BOSTWICK, Magistrate
Judge of the United States District Court for the
District of Kansas, sitting in Wichita, commencing at
2:30 p.m.  Proceedings recorded by digital recording.
Transcript produced by computer.

APPEARANCES:
The plaintiff appeared by and through:
        Ms. Tanya J. Treadway
        Office of United States Attorney
        290 U.S. Courthouse
        444 S.E. Quincy
        Topeka, Kansas  66683-3592
         -and-
        Ms. Annette Gurney
        Office of United States Attorney
        1200 Epic Center
        301 North Main
        Wichita, Kansas  67202
The defendant Stephen Schneider appeared by and through:
        Mr. E. Jay Greeno
        Law Office of E. Jay Greeno
        330 N. Main
        Wichita, Kansas  67202
The defendant Linda Schneider appeared by and through:
        Mr. John E. Rapp
        Hulnick, Stang & Rapp, P.A.
        310 West Central
        Suite #111
        Wichita, Kansas  67202

1              THE COURT:  This is the criminal docket call for

2    the United States District Court for the District of Kansas for

3    Wednesday, July -- January 16, 2008, at 2:30 in the afternoon.

4    We have basically one issue but two defendants, two case

5    numbers to take up, Stephen J. Schneider and Linda K.

6    Schneider, a/k/a Linda Atterbury, d/b/a Schneider Medical

7    Clinic, Case No. 07-10234-01 and -02.

8              For purposes of this hearing, can I have the

9    appearance for the Government, please.

10             MS. TREADWAY:  May it please the Court, on behalf

11   of the Government Assistant U.S. Attorneys Tanya J. Treadway

12   and Annette Gurney.

13             THE COURT:  Thank you.  And for defendants?

14             MR. GREENO:  If it please the Court, Dr. Stephen

15   Schneider appears by and through counsel E. Jay Greeno.

16             MR. RAPP:  Linda Atterbury appears in person with

17   her attorney John Rapp.

18             THE COURT:  Thank you very much.

19             This comes on today on the Government's motion.

20   Since it seems to apply to both cases, would it make sense to

21   the defendants that we have a single hearing rather than

22   breaking it down into individual cases?  Defendants?

23             MR. GREENO:  That's fine.

24             MR. RAPP:  On behalf of Linda Atterbury, that's

25   the way we understand it to be.

1          THE COURT:  All right.  How's the Government wish

2     to proceed with the motion?  Do you have any testimony that you

3     wish to present or any additional exhibits that are not

4     attached to the motion?

5          MS. TREADWAY:  Not at this time, Judge.  It would

6     be the Government's position that it is the defendants' burden

7     to persuade the Court, by a preponderance of the evidence, that

8     they are substantially unable to obtain counsel on their own.

9          THE COURT:  Can I -- can they take comfort from

10    all the information that you've provided in meeting that

11    burden?  Can they use your exhibits and your attached statement

12    and assets to show that they don't have financial ability to

13    hire counsel?

14         MS. TREADWAY:  As far as I'm concerned, Judge.

15    Of course, we're working in the dark here.  We don't know what

16    they represented to you in the financial statement previously

17    to the Court, so you may have already decided this issue and we

18    don't know.  But we are fairly confident that they did not list

19    all the assets that we're aware of in their financial

20    affidavit.

21         THE COURT:  All right.  Thank you.

22         Let me turn to the defendants.  I set this matter

23    fairly quickly because I knew that some counsel were going to

24    be unavailable later on.  First, I want to ask you.  This is a

25    considerable volume of material.  I think I had my courtroom

1    deputy inquire if you desired to make a written response before

2    a hearing or I think the indication was that you didn't

3    necessarily wish to do that.  I want to make certain that you

4    feel that you've had enough time to prepare for this hearing

5    today before I force you to go forward with the considerations,

6    and so I want to hear from you on that issue if I can.

7         MR. GREENO:  On behalf of Dr. Stephen Schneider, I

8    have some thoughts on this issue.  Quite frankly, it -- and I

9    think Mr. Rapp agrees -- it kind of puts us in between a rock

10   and a hard spot here in that -- well, or another way to say it

11   is I don't think I have a dog in this fight, quite frankly,

12   because I'm not sure if the federal government would like to

13   pay me to go ahead and find out whether or not these assets are

14   encumbered.  There's certain questions I have of the

15   Government.  It appears from the indictment and the motion

16   that's been filed that this $691,000, plus or minus, in assets

17   they believe are unencumbered the Government has asked the

18   Court to attach or somehow encumber that property as substitute

19   assets in the event that the forfeiture assets they're

20   producing don't produce enough property to cover what financial

21   obligations they believe.

22         If the Government was to give us some assurance

23   that this $691,000 in property that they've set out in their

24   motion is indeed unencumbered by the Government, the Government

25   does not intend at some time in the future to come back and say

1    that money shouldn't have been spent on lawyers and go to

2    counsel to find out if they're going to get their money back

3    from them, that's a different story.  And then we have to

4    proceed on to whether or not these assets are encumbered by

5    some other resource, whether there's a bank, some other lien

6    on, which is going to involve a lot of time, quite frankly, and

7    I'm not sure the federal government wants to pay me to do that.

8    If the Court wants to say, Mr. Greeno, we'd like to pay you to

9    do that and pay you at the court-appointed rate, I'll be happy

10   to do that.  I probably will be asking the Court for some

11   assistance by way of an expert, maybe an accountant or

12   something like that, and then if they determine in the future

13   that these assets are encumbered, that my client and his wife

14   can't get to those assets and uses those assets to employ

15   counsel, then the Court could require my client to repay the

16   Government for the money they spent on me doing this.

17           Judge Brown has already declared that this is a

18   complex case.  My client is in custody, so I'd like to see this

19   move along in some kind of expeditious fashion, and I've talked

20   to my client about that.  If they want me to look into this

21   matter and investigate this thoroughly, it's going to slow this

22   thing down a little bit.  That would be my suggestion.

23           THE COURT:  All right, Mr. Rapp.

24           MR. RAPP:  I would adopt much of the same

25   argument, Judge, as Mr. Greeno just said, and also add that,

1    you know, the Government wants them to go out and hire outside

2    counsel.  But also everybody they talked to and anyone going to

3    be retained says what are they going to do with any assets you

4    may have.  And the Government has been seizing everything to

5    this point, and there's not going to be an attorney around

6    that's going to want to get involved in that case, as such

7    they're stuck with appointed counsel.  So it seems like the

8    Government's trying to have their cake and eat it, too, and I

9    don't think that's fair to the defense in this case.  They need

10   to have a lawyer involved.  They need to have somebody helping

11   them, because as this Court knows, the early stages of the

12   investigation are very important, and we need to get the ball

13   rolling to find out what discovery there is out there and what

14   (inaudible).  Thank you.

15              THE COURT:  Let me proceed this way.  Let me set

16   out, I've spent a lot of time reading the forfeiture statutes,

17   reading the motions, reviewing the file, reviewing the

18   financial affidavits that we have.  Let me kind of walk through

19   my thoughts, and when we get done we'll see maybe how you all

20   wish to proceed.

21              I'm to appoint counsel -- to appoint counsel for

22   clients who are financially unable to obtain counsel under 18

23   U.S. Code Section 3006A(b), and if there are funds available

24   for payment or they become payment available, I can enter a

25   reimbursement order in that same statute subparagraph (f).

 1              In fact, Judge Newman has done that before in a

 2    published opinion when he was magistrate in Topeka in U.S. v.

 3    Simmers, 911 F.Supp 483 in 1995.  After he reviewed all the

 4    provisions of the -- and made an adequate and timely and

 5    appropriate inquiry into the defendant's assets, he found the

 6    defendant was entitled to counsel.  He, therefore, terminated

 7    the provisional appointment that he had made and entered a

 8    requirement that the public defender submit a bill for the

 9    amount of time they'd spent, and gave the opponents then, the

10    defendant, then time to object to that.  He indicated he would

11    enter a reimbursement order based upon that.

12              I agree with the plaintiffs -- or with the

13    Government's argument that it is the plaintiff's burden to show

14    that they're financially unable to obtain counsel.  And the

15    case that is cited by them, U.S. v. Barcelon, 833 F.2d 894,

16    sets out a lot of things that I can look at.  I can consider

17    the needs of the defendant and his family.  I can consider any

18    bond that the defendant may have posted as bail, any expense or

19    the extent of legal services that the defendant may require,

20    the amounts given to defendant by others for limited purposes

21    only, whether the defendant has secreted assets, the

22    availability of income to defendant from other sources, such as

23    a spouse or trust or estates, and whether the defendant's

24    portrayal of their financial condition in fact lacks

25    credibility.

1              So my obligation is to conduct an appropriate

2      inquiry.  The inquiry that I've conducted at the time of the

3      Rule 5 in this case was limited to the financial affidavits,

4      which the Government does not have.  I think I can safely say

5      that all of the assets identified by VIN number and account

6      number and everything else were not fully and completely

7      identified in the financial affidavit forms, and I'm looking at

8      both of them together.  But both of them were fairly consistent

9      in reporting not only the income from the Schneider Medical

10     Clinic but also some income from a hospice that Dr. Schneider

11     had received in the past year, a reported home in Oklahoma, a

12     home in Mexico, a home in Wichita, a claim that it was leasing

13     the home in Mexico, that the home in Wichita was in

14     Ms. Schneider's parents' name.  It indicated that the

15     Government had seized their personal account and seized their

16     clinic account.  It identified that they had boats.  It

17     identified that they had an annuity with questionable value,

18     life insurance with a questionable value, that the Government

19     had seized the clinic's operating account.  It identified

20     expenses or debts for the clinic of $2 million for the Internal

21     Revenue Service, for personal property tax, for clinic bills

22     and for personal credit card items.

23              Reviewing those and knowing as I did at the time

24     of the hearing that a considerable number of the assets of the

25     defendant had been seized, physically seized, by the

1    Government, I found that that was an adequate basis for the

2    Court to appoint counsel at this time.

3              Now that I've reviewed the Government's materials,

4    I have certainly a more complete or more definitive idea of the

5    alleged assets of the parties.  But what I keep coming back to

6    is a question that I'm going to turn to the Government about.

7    If I adopt their Exhibit 1 and their spreadsheet of assets in

8    this case, they have taken the items they have been able to

9    locate and broken them down between assets which are subject to

10   forfeiture and assets they classify as not seized or

11   restrained, and the $691,000 is the total of the column

12   indicated as assets not seized or restrained.  But as to

13   virtually -- as to the large majority of those assets, they are

14   identified as substitute assets in the indictment itself,

15   specifically -- and the indication on the value on the chart

16   clearly indicates that.  There are some exceptions, and when I

17   totaled those exceptions I come up with no seizure being sought

18   on the 1990 Chevrolet pickup, the 1996 Dodge Dakota pickup, the

19   1998 boat, the boat in Mexico, a '71 Ford Mustang, a '97 Suzuki

20   Sidekick and a 1997 Sea Doo Bombardier item.  I've totaled

21   those up and those total, to me, $32,986.  Everything else in

22   that column that's indicated as not seized or restrained is

23   identified as substitute property in the indictment itself.

24              As a matter of fact, a couple of the items that

25   are indicated as substitute assets:  The '91 Jimmy SLT, Item

 1   No. 25; Item 28, the Bayliner Bowrider; and Item 29, another

 2   Bayliner, appeared to me not to be substitute assets at all but

 3   were assets for which forfeiture was actually sought in the

 4   main forfeiture allegations on page 9 as paragraphs 14, 15 and

 5   16.

 6          So basically my question comes down to this.

 7   Taking the Government's Exhibit 1 as a true and accurate

 8   representation, and this is why I asked the Government this

 9   question, if I disregard the assets that are substitute assets

10   that the Government has identified in the indictment as seeking

11   forfeiture for, I think I have to consider those.

12          As I walk through the forfeiture statutes, this is

13   kind of how I analyze it, and I appreciate that the Government

14   can help me if I'm making a mistake in the way I approach this

15   forfeiture issue.  They've sought forfeiture in the three

16   grounds, 21 U.S. Code 853 seeking forfeiture of any property

17   constituting or derived from proceeds obtained directly or

18   indirectly from drug violations.  In connection with each of

19   these, they ask for, first of all, money judgment, then for

20   real property, and then for personal property.  And the real

21   and personal property's identified with specificity.  A money

22   judgment is not.

23          I cannot tell what the money judgment might be

24   requested in this case because there's no amount stated, but

25   when I go back and look at the counts referenced in the first

1    claim for forfeiture, Counts 1 through 11, I see references to

2    the fact that the defendants had received payments of 4.24

3    million, in paragraph 43, and that they'd received 2.31 million

4    from Code 99213 services in paragraph 44, and that there have

5    been paid claims to them for controlled drugs in the amount of

6    1.89 million, paragraph 45.  So whether those are mutually

7    exclusive, whether they should be totaled, I don't know.  But

8    certainly it indicates that the amount of the claims that the

9    Government seeks to bring under the Counts 1 through 11 are

10   substantial in nature.

11          The second basis for forfeiture is 18 U.S. Code

12   982(a)(7), for health care fraud, seeking property that

13   constitutes or is derived directly or indirectly from gross

14   proceeds traceable to the commission of these offenses that are

15   set out in Counts 1 and 7 through 17.  Again, as to money

16   judgments, I'm not quite certain that I can ascertain what the

17   money judgment would be, but Counts 10, 11 and 12 claim false

18   claims in connection with a particular drug that total

19   $406,000.

20          Counts 13 through 17 talk about fraud, fraudulent

21   services that were paid by health care providers in the amount

22   of over $3.6 million.  Whether all of those claims are alleged

23   to have been fraudulent services or only a part of 'em, I can't

24   tell.  There are a number of false claims identified as to

25   specifics in the indictment, but those don't have a money

1    number there.  So again I'm left with the idea that there is a

2    considerable claim or possible claim for a money judgment under

3    the second basis.

4            The third basis is 18 U.S. Code 982(a)(1) that

5    seeks -- in relation to monetary transactions and money

6    laundering and references Counts 1 and 18 through 34, and seeks

7    forfeiture of property involved in those offenses and any

8    property traceable to that count.  Again as to money, Counts 18

9    through 30 allege monetary transactions of over a million

10   dollars.  In Counts 31 to 34 allege money-laundering violations

11   of $450,000.  So it would appear to me that the Government is

12   seeking a substantial amount of forfeiture in this case.

13           Then when I look at the circumstances, I also have

14   to consider there is a civil forfeiture action, which, of

15   course, is different in nature than a criminal.  That civil

16   forfeiture action is before Judge Belot in 07-1119 and seeks

17   forfeiture of the clinic, seeks forfeiture of the home, seeks

18   forfeiture of the Oklahoma house, and forfeiture of the credit

19   union account in excess of a hundred thousand dollars.  All of

20   those items are also identified in the indictments, but the

21   civil matter pertain -- would go farther than the criminal

22   forfeiture and would seek to forfeit any rights of third

23   parties that don't come forward and make a claim on those

24   properties.

25           As a practical matter then, it looks to me like

1  virtually all of the assets that the Government has been able

2  to identify, and those are consistent in general nature with

3  the ones that the defendants identified in their financial

4  statements to start with, albeit not in the detail, appear to

5  be subject to some degree to forfeiture.  Now, as to forfeiture

6  under 21-853, the Government -- the time by which the

7  Government's claim for forfeiture accrues relates back to the

8  date that the offenses were committed.  And 853(c) also

9  provides that any subsequent transfers to people other than

10 defendant can be validated only if those people are bona fide

11 purchasers for value that at the time of purchase were

12 reasonably without cause to believe that the property was

13 subject to forfeiture.  The Government has the right under

14 21-853(e) to seek a restraining order and injunction from the

15 district judge handling this matter, because a magistrate judge

16 is not authorized to issue injunctions, or he can seek a

17 performance bond to preserve the availability of that property

18 if they wish to do so.  If they do, they can do it, it's my

19 understanding, without the necessity of a hearing prior to that

20 injunction, but the defendants would have a right to a post

21 injunction hearing under the United States v. Jones, 160 F.3d

22 641, at which time they can seek to release some of those

23 assets to be made available to them to purchase services of an

24 attorney.

25              The Jones case is a health care fraud case, as is

1    this one, and under <u>Jones</u>, if the defendants are going to come

2    in to free any of those assets they must first demonstrate they

3    have no asserts other than those restrained to which they could

4    use to obtain private counsel.  They've got the burden of

5    persuading the Court on that issue.  And then they have to make

6    a prima facie showing of a bona fide reason that the grand jury

7    erred in determining that the assets coming from basically the

8    commission of the offense, and they only have the burden of

9    going forward with the evidence on that.  The ultimate burden

10   would be the Government's.

11         The long and the short of this is, it looks like

12   to me that there's -- that the property that we're dealing with

13   here is substantially all subject to forfeiture.

14         Now, the Supreme Court and the Tenth Circuit have

15   both been down the road of whether or not there's some

16   exclusion for attorney's fees in the forfeiture statutes.  And

17   all of them have decided that there is no statutory or

18   constitutional right to the exemption of forfeiture to pay

19   attorney's fees.  The Tenth Circuit reached that in <u>U.S. v.</u>

20   <u>Nichols</u> in 1988, and then the Supreme Court double-whammied

21   them in Caplin and Drysdale and Monsanto in 1989, made it clear

22   that neither from a statutory standpoint or from a

23   constitutional standpoint is there any problem with forfeiture

24   being -- with there not being any exception to a forfeiture to

25   allow the defendant to use some of those funds to hire counsel.

1          Now, when I read <u>Nichols</u>, which is a long opinion,

2     Judge Doss (phonetic) discussed the possibility there might

3     be -- all the property of the defendant might be frozen, and

4     concluded that in such a case an attorney might be appointed to

5     represent the defendant who is financially unable to obtain

6     counsel under the statute.

7          They recognized in <u>Nichols</u> that forfeiture affects

8     the availability of assets and is a proper consideration for

9     the court to make in consideration with appointment of counsel.

10    Judge Tacha also mentioned the possibility that a defendant

11    wouldn't be able to get counsel, even if there was no

12    restraining order that had actually been issued, because of the

13    indeterminate status of the assets may make the ability of the

14    defendant to obtain counsel unlikely.

15         Now, I know that both Judge Tacha and Justice

16    White have been down that road and they kind of poohpawed that.

17    My opinion from practicing law would be that the indeterminate

18    nature of all of the defendant's assets would have a severe

19    impact on the ability of a defendant to retain counsel

20    privately.

21         So what I'm coming to, from the Government's

22    standpoint, is why have you not proven that, in fact, my

23    appointment of counsel for these people is appropriate?

24              MS. TREADWAY:   Well, Judge, I think your analysis

25    is right up to a point.  And that point is <u>United States v.</u>

1    _Jarvis_.  And that is a Tenth Circuit opinion that makes the

2    distinction between two types of forfeited assets.  I think

3    your analysis is absolutely dead on as to directly forfeitable

4    assets.  And I'm just going to, as a shorthand, call those

5    tainted assets, whether they be assets that were used to

6    facilitate the crime or proceeds that directly come from the

7    crime.  That's one set of assets.  And I think your analysis

8    goes to that set of assets.

9            On the other hand, we have the substitute assets,

10   and that is what _United States v. Jarvis_ addresses.  And in

11   that case, which is 499 F.3d 1196, this is what the Tenth

12   Circuit said about substitute assets.  "The United States does

13   not have a ripened interest in substitute property until, one,

14   after the defendant's conviction and, two, the Court determines

15   the defendant's forfeitable property is out of the Government's

16   reach for a reason enumerated in the statute, 853.  The court

17   further states that the Government's interest in the

18   properties, if any, is only a potential and speculative future

19   interest.  Because that interest cannot mature into an actual

20   interest until after conviction and does not relate back to a

21   preconviction date, it cannot satisfy the prerequisites for the

22   recording of a lis pendens."

23           So here we have identified in the indictment and

24   in our motion multiple assets which are not restrained and are

25   not encumbered.  They are the defendants' assets.  The

1    defendants are free to sell them.   The Government cannot

2    restrain them, period.   The exceptions to that in the list of

3    assets are the ones that you correctly identify, Judge, the

4    1995 GMC Jimmy car and two boats, the '92 Bayliner and the '87

5    Bayliner.   But those three assets we claim are directly

6    forfeitable.

7                     THE COURT:   Right.

8                     MS. TREADWAY:   And those total $8,865.

9                     THE COURT:   Right.

10                    MS. TREADWAY:   So that leaves the bulk of the

11   $691,000 as unrestrained and unencumbered assets.

12                    The Government's evidence before the Court is that

13   none of these assets have mortgages, have third-party interests

14   attached to them.   There are none.   These are assets that the

15   defendants own free and clear.   And much of them are cash and

16   cash value that are very easily accessed within days.   They

17   could have somebody with their authority go to the credit union

18   today and get that money.   They can liquidate their E*Trade

19   account.   They can get the cash value of their very valuable

20   life insurance policies.   Of course those aren't encumbered.

21   But they've got value today, quite a lot of value, over

22   hundreds of thousands of dollars.

23                    So, again, I think your analysis is right to a

24   point, to the point that we have directly forfeitable assets or

25   proceeds that we have restrained, I agree those are not

 1    available to the defense.  But to the effect that they are

 2    substitute assets, Judge, I disagree with you, and I think

 3    Jarvis disagrees with you and the Tenth Circuit disagrees with

 4    you.  And so today those assets are available to the defense,

 5    and they are not something that we would restrain.  We can't

 6    restrain and we can't enjoin them, and we can't go get them

 7    later.

 8            If they sell the Corvette for $200,000 and give

 9    that to an attorney, we cannot later go get that $200,000 from

10    that attorney.  It just can't happen, simply because Jarvis

11    says we can't because we have no interest in that right now.

12    So, therefore, we believe the Government's evidence is that

13    they have a little under $690,000 right now that they can

14    liquidate and pay counsel.

15            THE COURT:  Okay.  Well, we'll turn back to the

16    defendants.  Does that answer your question, Mr. Greeno?

17            MR. GREENO:  I guess.  I don't know, quite

18    frankly, I do not know.  My clients have told me that there are

19    some of these assets that are indeed encumbered and I haven't

20    had an opportunity or actually even made an attempt to

21    determine if they are indeed encumbered, and if so, to what

22    extent.  We can certainly check that out.

23            I don't know what you want me to do.  You just

24    tell me.  I can't tell the Court whether this money comes from

25    the Schneiders or from the United States Government.  I've been

1    involved in a few of these cases that were somewhat complex,

2    and I don't think that there's any way that we're not going to

3    go through at least $600,000, and that's whether I'm getting

4    paid my full hourly rate or my hundred dollars an hour.

5            I talked to the Government about the nature of the

6    discovery in this particular case, and it's voluminous.  We are

7    going to be making requests for experts, and I can't say that

8    the Court here has been generous in the appointment of those

9    experts but they've been reasonable.  And my experience is that

10   when we employ experts and assistants in these counts, all

11   those experts and all those assistants, including paralegals,

12   psychologists, accountants, whatever, they get paid their full

13   hourly rate.  The only people that aren't getting their full

14   hourly rate is Mr. Rapp and I.  I know the statute only

15   addresses the appointment of multiple counsel in death penalty

16   cases, but under the circumstances here we may be coming back

17   to the Court asking for the appointment of additional counsel

18   if we don't find assets to employ him.  Because I think, quite

19   frankly, it's a burden on my practice, and I know it'll be a

20   burden on Mr. Rapp's practice, which might rise to an

21   unconstitutional taking of our property.  So I might advise the

22   court that we may be looking at something like that, too.

23            THE COURT:  Mr. Rapp?

24            MR. RAPP:  I don't have enough information, Your

25   Honor, to comment on a lot of the assets.  My client tells me

1    that the Bancomer bank account, that there's no way that's even

2    close to what -- and many of these assets do have liens or

3    mortgages on them.  But I don't have any paperwork.  I hope the

4    Government does, if that's what they're saying there's nothing

5    on those property, but I just don't know enough to really

6    comment on those things.  And I agree with what -- much of what

7    Mr. Greeno said.  This is going to be a very expensive case any

8    way you look at it.  So of course that'll be -- think about

9    that, too.  So whatever you tell us to do we'll do.

10                THE COURT:  Well, I think the burden is on you to

11   establish that you don't have sufficient assets to hire, and in

12   spite of the expense of the trial, which I agree with you would

13   be extensive, it has been considered to be a complicated case,

14   but $680,000, you know, is a considerable sum of money if it,

15   in fact, exists.  So what I want to do is give you an

16   opportunity to verify that those properties which the

17   Government has identified in Exhibit 1 to their motion, in

18   which they now have stated, under the holding in the Jarvis

19   case, are freed of all claims of the Government, that you are

20   free to sell or dispose of those without any restrictions.  I

21   want you to focus, if you would, on those specific assets, and

22   then give me your response to their motion, documentary.  You

23   know, I'm going to have to have evidence as to any liens or the

24   amounts of those, and I know I'm putting that on you as

25   appointed counsel at this stage, but I think that you're still

1    there, you still need to do that, and if we find ultimately

2    there's sufficient assets for them to hire counsel, I'm going

3    to have you direct your bill in and we'll deal with the

4    reimbursement issue, but I need to have more information, I

5    think, on this.  And it is your burden, I believe, to meet.

6              So with the Government having given you the head

7    start, let me ask you -- I know that you're out of pocket for

8    some period of time.  What amount of time would you anticipate

9    to file a response to provide me with the -- I don't need a big

10   written response, but I do need the documentation or the

11   exhibits that you would proffer to show that these items are

12   encumbered.

13             MR. GREENO:  Quite frankly we're going to have to

14   get some help to do that, Your Honor.  I would anticipate that

15   if you want to set a date down for a month that we might have a

16   response, but if it looks like we're going to need more time,

17   we can certainly file a request.

18             MR. RAPP:  Let me check.  At least that.  I mean,

19   part of the problem with them being in custody, it's going to

20   be we can't get 'em to go to their bank and get their mortgage,

21   powers of attorneys, got get those to the appropriate people,

22   and some of these banks aren't even in the country.  I don't

23   even know how to do that.

24             THE COURT:  Government have any objection to 45

25   days for them to respond to your motion?

1           MS. TREADWAY:   No, judge.  The only concern I

2    have is that we currently have a status conference set before

3    Judge Brown on the 28th, and I would suggest that you discuss

4    that date with Judge Brown, because if counsel is still in flux

5    at that time, that would be kind of a waste of his time as well

6    as ours.

7           THE COURT:  Do counsel for defendants agree with

8    that?

9           MR. GREENO:  Yes, Your Honor.

10          MR. RAPP:  We do, Your Honor.

11          THE COURT:  I'll speak with Judge Brown, tell him

12    what we have done today, where we are going, what the

13    circumstances are.  And the other thing I guess I would say is

14    I suppose one of the considerations from the defense, you

15    raised the issue of how expensive this would be to try, so one

16    of the things I would need to consider is not only the amount

17    of assets available, which you're following up on, but some

18    representation or some evidence or some proffer as to the cost

19    of defense of this matter.  And you can base that, I suppose,

20    on either a combination of either the CJA rates or anticipated

21    private rates, whatever.  But I will need to also see that to

22    lay those items aside once I get --

23          MR. GREENO:  I've had some experience doing

24    budgets for death penalty cases and I assume that's kind of

25    what you're looking for.

1            THE COURT:  That is what I'm looking for.

2            Yes, Ms. Treadway?

3            MS. TREADWAY:   And, Judge, I just wanted to bring

4    to your attention the following information.  I don't know how

5    it plays into the Court's decision, but it would appear that

6    today we are fighting this issue of whether they should have

7    appointed counsel or not, but in previous representations to

8    the press, at least, Mr. Rapp and the Schneiders' family

9    members had indicated that they are fully intending to retain

10   counsel.  So to the extent that they're going to actually act

11   on that intention, they should do that without causing these

12   gentlemen unnecessary work.  If that's really their intention,

13   then go do it, because it's silly for the Court to waste its

14   time and Mr. Greeno and Mr. Rapp to waste their time if, in

15   fact, that's the defendants' intentions.

16            I had a conversation just yesterday with Dave

17   Schippers, who is the attorney in Chicago that Mr. Schneider

18   hired many, many months ago during the scope of this

19   investigation.  And Mr. Schippers still believes that he's in

20   this case and that he is going to try this case here in

21   Wichita.  He's been asking about hotels and whether his wife

22   should come down, and he's told me that, you know, if he's

23   going to be down here for a certain amount of time he knows

24   what that's going to cost, and he and Mr. Schneider have

25   discussed this, so I'm a little bit chagrined by the posture

1   today, given the representations in public that they intend to

2   retain counsel.

3            So I'm just asking the Court that if, in fact,

4   they are going to retain counsel, that they not require

5   Mr. Greeno and Mr. Rapp to go through all this rigmarole for no

6   good purposes.

7            MR. GREENO:  Well, I told my client and I suppose

8   I can tell the Court, I have no desire -- I will not appear as

9   local counsel for Mr. Schippers.  I have been involved with him

10  on a peripheral basis but through the civil actions and I quite

11  frankly don't -- I'm not in -- I do not intend to get involved

12  with him in a professional way in this criminal action.  My

13  client has indicated to me that they would like to talk to me

14  about retaining my services in this thing, and if there's going

15  to be additional counsel added in this particular case, I'm

16  certainly going to be consulted if I'm going to be local

17  counsel.

18           So my discussions with Mr. Schippers have been

19  extremely limited.  My client tells me he hasn't talked to

20  Mr. Schippers in quite some time.

21           THE COURT:  Mr. Rapp, anything else to add?

22           MR. RAPP:  No.

23           THE COURT:  I guess the question is a good one in

24  that if they intend to hire counsel, they must feel like

25  they've got some assets they can use or some ability to hire

1    them.  I don't know whether that's true or not, but if that's

2    truly their intent, then I think there is some truth that I

3    don't want you to have to go out and spend a lot of your time

4    and effort, you know, getting the material ready for us.

5              MR. GREENO:  Well, to be real candid with you,

6    there have been a lot of things going on in this case that just

7    seem to be slowing me up.  I mean, I would like to get this

8    stuff resolved so I can get to work on this case and, you know,

9    this discussion about whether or not they got money or whether

10   or not they're going to get outside counsel, let's just put

11   that to bed.  I want to get that over with so we can get on

12   down the road and do what we're supposed to be doing here.

13             THE COURT:  Okay.  So can I have a commitment from

14   counsel, when you consult with your people, when you come up

15   with what you think the assets are, what you think the costs

16   are, I want to know whether they still are seeking to retain

17   appointed counsel or whether they're in a position, do they

18   believe, to retain counsel, either independently or with the

19   assistance of some outside entity, person, family, whatever it

20   may be, so we do get this matter put together, and I'd like to

21   know that when you do your response in 45 days.

22             MR. RAPP:  Certainly, Judge.

23             MR. GREENO:  That's fine with us.  Thank you.

24             THE COURT:  All right.  Let's set that date then

25   so we don't all have to count the calendar and come up with the

 1    wrong date.  Let's just make it March the 3rd, which is a

 2    Monday.

 3                MR. GREENO:  Be on the afternoon docket, Your

 4    Honor?

 5                THE COURT:  I think I will put you on a late --

 6    probably a later afternoon docket like this so that you don't

 7    have to sit around and wait through a normal docket, but we

 8    would set it for that matter.  We'll say 2:30 in the afternoon,

 9    maybe 3:00 o'clock in the afternoon on March the 3rd.  And if

10    you have exhibits that you intend to produce at that time, if

11    you could share them with the Government before the hearing and

12    also make a copy available to me, say by Friday before so that

13    we have a chance to look through them, I appreciate it.

14                MR. GREENO:  And if we can resolve this issue

15    earlier, we'll be happy to move that up.

16                THE COURT:  Please do.  And if you want an earlier

17    hearing for any reason, please also just contact my office,

18    we'll get ahold of counsel and get a date that's mutually

19    satisfactory to everyone.

20                All right.  Anything further then we need to take

21    up today?

22                MS. TREADWAY:   Not on behalf of the Government,

23    Judge.  Thank you.

24                MR. GREENO:  Nothing on behalf of Dr. Schneider.

25                MR. RAPP:  Nothing on behalf of Ms. Atterbury.

1              THE COURT:  Thank you.  That concludes the hearing

2    in this matter.  Court's in recess subject to call.

3              (Whereupon, the proceedings were concluded at 3:10

4         p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I, Johanna L. Wilkinson, United States Court Reporter in and for the District of Kansas, do hereby certify:

That the above and foregoing proceedings were digitally recorded;

That thereafter said proceedings were transcribed under my direction and supervision by means of computer-aided transcription, and that the above and foregoing constitutes a full, true and correct transcript of said proceedings;

That I am a disinterested person to the said action.

IN WITNESS WHEREOF, I hereto set my hand on this the 29th day of March, 2011.


s/ Johanna L. Wilkinson
Johanna L. Wilkinson, CSR, CRR, RMR
United States Court Reporter