5728

```
 1                    (Beginning at 1:35 p.m. June 9,
 2                    2010, the following proceedings
 3                    continued.  Jury IS NOT
 4                    present.)
 5          THE COURT:  Okay.  I think everybody knows the
 6   drill here except perhaps the Schneiders but they'll
 7   learn it.  We'll go through each of these instructions.
 8   I'll ask you if you have an objection.  If you do, make
 9   it.  If not, say you have no objection.  It's not
10   necessary to stand.  Then I will take up your requested
11   instructions.
12       First instruction is members of the jury.  Any
13   objection?
14          MS. TREADWAY:  No objection by the Government,
15   Judge.
16          MR. WILLIAMSON:  No, Your Honor.
17          THE COURT:  Next is the summary of the
18   Indictment.
19          MS. TREADWAY:  Judge, we object on two
20   grounds.  First of all, we ask that the Indictment, even
21   though you're not going to read it, be a part of the
22   instructions as opposed to an appendix to the
23   instructions.
24          THE COURT:  Denied.
25          MS. TREADWAY:  The second issue is I think it
```

5729

1    should just be referred to as the Indictment instead of

2    a Third Superseding Indictment because which indictment

3    is really kind of irrelevant.

4              THE COURT:  Denied.

5              MS. TREADWAY:  The second --

6              THE COURT:  Any objection from the Defendant?

7              MR. GOROKHOV:  Couple, Your Honor.

8              THE COURT:  Did you have more?

9              MS. TREADWAY:  I just have a typo, Judge.

10             THE COURT:  Where is it?

11             MS. TREADWAY:  Page 2.  The last sentence of

12   the paragraph it says:  The Indictment alleges in Counts

13   10 through 12, that Defendants knowingly and willfully

14   submitted material false and fraudulent claims to

15   providers.  I believe it should be the programs.  In

16   other words, the health care programs, not providers.

17   Providers are the doctors.

18             THE COURT:  You're correct.  Yes.

19             MR. GOROKHOV:  On Page 2 of that instruction.

20             THE COURT:  Yes, sir.

21             MR. GOROKHOV:  Looking at the paragraph that

22   starts with Count 7 through 17.  If you read the

23   sentence that says:  The Indictment alleges in Count 7

24   through 9 and 13 through 17 that Defendants knowingly

25   submitted.  The language of the statute is knowingly and

1    willfully.

2            THE COURT:  I'll change it.

3            MR. GOROKHOV:  And then submitted false and

4    then I believe, Your Honor, the distinction that we've

5    been trying to make here is false or fraudulent.  Not

6    merely false, which is a term of art in fraud statutes.

7            MR. WILLIAMSON:  And if His Honor may recall,

8    I pointed those out to the jury in cross-examination

9    where the Indictment alleges false and fraudulent, not

10   simply false.

11           THE COURT:  Oh, submitting false and

12   fraudulent.  That's fine.

13           MR. GOROKHOV:  And then one more point, Your

14   Honor.  I think letter D, making claims for services not

15   sufficiently documented in the patient's medical

16   record --

17           THE COURT:  Yes.

18           MR. GOROKHOV:  I think my understanding is

19   that's not an independent ground.  My understanding is

20   that's a CPT -- that goes into the point made as to the

21   CPT coding.  So that the Government claimed that the

22   service -- the documentation didn't support the code,

23   the CPT code.

24           MS. TREADWAY:  No, that is not our charge,

25   Judge.

1          THE COURT:  I believe that's taken from the

2    Indictment.

3          MS. TREADWAY:  It is.

4          THE COURT:  Is that not the language in the

5    Indictment?

6          MS. TREADWAY:  It is, Judge.

7          THE COURT:  I was asking the objector.

8          MR. GOROKHOV:  It's a long Indictment.  It

9    very well might be.

10          THE COURT:  I think it is.

11          MR. GOROKHOV:  Okay.

12          THE COURT:  All right.  Any other objections?

13          MR. WILLIAMSON:  No, Your Honor.

14          THE COURT:  Next:  An Indictment is but a

15    formal method, et cetera.

16          MS. TREADWAY:  No objection.

17          MR. WILLIAMSON:  No objection.

18          THE COURT:  The Indictment charges that the

19    crimes were committed on or about certain dates.

20          MS. TREADWAY:  No objection.

21          MR. GOROKHOV:  No objection for Linda.

22          MR. WILLIAMSON:  No objection, Your Honor.

23          THE COURT:  Next:  Separate crimes are alleged

24    against both Defendants in, et cetera.

25          MS. TREADWAY:  The Government objects to this

1    instruction and many of the conspiracy instructions

2    because the instructions have essentially varied the

3    charges in the Indictment.  The charges in the

4    Indictment are that these Defendants conspired with each

5    other and with others unnamed.

6              THE COURT:  That's fine.  There's no evidence

7    of that.  That's denied.

8              MS. TREADWAY:  Well, Judge, there's --

9              THE COURT:  That's denied.  Don't argue with

10   me.  The time has not -- is over for arguing.  These are

11   my instructions.  You make your record, but I won't

12   change them for that reason.

13             MS. TREADWAY:  May I make my record then?

14             THE COURT:  Then make it.

15             MS. TREADWAY:  All right.  Judge, by limiting

16   the instruction to just the Defendants, this may effect

17   other cases that we have not yet charged but intend to.

18             THE COURT:  I don't care if it effects other

19   cases.  That's irrelevant.

20             MS. TREADWAY:  Additionally, we believe it's a

21   misstatement of the law because the --

22             THE COURT:  Then you better write me a brief

23   on it.  Anything else?  There's no evidence that they

24   conspired with anyone other than themselves.  You agree

25   with that?  Defendants?

5733

1          MR. GOROKHOV:  We certainly do.

2          MR. WILLIAMSON:  Yes, sir.

3          THE COURT:  No evidence.  None.  You had

4    plenty of opportunity to put it on.  Any objection to

5    this instruction from the Defendants?

6          MR. WILLIAMSON:  No, Your Honor.

7          MR. GOROKHOV:  No, Your Honor.

8          THE COURT:  Next:  Not guilty.  Any objection?

9          MS. TREADWAY:  No objection.

10          MR. WILLIAMSON:  No objection.

11          MR. GOROKHOV:  No objection.

12          THE COURT:  Next:  The recitation of 371.

13          MS. TREADWAY:  No objection.

14          MR. WILLIAMSON:  No objection.

15          MR. GOROKHOV:  No objection.

16          THE COURT:  Next:  The elements of conspiracy.

17          MR. WILLIAMSON:  No objection.

18          THE COURT:  Any objection from the Government?

19          MS. TREADWAY:  The same objection, Judge, with

20    regards to conspirators as opposed to just the

21    defendants.

22          THE COURT:  Denied.  Next one:  The conspiracy

23    alleged in Count 1 charges, et cetera.

24          MS. TREADWAY:  Judge, again, the charges in

25    the Indictment are distributing and dispensing.

5734

1          THE COURT:  There's no evidence in the case of

2     distribution.  None.

3          MS. TREADWAY:  Well, Judge --

4          THE COURT:  And I won't give it.

5          MS. TREADWAY:  The law is --

6          THE COURT:  And if I'm wrong, there's nothing

7     you can do about it.

8          MS. TREADWAY:  Well, Judge, the law is and the

9     charges are that the Defendant through the issuance of

10    the prescription --

11         THE COURT:  I don't care what the charges are.

12    The evidence now is what the evidence is and, gentlemen,

13    do you remember any evidence that any of these, either

14    of these Defendants distributed any controlled

15    substances?

16         MR. WILLIAMSON:  No, Your Honor.  We think

17    it's encompassed with the dispensing instruction.

18         THE COURT:  It's entirely a dispensing case.

19    I'll show your objection.  Anything else?

20         MS. TREADWAY:  The instruction fails to

21    include the fourth element of the conspiracy charged in

22    the Indictment, which is the effort to defeat the lawful

23    functions of the United States.

24         THE COURT:  That is subsumed in health care

25    fraud.  Anything else?

5735

```
 1            MS. TREADWAY:  No, Judge.

 2            THE COURT:  Gentlemen?

 3            MR. WILLIAMSON:  No, Your Honor.  No

 4   objection.

 5            THE COURT:  The next one is the first of a

 6   rather long -- first page of a rather long instruction

 7   concerning conspiracy and it starts out a conspiracy is

 8   an agreement between, et cetera.  Any objection?

 9            MS. TREADWAY:  The Government has the same

10   objection to this instruction as the prior conspiracy

11   instructions, Judge.

12            THE COURT:  Denied.  Any objection, gentlemen?

13            MR. GOROKHOV:  If we may have just one moment.

14            THE COURT:  Sir.

15            MR. WILLIAMSON:  Judge, it's a minor

16   instruction (sic).  There is some case law in this

17   circuit in regards to distinguishing a conspiracy in

18   regards to operating a business venture as opposed to

19   actually, you know, the agreement to undertake an

20   illegal act.

21            THE COURT:  What case, Lawrence?

22            MR. WILLIAMSON:  I don't know it off the top

23   of my head but --

24            THE COURT:  Well, you'll have to -- I don't

25   know it.  You'll have to call it to my attention.
```

1          MR. WILLIAMSON:  I will try to do that, Your

2    Honor.

3          THE COURT:  All right.  Any objection, though,

4    to the instruction otherwise?

5          MR. WILLIAMSON:  Not from Dr. Schneider.

6          MR. GOROKHOV:  Not from Linda, Your Honor.

7          THE COURT:  All right.  Continuing on.  The

8    next defines overt act.

9          MS. TREADWAY:  Judge, the Government doesn't

10   really have an objection to this.  The only thing is

11   that there's a sentence in here which reads a little

12   awkwardly.  It's in the second paragraph and starts with

13   "the overt act".  Instead of saying need be neither, we

14   would suggest the overt act need not be a criminal act

15   nor the crime.  It's just a little easier to read.

16         THE COURT:  I think you're correct.  I think

17   that is a good suggestion.  So that sentence will now

18   read "The overt act need not be a criminal act nor the

19   crime," et cetera.  Any objection, gentlemen, to the

20   instruction as amended?

21         MR. WILLIAMSON:  No.  Not as amended.  Subject

22   to seeing if I can find that case for you about the

23   business issue, but other than that -- it would either

24   be in this instruction or the previous one.

25         THE COURT:  All right.  Next one starts out:

5737

1    In determining whether the conspiracy existed you should

2    consider, et cetera.

3              MS. TREADWAY:  No objection.

4              MR. GOROKHOV:  No objection.

5              MR. WILLIAMSON:  No objection.

6              THE COURT:  Next is while the Government must

7    prove beyond a reasonable doubt that there was an

8    unlawful objective, et cetera.

9              MS. TREADWAY:  No objection.

10             MR. WILLIAMSON:  No objection.

11             MR. GOROKHOV:  No objection, Your Honor.

12             THE COURT:  Next is if the Government

13   establishes beyond a reasonable doubt that a conspiracy

14   in fact existed.

15             MS. TREADWAY:  No objection.

16             MR. WILLIAMSON:  No objection.

17             MR. GOROKHOV:  No objection.

18             THE COURT:  Okay.  Now, the next one is Counts

19   2 through 34, each charge an additional violation, et

20   cetera.

21             MS. TREADWAY:  That's the aiding and abetting?

22             THE COURT:  Correct.

23             MS. TREADWAY:  No objection.

24             MR. WILLIAMSON:  No objection.

25             MR. GOROKHOV:  No objection, Your Honor.

1          THE COURT:  All right.  Next:  Sometimes

2    jurors have difficulty understanding the difference.

3          MS. TREADWAY:  No objection.

4          MR. WILLIAMSON:  No objection.

5          MR. GOROKHOV:  No objection.

6          THE COURT:  All right.  Next is the statutory

7    quote from Section 841, the definition of dispense and

8    the definition of practitioner.  I'll show the

9    Government's objection that I'm not defining distribute.

10         MS. TREADWAY:  Correct, Judge.  And we are

11   also concerned that the nonregistered practitioner issue

12   is not addressed in this instruction.  As the case law

13   is very clear, there's a whole set of case law that we

14   cite in -- let me find my instruction here -- number 15.

15   We've cited *Quinonez*, and there are many other cases,

16   *Armstrong*, all of which discuss the liability of a

17   non-registrant under 841.  And our instruction 15,

18   starting on the first page, the last paragraph, going

19   into the next page, defines a non-registrant, and that

20   applies to Defendant Linda Schneider.  She is as liable

21   as a registrant under 841.

22         THE COURT:  Well, I don't have your number 15

23   in front of me I guess.  I thought I did.  I've got 14

24   and 16.

25         MS. TREADWAY:  Do you want to see it, Judge?

 1            THE COURT:  You can give it to Rachael.  Well.

 2    Okay.  I remember this now.  But here again, I would

 3    agree with that except I don't remember any evidence

 4    that Mrs. Schneider ever dispensed a controlled

 5    substance.

 6            MS. TREADWAY:  She doesn't have to, Judge.

 7            THE COURT:  That's why I have an instruction

 8    in there about her aiding and abetting --

 9            MS. TREADWAY:  Right, but --

10            THE COURT:  -- and that's what you say here.

11            MS. TREADWAY:  Exactly.  But we would believe

12    that it's important to put that in context of both the

13    registrant and the non-registrant because in our

14    instruction we follow that with a registered

15    practitioner.  So both those definitions, which, again,

16    are from the statute itself, alert the jury to those

17    definitions.

18            THE COURT:  Perhaps; but I'm not going to do

19    that.  I'm trying to -- what I'm trying to do with these

20    instructions, and what I think the law allows me to do,

21    and I've been picking on the Government but I'll

22    eventually end up picking on the Defendants, is to

23    conform these instructions to the evidence.  There's

24    been a wealth of evidence about PAs dispensing.  There's

25    been a wealth of evidence about Dr. Schneider.  There's

1    been no evidence about Mrs. Schneider ever dispensing

2    anything.  Now, she could aid and abet that, obviously;

3    but no direct evidence of it.  And I think it just

4    confuses the issues.  All right.  Anything else with

5    respect to that particular instruction?

6              MS. TREADWAY:  Well, again, Judge, we would

7    believe that our Instruction Number 17 correctly defines

8    distribute under the law.  And in our second sentence,

9    which is backed up by the law cited on that page,

10   including a Supreme Court case, distributing controlled

11   substances includes issuing a prescription.

12             THE COURT:  Fine.

13             MS. TREADWAY:  Under that definition,

14   distribution has occurred in this case.

15             THE COURT:  Fine.  Okay.  Now you can argue

16   that to some other judges.  Gentlemen, anything?

17             MR. WILLIAMSON:  Not on this one, Your Honor.

18             MR. GOROKHOV:  No, Your Honor.

19             THE COURT:  Next is simply the requirements of

20   Section 1306 from the regs.  Any objection?

21             MS. TREADWAY:  No objection.

22             MR. WILLIAMSON:  No objection.

23             MR. GOROKHOV:  No objection.

24             THE COURT:  Next is the instruction that

25   various drugs are controlled substances.  Any objection?

5741

1          MS. TREADWAY:  No objection.

2          MR. WILLIAMSON:  No objection.

3          MR. GOROKHOV:  No objection.

4          THE COURT:  All right.  Now we get into Count

5    2.  And the way I have structured these is that Stephen

6    Schneider is the primary actor and Linda Schneider would

7    be an aider and abettor.  Any objection?

8          MS. TREADWAY:  Yes, Judge.  First of all, in

9    the first element we believe the "and" needs to be

10   changed to "and/or".

11         THE COURT:  What does it say in the

12   Indictment?

13         MS. TREADWAY:  Well, Judge, as is very long

14   established law, you always indict in the conjunctive

15   and you always instruct in the disjunctive.  That is a

16   long established law.

17         THE COURT:  Well, we'll see about that.  You

18   may be right.

19                    (Off-the-record.)

20         THE COURT:  You're correct.  And I'm citing

21   *United States vs. Hagar*, 969 Fed. 2nd 883, Tenth

22   Circuit, 1992.  Now, it can either say, as I read it, it

23   can either say "and" or it can say "and/or".

24         MS. TREADWAY:  We believe it's more legally

25   correct to use "or", Judge.

 1          THE COURT:  Gentlemen, what do you think?

 2          MR. GOROKHOV:  We prefer "and/or".

 3          THE COURT:  All right.

 4          MS. TREADWAY:  The second objection we have to

 5     this instruction, Judge --

 6          THE COURT:  So the record is clear, the next

 7     two instructions will also say "and/or".  Yes.

 8          MS. TREADWAY:  The Government objects to the

 9     limitation of liability as an aider and abettor.  It is

10     a bit confusing if she's also not liable as a

11     conspirator.  She is liable under both theories,

12     conspiracy as well as aiding and abetting.  And you've

13     basically already instructed as to that and as to aiding

14     and abetting but you leave the conspiracy out here.  We

15     believe you have to, if you're going to do it this way,

16     in that final sentence you have to say in order to find

17     Linda Schneider guilty of Count 2 you must find that she

18     conspired or aided and abetted.  Conspired with the

19     Defendant Stephen Schneider or aided and abetted him.

20     That's the law.

21          THE COURT:  What do you say, gentlemen?

22          MR. GOROKHOV:  We believe it's covered in

23     Count 1.  The conspiracy is covered in Count 1.  As to

24     the substantive counts, I think the Court's instruction

25     is -- on the point raised by the Government, I think the

5743

1    Court's instruction is correct.

2              THE COURT:  I agree.  Now, any other

3    objections to -- may as well take up these three all

4    together -- Counts 2, 3 and 4 because they say the same

5    thing except they just substitute the drugs and the name

6    of the deceased.

7              MR. GOROKHOV:  Yes, sir.  We have a couple

8    points, Judge.  First is, I think, a typo, which is

9    where it says in order to find Linda Schneider guilty of

10   Count 2, and the problem is that the instructions as to

11   Count 3 and 4 have the same Count 2 in them.

12             THE COURT:  Well, you're right.

13             MR. GOROKHOV:  And the second point is I think

14   that it's clearer if the Court's definition of aiding

15   and abetting is actually incorporated into this

16   instruction.  So what I would propose would be aided and

17   abetted Stephen Schneider and then a little bit of a

18   description, that is, she consciously shared Stephen

19   Schneider's knowledge as to the treatment of Patricia G

20   and intended to help him with respect to the unlawful

21   distribution of controlled substances to that patient.

22             MS. TREADWAY:  We would object to that, Judge.

23   It's repetitive of the aiding and abetting instruction.

24             THE COURT:  Here's the -- I don't think that

25   would be an incorrect statement of the law; but these

5744

1    are long, long instructions.  And the aiding and

2    abetting instruction is only two or three instructions

3    back.  And I think that you certainly, in closing

4    arguments, you can, if you need to, you can refer back.

5    You can say now, you know, look back at that

6    instruction.  But that unnecessarily -- because that

7    would have to be repeated on Counts 2, 3 and 4 --

8    unnecessarily adds to the length and it doesn't add to

9    the substance.  So those requests are denied.  Anything

10   else?

11           MR. GOROKHOV:  Alternatively, maybe there

12   could be just a brief phrase citing back to the

13   definition of -- the instruction number of aiding and

14   abetting.

15           THE COURT:  Fellas, I really think that we've

16   got a smart jury here and they don't need to be referred

17   back, particularly to the instruction that they just

18   heard and read.  If you start down that road, then you

19   start doing this cross-referencing throughout the

20   instructions.  And if I thought that was necessary, I

21   would do that, and will do it if I really think it's

22   necessary; but here, I don't think it is.  Because I had

23   a very specific definition in the instruction about

24   aiding and abetting.  So if that's it, we'll move on to

25   the next instruction.

1              MR. WILLIAMSON:  Judge, I had a couple.

2              THE COURT:  Sir.

3              MR. WILLIAMSON:  Basically for Dr. Schneider.

4    One, I'm concerned about the way this is organized with

5    the knowingly and intentionally language.

6              THE COURT:  You don't want that in there?

7              MR. WILLIAMSON:  No, I absolutely want it.

8    This is the problem.  It's my understanding under the

9    statute in order for a person to be found guilty, they

10   have to knowingly and willfully distribute for a

11   non-legitimate purpose and outside the course of

12   accepted medical practice, and the additional

13   language --

14             THE COURT:  But that's what element 3 says.

15             MR. WILLIAMSON:  No, it says that his actions

16   were not for legitimate medical purpose.  Which the way

17   it reads it could be read as a strict liability crime.

18   In other words, did you distribute it?  Yes.  Did you

19   know you distributed it and intentionally distribute it?

20   Yes.  And was it outside the course of a legitimate

21   medical practice?  If the answer is yes, regardless if

22   he knew if it was or was not, that is read as he could

23   be found guilty without the intent and knowledge.  I

24   think the way to deal --

25             THE COURT:  How do you propose to change it,

1      Lawrence?

2              MR. WILLIAMSON:  Make the third element the

3      second element and Stephen Schneider acted or did so

4      knowingly and intentionally.

5              MS. TREADWAY:  Judge, that's contrary to

6      settled Tenth Circuit law.  *United States vs. Celio*,

7      which was issued by the Tenth Circuit in 2007 and which

8      you have quoted extensively in prior orders in this

9      case --

10             THE COURT:  Yes, I'm aware of it.

11             MS. TREADWAY:  Quite contrary to what

12     Mr. Williamson says, it says: "There is nothing in the

13     statutory language in 841(a)(1) or CFR 1306.04 or any

14     case law that requires the physician to knowingly act

15     without a legitimate medical purpose or outside the

16     usual course of professional practice.  The knowing

17     mental state applies only to the dispensation

18     distribution of the controlled substance."

19             THE COURT:  She's right.

20             MS. TREADWAY:  And, Judge, we would ask that,

21     as a result of that *Celio* language, that that *Celio*

22     language be added to these instructions.

23             THE COURT:  No, I won't do that and I've

24     already considered that.  And here's why.  And I'll tell

25     you this right now so that we won't have too many

5747

1     arguments about this.  The Tenth Circuit does not like,

2     and I don't like, to write instructions using language

3     from Court of Appeals or Supreme Court decisions.  In

4     *Mitchell vs. Mobile Oil*, 896 Fed. 2nd 463, the Tenth

5     Circuit in Footnote 1 says:  "Trial judges should always

6     avoid verbatim adoption of language from appellate

7     opinions to formulate instructions.  That is which is

8     meaningful to those with a legal education is often lost

9     upon others; therefore, a carefully crafted instruction

10    always is tailored to fit the language -- fit the case

11    in language nonlawyers will comprehend."

12         In *Whyler vs. John Deere* -- which is a case out of

13    this court, not me, thank goodness, but one of Judge

14    Kelly's cases, at 862 Fed. 2nd, 1404, and this is an

15    opinion written by Judge Baldock who, among other

16    things, has had and continues to have district court

17    cases in addition to circuit court cases.  Footnote 5:

18    "Our countenance of Instruction 18 in this instance is

19    not an endorsement of the use of appellate court dicta

20    as jury instructions.  The district court should

21    cautiously and sparingly charge the jury with such

22    language.  As the Fifth Circuit aptly noted, what an

23    appellate judge says for the court does not mean that

24    such language may or should be used as a jury charge.

25    It all depends on whether the words presumably chosen by

5748

1    one artificer appellate judge -- " I hadn't seen that

2    word before -- "or others of presumed like skill, the

3    trial judge, communicate the applicable legal principles

4    to those jurors pending, as it were, their once in a

5    lifetime law school for the day."  Citing a Fifth

6    Circuit case.

7         And, finally, although I'm not patting myself on

8    the back, I think you all know that I'm one of the

9    people who has had the honor of writing the Tenth

10   Circuit instructions.  So, no, I won't give that

11   language out of the *Celio* case.  And the Defendants are

12   going to find out in due course that I'm not going to

13   give some of their instructions for the same reason.

14   Anything else on these three instructions?

15             MR. WILLIAMSON:  No, Judge.  I would just for

16   the record cite the *Staples* case and *Excitement Video* --

17             THE COURT:  Okay.  Now let's turn to Count 5.

18   The obvious purpose in Count 5 is a sentencing factor

19   really but the jury isn't going to be told that.  Any

20   objection to Count 5?

21             MS. TREADWAY:  No, Judge.  This is -- Count 5

22   is another count of illegal drug distribution and I

23   think what you're talking about is -- I think what needs

24   to be done here and what needs to be reflected in the

25   verdict form -- which we completely screwed up, I'm

5749

1    sorry to say.  In Count 5 there are 18 individuals

2    named.  The jury needs only to find unanimously that the

3    Defendants distributed or dispensed drugs illegally to

4    one.  That's it.  And that comes from not only the way

5    it's charged, but the way the Tenth Circuit ruled in the

6    appellate case.  So I think that the first sentence

7    should read "to find Stephen Schneider guilty of the

8    crime charged in Count 5 --" then eliminate or any of

9    them.  And the next sentences are fine.  First, we would

10   change the and to and/or.  Then before you have the last

11   sentence, vis-a-vis Linda Schneider, you need to have an

12   unanimity instruction of some kind to alert the jury

13   that they need to unanimously find that as to one

14   person, of the 18, illegal distribution has occurred.

15   That's all they need to find to find the Defendant

16   guilty.  Unanimous as to one.

17        THE COURT:  Is this the part -- I don't have

18   that opinion in front of me.  Is this the part where

19   they said they couldn't understand why you charged it

20   that way?

21        MS. TREADWAY:  But that I had the right to

22   charge it that way, yes, Judge.  Actually, Judge, what

23   we did was we tried to be circumspect in the way we

24   charged it.  Rather than creating 18 additional

25   individual counts, we wanted to show the pattern of

5750

1    conduct without creating an additional sentencing burden

2    on the Defendant.  So instead of charging 18 counts

3    separately, we charged 18 in one count as a part of the

4    scheme.  And the Court recognized that we could do that.

5    But the issue is -- it's just like in a fraud case where

6    you have -- typical fraud case where you have four

7    different fraudulent contracts, for instance, in a

8    single scam.  The jury only has to find one contract

9    fraudulent to hold the defendant liable.  That's what

10   the Tenth Circuit ruled and that's the law.  But we just

11   need a unanimity instruction, Judge.

12        THE COURT:  What does the Defendant say?

13        MR. GOROKHOV:  Your Honor, we agree that it

14   needs to be a unanimity instruction but the Government's

15   proposed instruction doesn't go far enough.  There has

16   to be unanimity as to the individual to whom the

17   distribution was done to.

18        MS. TREADWAY:  We agree.

19        MR. GOROKHOV:  Okay.

20        MS. TREADWAY:  We agree.

21        MR. GOROKHOV:  As long as the jury can agree

22   it was done to individual A and not done to individual

23   B, then that helps to avoid -- we believe the count is

24   duplicitous as we've stated, but it helps to -- it may

25   help to deal with the duplicity.

5751

1        THE COURT:  Well, do you all understand --

2   because I understand now what she's saying.  I don't

3   guess I ever understood why she charged it that way, but

4   that -- and I wrote it this way, but, inartfully, to say

5   that to find him guilty of the crime, and should be

6   charged in Count 5, you must be convinced beyond a

7   reasonable doubt that he prescribed controlled

8   substances to one or more.  Now, I can say at least one,

9   but I don't think that's stuff that really makes a lot

10  of difference to a jury.  And that's what I intended,

11  but -- and I know what you're saying about unanimity but

12  I was sort of thinking that the verdict form took care

13  of that.

14        MS. TREADWAY:  It really doesn't, Judge, not

15  the way it's done so far.  And I apologize.  You took my

16  verdict form and I screwed it up.  I have a proposed

17  verdict forms that will change it if it will help.

18        THE COURT:  I've got it.

19        MS. TREADWAY:  If it will help eliminate this

20  issue.  I changed the language as for Counts 5 and 6 so

21  that it makes it clear how the jury can work through the

22  verdict form in a logical manner.  And, again, I

23  apologize, Judge.  This is my error.

24        THE COURT:  Have you all seen this?

25        MR. WILLIAMSON:  Just now, Your Honor.

5752

1          MS. TREADWAY:  I just gave it to them.

2                    (Off-the-record.)

3          THE COURT:  Well, the way I read this, this

4     applies only to Stephen Schneider.  Doesn't say anything

5     about Linda Schneider.

6          MS. TREADWAY:  Well, this would be the verdict

7     form as to both Defendants, Judge.

8          THE COURT:  But it doesn't say anything about

9     unanimity.

10          MS. TREADWAY:  Well, no, this is the verdict

11     form.  I'm just suggesting that the verdict form will

12     deal with this unanimity issue.  If you don't want to

13     instruct on unanimity, I believe the verdict form as

14     amended in the example I just gave to everyone would

15     solve the problem and make it very clear as to what

16     needs to be done as to Counts 5 and 6.

17          MR. GOROKHOV:  The only -- well, there's one

18     problem I can see from the verdict form which is that it

19     has the distribute language.

20          THE COURT:  And I know that but --

21          MR. WILLIAMSON:  Judge, I guess first, I know

22     this may not necessarily be supported by circuit cases,

23     but if the Government decides to charge a count in Count

24     5, they have to prove each and every element of that

25     count.  And because they decide to put multiple people

5753

1    in here, logically they should have to prove each and

2    every charge in that count.

3              MS. TREADWAY:  That's just not the law, Judge.

4              MR. WILLIAMSON:  Well, we're making records

5    here and --

6              THE COURT:  Well, if you can find me a case

7    that says that, I'll -- you know I'll read it.  And I

8    think that also applies to Count 6.  But -- and I'm not

9    going to beat on her and I don't understand why she

10   charged it this way except that it means that there are

11   a lot fewer counts, but --

12             MS. TREADWAY:  And it means there's a lot less

13   possible sentencing impact on the Defendants, Judge.

14             THE COURT:  Well, I'm sure they're very

15   grateful to you for that.  Eugene, what language do you

16   want?

17             MR. GOROKHOV:  Something to the effect of that

18   dispensed to the specific -- to one or more of the

19   specific individuals named in Count 5.  And then I would

20   add something like to be clear, you must be unanimous as

21   to -- to find the Defendant guilty you must be --

22             THE COURT:  Would you do me a favor?

23             MR. GOROKHOV:  Yes.

24             THE COURT:  Would you write it out and propose

25   it.  We've got plenty of time on these instructions and

5754

1    rather than take the time to go through that right now,

2    because I think there may some other changes that you'll

3    want to propose, then I can sit and read them and she

4    can look at them and we don't have to go back and forth

5    without knowing what the language is.

6           MR. GOROKHOV:  Okay.

7           THE COURT:  Anything else on this instruction?

8    I believe she's right unless, Lawrence, you can come up

9    with a case that says different, that it's guilty of the

10   crime charged in Count 5, you must be convinced, et

11   cetera, and that she's correct about having and/or.  And

12   I note your objection that we ought to reverse the third

13   and second elements.  But I think she's correct about

14   that.  And then when Eugene gets some language,

15   unanimity language, I'll take a look at that.  Okay.

16          MR. WILLIAMSON:  Yes, sir.

17          THE COURT:  Now, next one is Counts 2 through

18   4 charge the illegal dispensing of specifically

19   identified, et cetera.  Any objection?

20          MS. TREADWAY:  Judge, clarification, I

21   believe, first.  I don't think you meant to do this but

22   it seems like you're limiting liability to Stephen

23   Schneider whereas the liability applies to both Stephen

24   and Linda Schneider.  The sentencing enhancement which

25   this instruction relates to, applies to both Defendants.

5755

1          Second, in the second paragraph if you find the

2     Defendants guilty of illegally dispensing controlled

3     substances as charged in, I would say Counts 2, 3, or 4,

4     you will then have to unanimously determine.  Leaving

5     out "or any of them".  I think the last --

6          THE COURT:  I think that's okay.  It really

7     benefits Defendants I think.

8          MS. TREADWAY:  Yes, it does.  And in the last

9     sentence, bodily injury or death as to each of the three

10     named individuals, period.  But we believe that that

11     instruction applies to both Defendants, not Defendant --

12          THE COURT:  Would you say that again please.

13          MS. TREADWAY:  Yes, sir.  The last two phrases

14     of the second paragraph, starting with bodily injury or

15     death, as to each of the three named individuals,

16     period.  In other words, they have to determine that as

17     to each.  And that's made clear on the verdict form.

18     Again, that's one of those special interrogatory type

19     verdict forms.  But our main objection, Judge, is that

20     it needs to apply to both Defendants.

21          THE COURT:  Eugene?

22          MR. GOROKHOV:  I don't see any objection to

23     that, Your Honor.

24          THE COURT:  Well, do you object if I change it

25     to Counts 2, 3 or 4?

 1          MR. GOROKHOV:  No.  No objection.

 2          THE COURT:  And take out or any of them?

 3          MR. GOROKHOV:  I think the or any of them

 4   should remain.  I don't see how that's -- I think it's

 5   more helpful rther than confusing.

 6          MS. TREADWAY:  I think it's redundant, Judge.

 7          THE COURT:  I'll leave it in.  I like it.  I

 8   wrote it.  I like it.  All right.  And the other one is

 9   the suggestion that I take out one or more and change

10   that to each.  Any objection to that?

11          MR. WILLIAMSON:  No objection.

12          MR. GOROKHOV:  No objection.

13          THE COURT:  And she's correct, I have to put

14   something down there at the bottom to the effect that

15   Linda can be liable as an aider and abettor.

16          MS. TREADWAY:  Well, actually, Judge, since

17   this is a sentencing enhancement, this is not an aiding

18   and abetting issue.  This is really, if you find the

19   Defendants guilty, then you need to look at this.  So

20   the guilt of the party has already been established.  So

21   this is a sentencing enhancement.  So I believe you have

22   to say if you find Defendants guilty.  And then

23   controlled substance illegally dispensed by the

24   Defendants.  Because they would have already determined

25   guilt to make this instruction applicable.  Does that

1   make sense?

2           THE COURT:  No.

3           MR. GOROKHOV:  I disagree, Judge.  I mean,

4   you've already said that Linda's exposure is as an aider

5   and abettor.  I think that's consistent for the jury.  I

6   think the jury, obviously, has nothing to do with

7   sentencing other than finding the facts.  And depending

8   on what the verdict is, the Court will know what to do

9   with that.

10           THE COURT:  Well, but won't the verdict form

11   also take care of that?

12           MR. GOROKHOV:  Just in terms of the language,

13   Your Honor.  I just think that aiding and abetting is

14   consistent for the jury.

15           MS. TREADWAY:  But again, Judge, this is not a

16   guilt instruction.  This is a finding of fact that

17   enhances the Defendants' sentence after the jury has

18   already found the Defendant guilty of Count 5.  To talk

19   about aiding and abetting in that context is legally

20   incorrect.

21           THE COURT:  Well, I think I understand what

22   you're saying; but that is not something that the jury's

23   going to understand or even be told about.

24           MS. TREADWAY:  Well, that's correct, Judge,

25   and that's why it just needs to read if you find

5758

1    defendants guilty.  And that's going to then dovetail

2    with how the verdict form will read.  Because if they

3    don't find them guilty, they don't have to answer the

4    special interrogatories about this.

5              THE COURT:  I wonder if I could do that by

6    saying:  If you find Stephen Schneider guilty of

7    illegally dispensing controlled substances, or Linda

8    Schneider guilty of aiding and abetting.

9              MR. GOROKHOV:  That should work, Judge.

10              THE COURT:  I think that should work.

11              MS. TREADWAY:  You'll have to do it in both

12    Paragraph 2 and Paragraph 3 I guess.

13              THE COURT:  Let me do this.  Let me think

14    about this and Rachael and I will talk about it.  We

15    understand where you're coming from.  Okay.

16              MS. TREADWAY:  Our instruction, Judge, with

17    regards to that is Instruction Number 22.

18              THE COURT:  Next:  The term serious bodily

19    injury, et cetera.

20              MS. TREADWAY:  Judge, unfortunately, the

21    definition for serious bodily injury is different for

22    the 841 Counts than it is for the 1347 counts.

23              THE COURT:  Well, I noticed that.

24              MS. TREADWAY:  So we would just ask that you

25    say in Counts 2 through 5, the term serious bodily

5759

1    injury -- I believe our Instruction Number 23 is where

2    you took this from in part and I believe we stated that

3    for purposes of Counts 2 through 5, comma, and we would

4    ask that that be added to clarify that that definition

5    relates to those counts.

6           THE COURT:  I can't remember the -- what's

7    your Number 23?  Let me look at it here.

8           MS. TREADWAY:  Yes, sir, Judge.  23.

9           THE COURT:  Rachael and I talked about this

10   but --

11          MS. TREADWAY:  Because the definition of

12   serious bodily injure is Count 21 U.S.C. Section 802.25

13   and it is different than the 1347 definition.

14              (Off-the-record.)

15          THE COURT:  Here it is.  And then what's your

16   number that talked about the 1347?  I know it's just --

17   I just can't find it.

18          MS. TREADWAY:  I'll find that for you, Judge,

19   I'm sorry.

20     It's 31.  And that definition, again, is just a

21   little different.  The second paragraph of proposed 31,

22   Judge.

23          THE COURT:  Well, it is different.  I remember

24   when she and I talked about it, I didn't remember any

25   evidence in the case of protracted and obvious

1    disfigurement.  Did anybody get disfigured in this case?

2         MS. TREADWAY:  No, Judge.  We don't have a

3    problem with you curtailing it just to one and two for

4    Counts 2 through 5 and you've defined it.  We don't have

5    a problem with that. we're just suggesting that

6    definition needs to be limited to Counts 2 through 5.

7         THE COURT:  And then for 1347 it would be

8    substantial risk of death, extreme physical pain and

9    protracted, et cetera.

10        MS. TREADWAY:  Right.

11        THE COURT:  Do you agree with that, gentlemen,

12   from a statutory point of view?

13        MR. GOROKHOV:  We agree that they're defined

14   differently and on that basis we would have no

15   objection.

16        THE COURT:  Okay.  I'll make those changes.

17   That will probably require -- I don't know if that

18   requires an additional instruction under 1347 or not.

19   Let's look.

20        MR. WILLIAMSON:  Judge, when you're ready, I

21   do have an objection and I think now is the time to

22   lodge it.

23        THE COURT:  I'm sorry, Lawrence.  What?

24        MR. WILLIAMSON:  I do have an objection in

25   regards to this instruction but not on the basis that

5761

 1    Ms. Treadway just mentioned.

 2             THE COURT:  Go ahead and state your objection

 3    as to this one because this one is in the 841 packet, so

 4    to speak.

 5             MR. WILLIAMSON:  The problem we have, and I'm

 6    just assuming this is the place to address it, is

 7    there's no causation instruction.  And causation is an

 8    important issue in this case.  There is a recent Fourth

 9    Circuit case that came out where counsel was considered

10    inadequate because they failed to explore alternate

11    causation issues.

12             THE COURT:  Which one is that?

13             MR. WILLIAMSON:  I'm sorry -- not Fourth

14    Circuit.  It was district court on a 2255.  U.S. vs.

15    Mciver, M-C-I-V-E-R.

16             THE COURT:  I think you cited that in your

17    proposed instructions, but --

18             MR. WILLIAMSON:  That was the appellate case.

19    There was a subsequent 2255 hearing after that where

20    some of the issues that were addressed in this case,

21    i.e., individuals with serious heart conditions, where

22    defense counsel failed to follow up and discuss the

23    alternate causation possibilities.

24             THE COURT:  Well, you're not going to make

25    that mistake.

1          MR. WILLIAMSON:  No, we sure didn't, Judge,

2     but we have to give the jury some kind of guideline as

3     to what is legally sufficient to be causation.

4          MS. TREADWAY:  Judge, we agree.  And I think

5     that our Instruction Number 22 follows the law and cites

6     extensively to the law.  Our Instruction Number 22, the

7     third, fourth and fifth paragraphs, state the law as we

8     cited from all over the country.  And we agree that that

9     causation instruction needs to be made.  It's a limited

10    causation instruction because the concept of proximate

11    cause does not apply as the case law makes very clear.

12    Nevertheless, we believe that the resulting language

13    needs to be explained to the jury and we would ask that

14    those paragraphs from our instruction be adopted as

15    written.

16         THE COURT:  That's not what Judge Posner says.

17         MR. WILLIAMSON:  And we would agree with Judge

18    Posner actually.

19         THE COURT:  He says in the Heartfield case, or

20    whatever the name of that case is that resulted in is

21    enough and that when you start trying to go down the

22    road of defining causation that you don't get anywhere.

23    Now, I thought, Lawrence, that resulted in was enough

24    causation.  He says -- and, you know, whatever you might

25    think of that guy otherwise, he's a real smart judge,

5763

1    and he knows how to put things in opinions succinctly.

2    And I read that thing two or three times and he says you

3    start talking about proximate cause or some of those

4    other causation terminology that the jury doesn't

5    understand and he says -- and I think he's right --

6    stick with the statute.  And that's what the statute

7    says.

8            MR. WILLIAMSON:  One second to confer, Your

9    Honor.

10           THE COURT:  Yeah.

11           MR. WILLIAMSON:  Judge, again, I generally

12   would agree with Judge Posner, and if I'm remembering

13   the opinion right, because I read it a couple days after

14   it came out, the point is the Government still has to

15   prove beyond a reasonable doubt that it resulted in.

16   And I don't believe that is addressed in these -- in

17   these two instructions that we're looking at.

18           MS. TREADWAY:  Actually, it's just stated in

19   the second paragraph.

20           THE COURT:  Well, I've used beyond a

21   reasonable doubt about a thousand times in this thing.

22           MS. TREADWAY:  Yeah, it says in that second

23   paragraph if you find Stephen Schneider guilty, blah,

24   blah, blah, beyond a reasonable doubt, blah, blah,

25   resulted in serious bodily injury or death.  If the

5764

1   Defendants don't want that causation language, Judge,

2   we'll withdraw our suggestion.

3            THE COURT:  You know, it's been a problem all

4   the way through for all of us as lawyers to know what

5   causation is.  What was the -- you've been out of law

6   school less than any of the rest of us, Eugene, what's

7   that famous case, the Buick case?  Is that the one that

8   talked about proximate cause.

9            MR. GOROKHOV:  I think you're talking about

10  the case, I think it was the Cargozo case where the

11  scale fell on the woman at the train station.

12           THE COURT:  Yeah.  What's the name of that?

13           MR. GOROKHOV:  I forgot it.

14           THE COURT:  Well, anyway, I would like -- if

15  we had the time today, I'd be happy to have each of you

16  tell me what -- give me a ten word or less definition of

17  proximate cause.  I think cause is cause.  And result in

18  is the language that's used in the statute.  If the

19  language -- if the statute used the word cause, then I'd

20  use that.

21           MS. TREADWAY:  It's the Gallsgraph case,

22  according to Mr. Wamble.

23           THE COURT:  That's right.

24           MS. TREADWAY:  That's Mr. Wamble's call, Your

25  Honor.

```
 1              THE COURT:  Thank you, Mr. Wamble.

 2              MR. WAMBLE:  You're welcome, Your Honor.

 3              THE COURT:  You know, if the evidence, if the

 4  case is about a car that runs through a red light and

 5  hits somebody else, you argue that the defendant ran

 6  through the red light and that resulted in the

 7  collision.  Does the jury -- would the jury understand

 8  it better if you said that it proximally caused the

 9  collision?  I don't know.  I'm just trying to do

10  something that the jury will understand here.  What do

11  you think?

12              MR. WILLIAMSON:  Judge, I think we can just

13  keep moving and we'll look at the Government's

14  instruction and we'll look at it one more time and we'll

15  just make a written submission ASAP.

16              THE COURT:  Yeah.  And we've got plenty of

17  time and I've got that case right in there on my desk,

18  that Posner case, if you want to look at it.

19              MR. WILLIAMSON:  Sure.  I'd love to.

20              THE COURT:  Well, Rachael will give you each a

21  copy.

22              MR. WILLIAMSON:  Yes, sir.

23              THE COURT:  Okay.  Where are we?  Count 6,

24  aren't we?

25              MS. TREADWAY:  Yes.
```

5766

```
 1              THE COURT:  We're going to change that to
 2     and/or.
 3              MS. TREADWAY:  Other than that, Judge, other
 4     than the prior objections, we have no additional
 5     objection.
 6              THE COURT:  Okay.
 7              MR. WILLIAMSON:  Same prior objection in
 8     regards to the organization.
 9              THE COURT:  Okay.  The next instruction is the
10     good faith instruction.  And I've tailored this
11     specifically to a physician.  Any objection?  We're
12     going to give another good faith instruction later that
13     encompasses the other charges, but I thought we ought to
14     give one specifically as to Dr. Schneider.  Any
15     objection?
16              MS. TREADWAY:  No, Judge.
17              MR. WILLIAMSON:  Yes, Judge.  We have an
18     objection.  The part of the instruction that says by
19     this exercise of quote unquote "good professional
20     judgment", I understand, I believe, what the Court is
21     attempting to do is to add an objective requirement to
22     this good faith instruction; but we believe that our
23     proposed instruction --
24              THE COURT:  Which one, Lawrence?
25              MR. WILLIAMSON:  I don't think it's -- we
```

5767

1    didn't number ours.  It's called good faith as a

2    complete defense to unlawful distribution.

3              THE COURT:  I've got it.

4              MR. WILLIAMSON:  I'm sorry.  It's number 4.

5              THE COURT:  Number 4.

6              MR. WILLIAMSON:  Yes, sir.  And if you look in

7    there, we use the words what he reasonably believed to

8    be proper medical care.  When you're talking about a

9    good faith instruction, you are specifically considering

10   the actor's state of mind with reasonable -- with the

11   reasonableness attached to it in regards to taking it

12   from subjective to objective.  And when you have these

13   accepted standards of medical practice.  That gets back

14   into the *Gonzalez* issue and takes this case away from

15   being a drug dealing case and back to a medical

16   malpractice case.

17             THE COURT:  Well, but the problem is that the

18   language that you propose in number 4, which I guess was

19   from the Mciver case, that's where I remember seeing

20   that citation, is specifically rejected in the Herwitz

21   case.

22             MS. TREADWAY:  Judge, and that resulted in a

23   reversal.

24             MR. WILLIAMSON:  No, that didn't result from

25   in a reversal.  In Horwitz?  Horwitz reversed because

5768

1    they gave no good faith instruction.

2            MS. TREADWAY:  As to the 841 Count.  And good

3    faith in this context, Judge, has to be objective

4    because it's governing the physician as against the

5    standard of care.  It must be objective and the case law

6    so holds.

7            MR. WILLIAMSON:  This was not -- what was

8    rejected in Horowitz was the complete subjective good

9    faith proposal that that --

10           THE COURT:  I know.  I remember the language.

11           MR. WILLIAMSON:  We're not making a completely

12   subjective.  You're looking at objective but you're not

13   saying, quote unquote, accepted standards of medical

14   practice.  You're saying what he reasonably believed to

15   be proper medical care.  Those are two distinct

16   different questions.  And that specifically is what

17   guides these -- this statute as applied to physicians as

18   opposed to the civil medical malpractice cases.  I think

19   that's a huge distinction with a difference and we also

20   cited the -- just the standard modern pattern jury

21   instructions as well.

22           THE COURT:  Well, wait a second.  I don't

23   think that that instruction you propose is exactly the

24   language of 5602.

25           MR. WILLIAMSON:  No, what we tried to do, Your

1    Honor, was combine -- because I can understand the

2    Court's not utilizing a completely subjective standard.

3    It means this would be no standard.  But when you're

4    talking about a person's state of mind and their good

5    faith, the reasonableness, which is the language that we

6    used, what he reasonably believed to be proper medical

7    care, is a difference -- is hugely different than an

8    honest effort to treat patients in compliance with

9    generally recognized and accepted standards of medical

10   practice.  So, for instance let's just take, let's take

11   polio for an instance.  And let's say polio was a recent

12   disease that was discovered.  And let's say there is

13   this new medicine that can be utilized for polio.  And

14   let's say this has not been generally accepted yet in

15   the medical community but you have doctors who are

16   utilizing it to see if it can be accepted.  And when you

17   have that type of situation, if that medicine for that

18   polio would happen to be a controlled substance, no

19   defendant would ever be able to utilize the good faith

20   instruction as proposed.  However, if you look at the

21   good faith instruction, what we apply, or that we

22   suggested, it is covered in that situation.  Doctors

23   have to be allowed to not be negligent and not be

24   extremely negligent, but they have to be able to use

25   their good faith and say, hey, you know, what this

1      medicine may work for this, let me try this, and even

2      though it has not gained general acceptance, doesn't

3      turn it into a criminal act.  And that's why the

4      instruction as proposed we believe is really -- it's

5      dangerous in curtailing medical advancement just to be

6      perfectly honest.

7                 MS. TREADWAY:  Well, Judge, this is the law.

8      You have correctly stated the law as to good faith.

9      It's an objective standard for a physician and we state

10     that you are correct in your instruction and it should

11     stay as is.

12                THE COURT:  I don't see how this

13     instruction -- the jury isn't going to single out

14     instructions.  I don't see how this instruction could

15     say to the jury that Dr. Schneider is -- I'm not even

16     sure what you would want me to say.  Clearly, I won't

17     say what you say in requested number 4 that he -- that

18     this would negate an argument or a finding by the jury

19     that Dr. Schneider, as he I think testified and maybe

20     others testified, was allowed to go off-label if he felt

21     in good faith, honest exercise of good professional

22     judgment, that that was in the best interest of a

23     patient.

24                MR. WILLIAMSON:  If it ended there, I would

25     definitely agree.  I think that covers it.  But what

1    gets into the dicey area is with generally recognized

2    and accepted standards of medical practice.  So let's --

3    the government didn't put any evidence of this in but

4    let's assume that the question that was asked of Dr.

5    Schneider is true.  Let's assume there is medical

6    literature on the lefthand side that says using Actiq

7    for breakthrough pain is effective like we actually

8    introduced, and let's say the Government's argument,

9    well, there's literature on the righthand side that

10   Actiq is not good for breakthrough pain even though they

11   did introduce such articles.  Let's assume that exists.

12   Now, you're dealing with an area with new medication

13   with research and literature on both sides of the fence.

14   Under that situation, there cannot be a generally

15   recognized and accepted standard of medical practice.

16   There would be a -- he could definitely have a good

17   faith belief that, hey, I think this works, these

18   articles say it, my patients tell me, we believe this

19   works.  But you can't meet that standard with any kind

20   of medical treatment that has not already been put

21   through the ringer and reaches that generally recognized

22   and accepted standards of medical practice.

23            MS. TREADWAY:  Judge, the only thing that

24   could be dicey is if you were to instruct as the

25   Defendants want you to, which is far beyond what the law

1    is.  This is an objective standard.  It's correctly

2    stated.

3            THE COURT:  I still don't understand how this

4    instruction would essentially serve as a verdict

5    director that the jury could not consider the evidence

6    that has been admitted, that Dr. Schneider would be

7    entitled to consider, in this case I think you're

8    talking about Actiq, obviously, that Actiq could be used

9    to treat migraines as opposed to breakthrough cancer

10   pain.  I don't see how this is a verdict director that

11   would say to the jury you cannot consider that evidence.

12           MR. WILLIAMSON:  Well, because, if using Actiq

13   for breakthrough pain was not quote, unquote, "generally

14   recognized" -- that's the key, generally recognized.

15   You're not -- this is incorporating the medical

16   malpractice standards back into the criminal statute.

17   Generally recognized means that this is pretty much it

18   without exception.  I mean, that, to me, is what

19   generally recognized means.  That's not defined in these

20   jury instructions but you have 11 people --

21           THE COURT:  I don't mean to interrupt you,

22   Lawrence --

23           MR. WILLIAMSON:  No problem, Your Honor.

24           THE COURT:  -- but I thought I heard evidence

25   from, maybe it was from your cross-examination -- it's

5773

1    been a long time here -- that just because -- and I'm

2    sure I did hear that evidence, that just because it's

3    not in the package insert, that that's not wrong, that

4    the doctor can exercise his or her best judgment to try

5    the Actiq as Dr. Schneider did on people who have

6    migraine headaches.  I don't remember.

7              MS. TREADWAY:  That's right.

8              THE COURT:  I don't remember any testimony by

9    any of the Government's doctors that said that, to use

10   the terminology, generally recognized, that that wasn't

11   generally recognized.  I thought the evidence was that

12   it isn't -- it doesn't say so in the package insert but

13   doctors can -- I don't want to use the term experiment,

14   but if it's in the best interests of their client,

15   patient --

16             MS. TREADWAY:  That's right, Judge.  That was

17   the evidence.  We had that on direct evidence which was

18   it's not the off-label prescription that was a problem.

19   It's the illegal distribution which is the problem.

20             THE COURT:  Well, I'll show your objection but

21   I think since the language that you've proposed has been

22   specifically criticized, I'm not going to give that.

23   And I think this does correctly state the law, but I'll

24   show your objection.

25       Next instruction is simply the statutory

5774

1    definitions of Section 1347.

2              MS. TREADWAY:  No objection.

3              MR. GOROKHOV:  No objection.

4              MR. WILLIAMSON:  No objection.

5              THE COURT:  Next are the elements of health

6    care fraud.

7              MS. TREADWAY:  Judge, I think that -- and I

8    may have to go back on my word there on 1347.  I believe

9    the statute requires that a person devise and execute.

10   There are two parts to it.  Have to devise a scheme and

11   then execute a scheme.  And I think we've left out that

12   element.  Our Instruction Number 25 actually separates

13   those out.

14             THE COURT:  Well, whatever the statutory

15   language is, I will use it.

16             MS. TREADWAY:  And I think we took that from

17   the Eight Circuit and we've used this instruction,

18   Instruction Number 25, in many health care fraud cases

19   in this district.

20             THE COURT:  Yes, it does.  It says whoever

21   knowingly and willfully executes or attempts to execute

22   a scheme or artifice to defraud any health care benefit

23   program, or, and I took that out, in connection with --

24   I took out 2 because that doesn't apply.  In connection

25   with the delivery of or payment of, or health care

5775

 1   benefits, items or services shall be guilty.

 2            MS. TREADWAY:  Yeah.  I stand corrected,

 3   Judge.  I was thinking back as to the bank fraud

 4   statute.  You're right.

 5            THE COURT:  Well, fortunately, they're not

 6   charged with bank fraud.

 7            MS. TREADWAY:  So we withdraw our objection.

 8            THE COURT:  Okay.  Now, next one --

 9            MR. GOROKHOV:  We have some objections, Judge,

10   and I think I'd like to make some general points that I

11   think if I make them now it will save time for the

12   substantive instruction.

13            THE COURT:  Go ahead.

14            MR. GOROKHOV:  Basically the issue we're

15   cornered with as a whole is that there's been a lot of

16   evidence about contracts, contracts and agreements and

17   such things that people enter into when they deal with

18   health care benefit programs.  Our concern is that the

19   jury is going to believe -- the jury doesn't -- they're

20   not attorneys, they don't know the difference between

21   contract law and civil law, et cetera.  Our concern is

22   that they're going to substitute those contracts for

23   actual proof of acts or mense rea, and so we believe

24   it's necessary to make it really clear for the jury to

25   understand that there has to be proof beyond a

5776

1    reasonable doubt of all the elements, the act elements

2    and the mense rea elements.

3              THE COURT:  Don't I say that?

4              MS. TREADWAY:  Yes, you do, Judge.

5              MR. GOROKHOV:  From my reading of it, it

6    didn't come across as very clear.

7              THE COURT:  Well, this comes straight out

8    of -- what case is that, it's out of your case, it's out

9    of the Franklin-El case.

10             MS. TREADWAY:  It is, Judge.

11             THE COURT:  That is a direct quote from a

12   Tenth Circuit quote on the elements.  Good old

13   Franklin-El.

14             MS. TREADWAY:  That is argument that they

15   could make, Judge, but it's not an instruction.

16             THE COURT:  Do you need to look at

17   Franklin-El?

18             MR. GOROKHOV:  I actually have it, Judge.  I

19   just think the unique circumstances of this case and I

20   think this is more appropriate for the subsequent

21   instructions rather than just the elements and I do have

22   some points on just the elements.

23             THE COURT:  Do you have a problem with the

24   elements here as written as a correct statement of the

25   law?

5777

1          MR. GOROKHOV:  Yes, sir, I have -- there's a

2     few issues.  One is that I think it combines some of the

3     elements.  For example, the element of scheme or

4     artifice to defraud.  There's a separate element of

5     materiality and that's addressed in the Supreme Court

6     case.  Then there's the mense rea elements are separate

7     elements as well.  And if you look at your instruction,

8     they're put together in the first paragraph that starts

9     with, first, the mense rea elements are combined with

10    the scheme or artifice to defraud.  And there's no

11    mention of materiality.  And then the interstate

12    commerce, there's no objection on that one.  And there's

13    no objection on the specific intent issue.  But I think

14    it would be more helpful to the jury and a more correct

15    statement of the law to break up the scheme or artifice,

16    the materiality, and the mense rea elements.

17          THE COURT:  But Eugene, you might be right if

18    it wasn't for the fact that there's a recent Tenth

19    Circuit case that says that these are the elements.

20          MS. TREADWAY:  And you deal with materiality

21    in the very next instruction, Your Honor.

22          THE COURT:  Well, but just a minute.  You

23    know, I'm at the bottom of the food chain.  I'm right

24    above little Jimmy Anderson who cleans up the

25    courthouse.  Okay.  I have to do what they say.  And

5778

1    there aren't any form Tenth Circuit instructions on

2    1347.  But we do have Franklin-El.  And I'm obliged to

3    follow that and not get too far -- not get away from the

4    elements that they say.  And I do always appreciate when

5    the Tenth Circuit puts elements in cases and I think we

6    all do.  But in the next instruction, all of those

7    things are in there.  It says material, materiality,

8    that's defined.  Everything that you are arguing is

9    contained in this next instruction.  I suppose I could

10   make a separate instruction for all of those but that

11   wouldn't seem sensible.  Do you see what I'm saying?

12           MR. GOROKHOV:  Yeah, I understand your grounds

13   to some degree about the case law.  I know you're trying

14   to do your best to make sure that the jury is not

15   confused by the eight weeks of evidence that we've sat

16   through.

17           THE COURT:  Right.  And to make it easy as

18   possible for you all, balancing the interests here.  I

19   believe and what I'm going to do to move this along is

20   with respect to the elements, the Circuit says these are

21   the elements and those are the elements I'm going to

22   give.

23       Turning to the next instruction, do you have any

24   objection to the definitions that are given in the next

25   instruction?

 1           MS. TREADWAY:  We do not, Judge.

 2           MR. GOROKHOV:  We have a few objections,

 3    Judge.  As to the -- it's the fourth paragraph down,

 4    include any plan, pattern or cause of action intended to

 5    deceive others.  I mean, I think it's already been

 6    covered.  I don't know if that comes from case law or

 7    where that comes from, but I don't think that's

 8    necessary.  I also don't believe it's exactly right.

 9    And then the subsequent paragraph, scheme to defraud may

10    exist even though no actual misrepresentations are made,

11    I don't know that that is supported.  I don't know where

12    it comes from but I don't believe it's supported.

13           THE COURT:  Probably comes from 1341 or 1343.

14           MS. TREADWAY:  It also comes from the case law

15    cited in the Government's instructions 28 through 30,

16    Judge.

17           MR. WILLIAMSON:  Judge, in reference to that

18    second paragraph, is the purpose of that paragraph to

19    instruct the jury that it can be an express

20    misrepresentation or a concealment of a material fact?

21    If so I think these two sentences probably need to be

22    combined to make that clear.

23           MS. TREADWAY:  You mean the fourth paragraph

24    or --

25           MR. WILLIAMSON:  The five, scheme to defraud

1   may exist.

2          MS. TREADWAY:  That's case law, Judge.  This

3   is almost a stock instruction any more.

4          THE COURT:  Gosh, I don't see how that is an

5   inaccurate statement of the law.

6          MS. TREADWAY:  It isn't.

7          THE COURT:  Well, it is in the sentence cause

8   of action -- I'm not sure what that is.  The term cause

9   of action implies something that clearly is not involved

10  in this case.  I think that what that says is -- meant

11  to say is course of action.  I didn't catch that.  But

12  other than that, I just think that's a correct statement

13  of the law.  Here again, to move things along, we've got

14  plenty of time, if you want to file something very

15  short, doesn't have to be anything elaborate, that says

16  that these definitions here are not accurate, I'll be

17  more than happy to look at it; but I think they are

18  accurate.

19         THE COURT:  All right.  Next one:  It is not

20  necessary for the Government to prove beyond a

21  reasonable doubt that a health care --

22         MS. TREADWAY:  Suffered a loss.

23         THE COURT:  Et cetera, et cetera.  Any

24  objection?

25         MS. TREADWAY:  No, Judge.

5781

 1            THE COURT:  Eugene, any objection?

 2            MR. GOROKHOV:  No objection.  I would ask for

 3   two points of clarification.

 4            THE COURT:  Yes, sir.

 5            MR. GOROKHOV:  I think one is that the jury

 6   should only consider the loss to the extent of it

 7   doesn't in any way prove the existence of a scheme to

 8   defraud, that loss is not -- that's the limited role of

 9   considering the loss in the case.

10        And secondly, I think that since there are

11   instructions that talk about what the jury should --

12   what the Government doesn't have to prove, I think that

13   specifically with reference to the contracts at issue in

14   this case, there should be an instruction that says

15   contracts aren't sufficient to prove either an act or

16   knowledge or willfulness.

17            MR. WILLIAMSON:  Judge, I would concur in

18   that.  To the extent that you have several times in here

19   stated what the Government does not have to prove beyond

20   a reasonable doubt.  I think -- and definitely under the

21   issues in Franklin-El, but in this case because they

22   heard so many questions regarding a contract wasn't

23   signed, who's responsible.  Without the jury instruction

24   addressing that, it's just kind of like this fact that

25   was brought out in trial that has no home to land on.

5782

1    And so they don't necessarily know how to apply that.

2    And I'm sure this court is aware, one thing you know

3    about juries is you don't know what to expect.  And I've

4    learned that you should err on the side of being

5    inclusive as opposed to exclusive in jury instructions

6    to make sure that they follow the law.  And I think it's

7    just really important that they know that they cannot

8    under the law impute a contract standard to mean

9    knowingly and willfully.  You just can't confound those

10   two standards.

11             THE COURT:  I don't see how this instruction

12   says anything about a contract.

13             MS. TREADWAY:  Nor should it, Judge, because a

14   contract is not at issue in this case.  What's at issue

15   in this case is the Defendants' intent.  And the

16   Defendants' intent is circumstantially proved, including

17   by the agreements they enter into.

18             MR. WILLIAMSON:  See, no, that's what she's

19   trying to do.  That is not circumstantial evidence that

20   you knew that something fraudulent was happening.

21             MS. TREADWAY:  Well, then they needed to

22   listen to their own expert witnesses' testimony, Judge,

23   and they needed to read her e-mails to them.

24             MR. WILLIAMSON:  That's not what she said.

25             MS. TREADWAY:  What she said --

 1            MR. WILLIAMSON:  That's not what she said.

 2            THE COURT:  I remember the evidence about a

 3    contract and I think I even told the jury at the time

 4    that this was not a contract case.  I don't remember.

 5            MS. TREADWAY:  It's not, Judge.

 6            MR. WILLIAMSON:  But you also told them that

 7    you would give them the final instructions that they

 8    have to follow.

 9            MS. TREADWAY:  That's an argument, Judge.

10            THE COURT:  Well, I don't know there's any way

11    that I can instruct them that they should not contract

12    (sic) the language of the contracts with the insurance

13    companies, or whoever, Blue Cross or whatever --

14            MS. TREADWAY:  But that would be an incorrect

15    instruction, Judge, because it's circumstantial evidence

16    of an intent.

17            MR. GOROKHOV:  It's not that they shouldn't

18    consider it, Judge, because they've already heard it.

19    It's that they can't read the language to say that it

20    imputes responsibility.  There's a difference between

21    considering what a contract says and taking that

22    contract to replace actual proof of involvement or proof

23    of willfulness, and that's the thing we're really

24    concerned about here is that the jury says the contract

25    says this, therefore, replaces the proof.

5784

 1          THE COURT:  I don't know what to tell you.  I
 2     think that this is a correct statement of the law.  It
 3     doesn't have anything to do with contracts.
 4          MR. GOROKHOV:  I agree, Judge.  The reason I
 5     made that point is because you are instructing the jury
 6     as to some things that the Government does not have to
 7     prove; and I think similarly, you know, for fairness, we
 8     have to have instructions as to --
 9          THE COURT:  Well, but did you propose one?  I
10     didn't see that in your proposend instructions.
11          MR. GOROKHOV:  We did have some language about
12     industry standards and agreements.  We'll propose a more
13     specific language if you're willing to consider it.
14          THE COURT:  Okay.  Well, you can do that if
15     you want and I'll think about it.  Anything else on that
16     particular instruction?  We need to move along here if
17     we can.
18          MR. WILLIAMSON:  No, Your Honor.
19          THE COURT:  Eugene?
20          MR. GOROKHOV:  No, Your Honor.  Thank you.
21          THE COURT:  All right.  Count 7 through 9, and
22     I suppose I can say 7, 8 and 9.
23          MS. TREADWAY:  This is probably where we need
24     to put the different definition of serious bodily injury
25     as it applies to 1347, Judge.

5785

1            THE COURT:  Yeah.

2            MS. TREADWAY:  And that's in our Instruction

3    31.

4            THE COURT:  That's what the language says and

5    it relates specifically to health care fraud.  Except

6    I'm not going to put in the language about any kind of

7    a --

8            MS. TREADWAY:  Protracted and obvious

9    disfigurement.  You can leave that off.

10           THE COURT:  That doesn't apply.

11           MS. TREADWAY:  I think that's correct, Judge.

12           THE COURT:  Anything else about this one?

13   Gentlemen?

14           MR. WILLIAMSON:  No, Your Honor.

15           THE COURT:  Eugene?

16           MR. GOROKHOV:  No, Your Honor.

17           THE COURT:  All right.  Next is the elements

18   instruction of Counts 10 to 17.

19           MS. TREADWAY:  Judge, again, this is not a

20   criticism.  It's just maybe to make it simpler.  This is

21   the same instruction as the 7 through 9.  I don't see

22   why you can't put it all together.  It's the same

23   charges.  The only difference between 7, 8 and 9 and 10

24   through 17 is that additional sentencing enhancement.

25   Really, the elements are no different.  So we would just

5786

1    say that you should just subsume that in the prior

2    instruction about the elements.

3            THE COURT:  What do you think, Eugene?

4            MR. GOROKHOV:  I think it's fine to have it

5    separate.  I think on this one, unlike the prior one

6    that we talked about, there is no subsequent instruction

7    that talks about materiality.  So I think it either

8    needs to be included in here --

9            THE COURT:  No, look at the bottom.  The

10   definition for the terms in this instruction are set

11   forth in -- and I'm going to -- this is the one instance

12   where I'm going to refer them back to the one we just

13   talked about.

14           MR. GOROKHOV:  That's fine, Judge.

15           THE COURT:  So we don't have to repeat it all

16   over again.

17           MR. GOROKHOV:  That's fine.  Then the only

18   other comment I have is that later in the instructions

19   you do have an instruction that talks about the

20   definition of willfulness, and the only thing we would

21   ask is that it would be given right after this

22   instruction since this instruction uses the term

23   willfully.

24           THE COURT:  I think that when we say at the

25   bottom -- we don't have these numbered -- but we'll

5787

1    instruct on that one and willful.  How's that?

2             MR. GOROKHOV:  Yes.  That would be good.

3             THE COURT:  Okay.  Willful is a big problem

4    but I'm going to give it.

5         Next is the money laundering statute.  Any

6    objection to that?

7             MS. TREADWAY:  No, Judge.

8             MR. WILLIAMSON:  No, Your Honor.

9             MR. GOROKHOV:  No objection.

10            THE COURT:  And the elements?

11            MS. TREADWAY:  We just like our elements

12   better, Judge, but we think that you've stated pretty

13   much the same thing.  I think our language is a little

14   clearer.  Our instruction is number 33.  But I

15   understand pride of authorship.  And other than that, we

16   don't really have an objection.

17            THE COURT:  I'm not sure it's pride of

18   authorship.  I think I got these out of a case.  What do

19   you say, Eugene?

20            MR. GOROKHOV:  No objection.

21            MR. WILLIAMSON:  No objection.

22            THE COURT:  All right.  Now, here's the one,

23   Eugene.  We'll refer to this when they're numbered.

24   Okay?  When we go back to the elements of money

25   laundering, this will be one of them.  And this defines

5788

1    knowingly.  It defines willfully.

2              MS. TREADWAY:  You mean health care fraud,

3    Judge?

4              THE COURT:  Yeah.  It says:  All the crimes

5    charged in the Indictment require proof that a defendant

6    acted knowingly.  And I define knowingly.

7         In addition, Count 7 to 17 require that they be

8    done willfully.

9         Any objection?

10             MS. TREADWAY:  Yes, Judge.  As stated in the

11   Tenth Circuit's Pattern Instruction 1.38 --

12             THE COURT:  I know --

13             MS. TREADWAY:  -- they say not to define it

14   because it's one of those slippery slopes.

15             THE COURT:  Yeah.  I know that.  And we talked

16   about this endlessly.  And I don't know whether this

17   is -- I can't remember whether this is going to be -- I

18   don't think this is going to be modified in any way in

19   the new volume that's coming out.  But the statute uses

20   the term willfully.  And I believe this is the correct

21   definition of willfully.

22             MS. TREADWAY:  We agree that the definition

23   you have here is the correct statement of the law,

24   Judge.  We don't object to that part of it.  We just

25   object generally based on the pattern instructions.

5789

1          THE COURT:  Well, Rachael and I talked about

2   this at length and I've always felt, right or wrong,

3   that I have to -- and this was my argument, I don't

4   remember what anybody else's was -- that I have to

5   instruct on mental element terms that are in the

6   statute.  And I think that's kind of what we ended up

7   with.  If there was some way to find a definition that

8   applied to the specific statute, then we should give a

9   willful statute -- definition.  Anyway.  Any objection

10  to that, Eugene?

11          MR. GOROKHOV:  No objection.

12          THE COURT:  Lawrence?

13          MR. WILLIAMSON:  No, sir.

14          THE COURT:  Okay.  Now we're getting into some

15  that I think we can go through a little quicker.

16  Presumption of innocence.  Any objection?

17          MS. TREADWAY:  No objection.

18          MR. WILLIAMSON:  No objection.

19          MR. GOROKHOV:  No objection.

20          THE COURT:  Proof beyond a reasonable doubt?

21          MS. TREADWAY:  No objection.

22          MR. WILLIAMSON:  No objection, Judge, not

23  really an objection.  Can we move some of these up

24  towards the front of the instructions?

25          THE COURT:  They're all together.  This is the

```
 1    way I like to do these things and -- you all are going
 2    to be able to copy these, display them.  I'm sure that
 3    you're going to argue, Lawrence, beyond a reasonable
 4    doubt.  And either Eugene or Kevin is.  I don't know
 5    that it makes any difference.
 6        Burden of proof means burden of persuasion?
 7            MS. TREADWAY:  No objection.
 8            MR. WILLIAMSON:  No objection.
 9            MR. GOROKHOV:  No objection.
10            THE COURT:  Question of intent?
11            MS. TREADWAY:  No objection.
12            MR. WILLIAMSON:  No objection.
13            MR. GOROKHOV:  No objection.
14            THE COURT:  In every crime there must exist a
15    union or joint operation of act and intent?
16            MS. TREADWAY:  No objection.
17            MR. GOROKHOV:  No objection, Your Honor.
18            MR. WILLIAMSON:  No objection, Your Honor.
19            THE COURT:  Two types of evidence, direct and
20    circumstantial?
21            MS. TREADWAY:  No objection.
22            MR. WILLIAMSON:  No objection.
23            MR. GOROKHOV:  No objection.
24            THE COURT:  Okay.  Here's the other good faith
25    instruction.  Any objection?
```

1          MS. TREADWAY:  Judge, I do not want to suffer

2     the fate of the Herowitz case, and although you have

3     given a good faith instruction specific to the

4     physician, I believe that this good faith instruction,

5     if given, should apply to all charges; not just the

6     health care fraud and money laundering.  That advantages

7     the Defendants.

8          THE COURT:  Well, aren't any news media people

9     in here, are they?  They need all the advantage they can

10    get.

11        The point is that I believe this is a correct

12    statement of the law and that it does correctly apply to

13    health care and money laundering.  And that's why I gave

14    a separate instruction as to the doctor.  Defendants

15    have any input on this?

16         MR. GOROKHOV:  Just one word.  It's in

17    Paragraph 3 and it reads "On the other hand, a defendant

18    does not act in good faith if he or she knowingly -- "

19    and I would add and willfully.  Again, that goes with

20    the terms of the counts to which it applies.

21         THE COURT:  Well, let's see what the Tenth

22    Circuit says about good faith.

23        Well, I've got this very well organized.  I've got

24    it organized by e-mail sequence.  I'll tell you what

25    I'll do, Eugene.  If the Tenth Circuit's new instruction

1    mentioned willfully, which I don't think it does, on

2    good faith, I'll include it, but --

3                MR. GOROKHOV:  Okay.

4                MS. TREADWAY:  Judge --

5                THE COURT:  Yeah.

6                MS. TREADWAY:  I am concerned about the last

7    paragraph:  The Government must prove bad faith.  That's

8    actually not an element of any -- of the offense.  What

9    we need to prove is intent.  And I would ask that you

10   substitute our last two paragraphs which state in our

11   proposend Instruction Number 39:  The burden of proving

12   good faith does not rest with the Defendant because the

13   defendant doesn't have any obligation to prove anything

14   in this case.  It is the Government's burden to prove to

15   you beyond a reasonable doubt that the Defendant acted

16   intentionally.  In determining whether or not the

17   Government has proven that a Defendant acted

18   intentionally, the jury must consider all the evidence

19   in the case bearing on a defendant's state of mind.

20        And that would include, of course, their good faith

21   that you just instructed on.  I do not believe we have

22   to prove bad faith.

23                THE COURT:  I'll tell you what.  I've got all

24   this stuff here.  I found some discussion of good faith

25   in one of the e-mails, or one of the minutes of the

1    meetings, and I've got an e-mail in to Nikki Heller,

2    who's the head of the central staff out in Denver, and

3    I'll ask her if there's a final instruction on good

4    faith.

5            MS. TREADWAY:  Again, Judge, I would very

6    strongly urge you to include this instruction as to all

7    charges in the Indictment because otherwise Linda

8    Schneider is left out in the cold as to the 841 count in

9    terms of good faith defense and we do think that is

10   error.

11           THE COURT:  Well, gosh, I probably made so

12   many errors in this case that they'll have to grant

13   extra briefing for both sides.

14      Next, the weight to be given the evidence, et

15   cetera.  Any objection?

16           MS. TREADWAY:  No, Judge.

17           MR. GOROKHOV:  Just an addition, Your Honor.

18   I would say or the amount of testimony produced by

19   either side and then I would add there, comma, or the

20   number of exhibits presented by either side.

21           THE COURT:  This is a standard instruction.

22   I'm going to give it.  I don't think they're going to

23   decide this case based on the number of exhibits.

24      Next is the although you must consider all the

25   evidence.  Any objection?

5794

1                MS. TREADWAY:  No, Judge.

2                MR. WILLIAMSON:  No, Your Honor.

3                MR. GOROKHOV:  No, Your Honor.

4                THE COURT:  Next, this is the expert witness

5    instruction.  Any objection?

6                MS. TREADWAY:  No, Judge.

7                MR. WILLIAMSON:  No, Your Honor.

8                MR. GOROKHOV:  No, Your Honor.

9                THE COURT:  Next, a witness may be discredited

10   or impeached.  Any objection?

11               MS. TREADWAY:  No, Judge.

12               MR. WILLIAMSON:  No, Your Honor.

13               MR. GOROKHOV:  No objection.

14               THE COURT:  Next is the good sense

15   instruction.

16               MS. TREADWAY:  No objection.

17               MR. WILLIAMSON:  No objection.

18               MR. GOROKHOV:  None, Your Honor.

19               THE COURT:  Sir?

20               MR. GOROKHOV:  No objection.

21               THE COURT:  Next is Stephen Schneider has

22   offered himself as a witness.

23               MS. TREADWAY:  No objection.

24               MR. WILLIAMSON:  No objection.

25               MR. GOROKHOV:  No objection.

1            THE COURT:  Now, Mrs. Schneider, I've put an

2    instruction in here that says you're not going to

3    testify.  Okay?  That's the next instruction.  That's

4    what Kevin said the other day when we were talking.  You

5    understand that you have a right to testify.  You have a

6    right not to testify.  And you don't have to make that

7    decision right now.  You still could get up and testify.

8    My point here is that if you don't choose to testify,

9    I'm going to instruct the jury as noted here.  But the

10   point I want to make with you is whether you do or not

11   testify is your decision and yours alone.  You

12   understand that?

13           DEFENDANT MRS. SCHNEIDER:  Yes, I do.

14           THE COURT:  Okay.  You can certainly talk with

15   Kevin and Eugene and with your husband and anybody else;

16   but in the end, that's your decision.  I was going to

17   mention that to your husband but he was the first

18   witness and never got a chance.  So, he's stuck.  He

19   already made the decision.

20           DEFENDANT MRS. SCHNEIDER:  Thank you, Your

21   Honor.

22           THE COURT:  Okay.  Any objection?  This is a

23   standard instruction about not testifying.

24           MR. GOROKHOV:  No objection.

25           THE COURT:  Kevin?

5796

 1              MR. BYERS:  No.

 2              THE COURT:  Do you have any problem with it?

 3              MR. BYERS:  None at all.  Thank you, Your

 4     Honor.

 5              THE COURT:  All right.  Now, here's the one

 6     that I've tried to put together to help everybody out --

 7     it's been talked about and talked about -- that

 8     instructs the jury that this is not a medical

 9     malpractice case, it's a criminal case.  Any objection?

10              MS. TREADWAY:  No, Judge.

11              MR. WILLIAMSON:  One second, Your Honor.

12     Judge, I'm just going to make the objection regarding

13     the beyond the bounds of a medical practice language in

14     the second paragraph.  I know there was an element in

15     there and I know where the Court took the elements from.

16     We believe the Tenth Circuit misstated those elements in

17     the opinion.  I'm not blaming you.

18              THE COURT:  Why?  Am I looking at you,

19     Lawrence?

20              MR. WILLIAMSON:  They get it wrong every once

21     in a while, Judge.

22              THE COURT:  They get it wrong, in my opinion,

23     more than every once in a while; but this is their

24     language.  What can I do?

25              MR. WILLIAMSON:  Right.  We would just state

5797

1    that the language of the statute trumps the court's

2    interpretation of the language; and when you look at the

3    statutory instruction, plain language always controls.

4         THE COURT:  I know, but if the Schneiders are

5    convicted -- and I certainly have no reason to know one

6    way or the other -- that's an argument you can make --

7    and I'll show you've made that -- to the Court of

8    Appeals.

9         MS. TREADWAY:  Well, Judge, if what they want

10   is in all of these instructions discussing the two prong

11   test, goes back to the CFR.  Is that what you guys are

12   wanting?  We would have no objection to that.

13        THE COURT:  No.  This is what the Circuit says

14   the elements are.  This is what they are.

15        MS. TREADWAY:  Because I just think they added

16   or was beyond the bounds.

17        THE COURT:  Well, I don't know why they did

18   it; but, you know, why do they do a lot of things they

19   do.

20        All right.  Next one is -- I wrote this up because

21   there have been references to the cases and the

22   administrative proceedings and I don't want any

23   misunderstanding about, in the jury's mind, about

24   whether -- let's just say any misunderstanding about

25   what those are about.  Any objection?

5798

1          MS. TREADWAY:  No objection, Judge.

2          MR. WILLIAMSON:  No objection.

3          MR. GOROKHOV:  No objection.

4          THE COURT:  Next:  Statements and arguments of

5     counsel.  Any objection?

6          MS. TREADWAY:  No objection.

7          MR. WILLIAMSON:  I would add in there except

8     for Lawrence Williamson.  Other than that, no objection,

9     Your Honor.

10          THE COURT:  All right.  Next:  During the

11     trial I questioned witnesses, passed on objections, et

12     cetera.

13          MS. TREADWAY:  No objection.

14          MR. WILLIAMSON:  No objection.

15          MR. GOROKHOV:  No objection.

16          THE COURT:  Punishment.

17          MS. TREADWAY:  No objection.

18          MR. WILLIAMSON:  No objection.

19          MR. GOROKHOV:  No objection.

20          THE COURT:  During your deliberations you may

21     use your notes.

22          MS. TREADWAY:  No objection.

23          MR. WILLIAMSON:  No objection.

24          MR. GOROKHOV:  No objection.

25          THE COURT:  Charts and summaries?

5799

1          MS. TREADWAY:  No objection.

2          MR. WILLIAMSON:  No objection.

3          MR. GOROKHOV:  No objection.

4          THE COURT:  Next:  A final suggestion.

5          MS. TREADWAY:  No objection.

6          MR. WILLIAMSON:  No objection.

7          MR. GOROKHOV:  No objection.

8          THE COURT:  Next is the release from the

9    admonition.

10          MS. TREADWAY:  No objection.

11          MR. WILLIAMSON:  No objection.

12          MR. GOROKHOV:  No objection.

13          THE COURT:  Next is the unanimous verdict

14   instruction.

15          MS. TREADWAY:  No objection.

16          MR. WILLIAMSON:  No objection.

17          MR. GOROKHOV:  No objection.

18          THE COURT:  And the final one about what you

19   need to do in the jury room instruction.

20          MS. TREADWAY:  No objection.

21          MR. WILLIAMSON:  No objection.

22          MR. GOROKHOV:  No objection.

23          THE COURT:  Okay.  Now, let's take a little

24   recess.  We'll come back and we'll talk about your

25   respective requested instructions and the verdict form.

5800

 1   And we'll have some time to revisit some of this stuff

 2   that we've talked about some other time.

 3              MR. WILLIAMSON:  3:30, Your Honor?

 4              THE COURT:  Where are we at?  The jury is

 5   coming in tomorrow morning.  They're going to hear Dr.

 6   Cole.

 7              MS. TREADWAY:  No, they're not, Judge.  We

 8   were --

 9              THE COURT:  Why are you --

10              MS. TREADWAY:  We were informed yesterday at

11   3:00 that Dr. Cole is not coming.

12              THE COURT:  Well, what are they going to hear

13   tomorrow?  Are they going to hear a couple more of your

14   witnesses, Kevin?

15              MR. WILLIAMSON:  We were going to cover that

16   with you after the hearing, Judge.  We do need to

17   discuss some of the scheduling.

18              THE COURT:  That's fine.  Let's take a little

19   recess.

20                     (Recess.)

21              THE COURT:  We'll talk about the verdict form

22   later.  I want to move things along here because we've

23   got some other things to talk about.  We don't need to

24   talk about the verdict form now because that doesn't go

25   out to the jury.  All right.

5801

1        Now, does the Government want to make any specific

2   record on its proposed instructions that we haven't

3   already talked about?

4            MS. TREADWAY:  We've already talked about the

5   Indictment, Judge.

6        The Government would ask that its Instruction 6, 9,

7   10 and 12 be given with regards to conspiracy as to

8   prove agency liability, single versus multiple

9   conspiracies and conspiracy membership.  We are

10  especially concerned about the conspiracy agency

11  liability theory.

12       Our Government 9 instruction is patterned after

13  Tenth Circuit Pattern Instruction 2.21. We believe

14  that's a correct statement of the law and should be

15  given.

16       We also believe that Government 16, the last

17  paragraph, should be given.  That is from the *Celio*

18  case.  We understand the Judge's ruling on that.  But

19  most importantly, Judge, I come back to something that

20  you were angry with me about earlier but I need to make

21  the Court aware that a physician issuing a prescription

22  is distributing drugs.  That was held to be true in the

23  *Moore* case, the Supreme Court case.  It has been

24  repeatedly held to be true in the Tenth Circuit in the

25  *Celio* case, the *Nelson* case, the *Jones* case, the *Devous*

5802

1    case, *Varma* case, the *Smurthwaite* case.  In the *Fellman*

2    case, in the *Jobe* case and in the *Bartee* case.  That's

3    extremely long held law from the Supreme Court and the

4    Tenth Circuit, that issuing a prescription is a

5    distribution when you're not issuing it in the

6    legitimate course of medical practice and outside the

7    usual course of medical practice.  Or for a legitimate

8    medical purpose.

9        The First Circuit, the Third Circuit, the Fourth

10   Circuit, the Fifth Circuit, the Sixth Circuit, the Ninth

11   Circuit, the Eleventh Circuit, has also held that a

12   prescription by a physician outside the usual course of

13   practice and not for a legitimate purpose is a

14   distribution of a drug.  That's how this case has been

15   charged.  It's how it's been proved.  And to take that

16   away from the Government and the jury is, Judge, just

17   against the weight of the law and it's against the

18   evidence in this case.  Therefore we --

19           THE COURT:  No, it's not against the evidence.

20   There's no evidence that he distributed any drugs.

21           MS. TREADWAY:  He issued prescriptions, Judge.

22   We put all of those prescriptions in evidence.

23           THE COURT:  And that's dispensing.

24           MS. TREADWAY:  Not according to all of this

25   case law that I just cited for you, Judge.

5803

1         THE COURT:  Well, I'll think about it.

2         MS. TREADWAY:  The case law astoundingly says

3    that a prescription is a distribution.

4         THE COURT:  I'll think about it.

5         MS. TREADWAY:  Thank you.  We believe that the

6    usual course of medical practice and other than for a

7    legitimate medical purpose should be defined as we

8    define them in Government instruction -- in Government

9    Instruction 22.  Again, we cited the causation issue.

10   The Defendants don't want that.  Which we understand.

11   But we just offer it for the Court's consideration.

12        One -- no, two Government instructions that were

13   not included in the Court's instructions were Government

14   Instruction 36, which is the false exculpatory statement

15   instruction.  We did present many false exculpatory

16   statements in this case, Judge, and we would ask that

17   that instruction be given.

18        And finally, I believe that the Defendants also

19   suggested a deliberate ignorance instruction and that is

20   Government Instruction Number 37.  I believe the

21   evidence has come in, including from the Defendants

22   themselves, that would support a deliberate ignorance

23   instruction in this case.

24        THE COURT:  False exculpatory statements?

25        MS. TREADWAY:  Yes, sir.

5804

1          THE COURT:  And what false exculpatory

2    statements are in evidence?

3          MS. TREADWAY:  There were several through the

4    depositions and there were -- the one especially

5    important one was in the verified petition in the state

6    case which we entered into evidence, Judge.

7          THE COURT:  I don't remember that.

8          MR. WILLIAMSON:  There were not any, Your

9    Honor.  Much as they attempted to strain and try, the

10   only thing she's talking about in that verified petition

11   is when Dr. Schneider said he didn't receive notice of a

12   document.  And it was signed by Mario Atterbury or

13   somebody like that.

14         THE COURT:  Do you all want a deliberate

15   ignorance instruction?

16         MS. TREADWAY:  They suggested one, Judge.

17         MR. GOROKHOV:  We do not, Judge.

18         MR. WILLIAMSON:  I don't believe the evidence

19   supports a deliberate ignorance instruction.

20         THE COURT:  It might or it might not; but I'm

21   not going to get involved in my philosophy about the

22   Circuit, except to say that they say that giving that

23   kind of instruction is very dangerous.

24         MS. TREADWAY:  And we understand that, Judge.

25   We reserve the right to argue it and understand that you

1    probably will not give it.

2         THE COURT:  All right.  Gentlemen?

3         MR. GOROKHOV:  You want us to respond to

4    Ms. Treadway's points or do you want us to just

5    address --

6         THE COURT:  You can if you want; but I

7    really -- I'm going to think about distribution only

8    because of all this case law that she cited.  I think

9    that there's no evidence here in this case of true

10   distribution.  To me, distribution means, and it could

11   mean in this case, if he was handing out drugs at the

12   clinic.  That's distribution.

13        MS. TREADWAY:  Well, that's actually

14   dispensing, Judge.

15        THE COURT:  I mean, if he was just handing

16   them out --

17        MS. TREADWAY:  Yes, Judge.

18        THE COURT:  -- goes to the back door and

19   people were being given drugs.  But that's not what

20   happened here.

21        MS. TREADWAY:  Right.  But, again, in the

22   confines of a physician distributing drugs under the

23   CFR, it's the issuance of that prescription outside the

24   usual course and for not a legitimate purpose that makes

25   it distribution as all of that case law holds.

1          THE COURT:  Go ahead, Eugene.

2          MR. GOROKHOV:  Your Honor, I think I would

3    just point out on that that you've reviewed -- it was a

4    long time ago now -- but we reviewed all the similar

5    cases in the Tenth Circuit and what distinguishes this

6    case is that this is purely -- in those cases there was

7    other evidence like video, audio, or a doctor going to a

8    restaurant and telling somebody I'm going to give you

9    some drugs so you can party.  This is purely a case of

10   within the context of this medical practice the

11   Government thinks he gave too much, he crossed the line.

12   So I would say that that refutes the point.  I think

13   it's distinguishable.

14        On the conspiracy instructions, I think the Court's

15   instruction is -- conspiracy is a very difficult -- it's

16   a complex issue and I think that your instruction covers

17   it amply.  I think adding on agency liability and all of

18   that is simply not necessary and --

19          THE COURT:  Well, it says that.  The

20   instruction says that they become agents of each other.

21          MR. GOROKHOV:  And I think you correctly

22   limited it to the point that these are the only two

23   co-conspirators at issue.

24          THE COURT:  I'm not going to back up on that

25   one.

5807

1          MR. GOROKHOV:  Now, as to the Government's

2     definition in its Proposed Instruction Number 20.  This

3     talks about the standard of medical practice generally

4     recognized and accepted in the United States.  I don't

5     know what that is.  I don't think there's been any

6     evidence of the standard in the United States.  And as

7     the Supreme Court said in 2006, the standards are

8     established by the states.  There is no federal standard

9     in medical practice.  So I think that instruction is

10    misleading --

11          THE COURT:  I agree.

12          MR. GOROKHOV:  -- and incorrect as a matter of

13    law.

14       I think Mr. Williamson already made the point

15    regarding false exculpatory statements.  And you've

16    already rejected the deliberate ignorance instruction.

17    So that covers I think our conversation with the Court's

18    instructions, covered our proposed instructions and you

19    implicitly denied them.  We would just, you know,

20    reserve our points on that.

21          THE COURT:  All right.  What I'm going to look

22    hard at -- and if you all want to type up anything and

23    send it in -- is the time -- the time schedule is

24    obviously changing here.  Get it in to me and I will

25    consider distribution, but I really think what we're

5808

 1    dealing with here factually is dispensing.  And that's

 2    according to the definition.

 3        Now, what do you all -- what all do you want me to

 4    do about forfeiture?  In most cases, and it's always up

 5    to the defendants, of course, but, and I think in most

 6    of these cases if there are guilty verdicts I've made

 7    the forfeiture determination.  And in this case is there

 8    any property left to forfeit?

 9                MS. TREADWAY:  Yes, Judge.

10                THE COURT:  The clinic's gone.  I was talking

11    to Bostwick about this the other day.  What property

12    would be left to forfeit?

13                MS. TREADWAY:  Well, there's a Hummer, number

14    one, so we would be able to, again, act on all the

15    assets that have not been forfeited or seized.  And the

16    seized assets.

17                THE COURT:  Are there any?

18                MS. TREADWAY:  Yes.

19                THE COURT:  I thought Dr. Karch got all those.

20                MR. WILLIAMSON:  No, Judge.  If the Government

21    knows of some, I would like to know as well.

22                MS. TREADWAY:  There's a house in Oklahoma.

23    There's a house in Mexico.  There are vehicles that we

24    have seized but we have not forfeited, Judge.

25                THE COURT:  All right.  Okay.

 1          MS. TREADWAY:  We've got money --

 2          THE COURT:  Okay.  Okay.  Okay.  All right.

 3     So apparently there's some stuff out there.  The

 4     question is do you want the jury to make that

 5     determination or -- and this is really up to the

 6     Defendants entirely, to me.  Or do you want -- if there

 7     are guilty verdicts, do you want to have me make that

 8     determination in a separate hearing?  And I think you

 9     ought to talk to your clients about that.  You don't

10     have to tell me about it today.  I'm just suggesting

11     that because we've been here now going on eight weeks

12     and we're going to have a jury coming back, whatever

13     their verdict is, if it's guilty, and having me sit up

14     here and say, well, you think you're through but you're

15     not.

16          MS. TREADWAY:  The Government supports a bench

17     resolution of the forfeiture.

18          THE COURT:  And actually, and really, and you

19     aren't even going to do that.  Isn't Annette going to do

20     the forfeiture?

21          MS. TREADWAY:  No, sir.  She is going to be

22     out of town.

23          THE COURT:  Because I was going to say,

24     another AUSA usually does the forfeiture.  Well, you

25     talk to your clients about it.  Okay?

                                                                      5810

1          Now, Dr. Cole is not coming.  I'm assuming at this

2     point that Mrs. Schneider is not going to testify.

3               MR. WILLIAMSON:  Judge, before you move on, I

4     did want to make one argument regarding our jury

5     instructions.

6               THE COURT:  I thought you were through.  Go

7     ahead.

8               MR. WILLIAMSON:  Just one more.  This is

9     mainly for the record.  We would ask that, I believe,

10    jury Instruction 1, where we included a lot of the

11    information from the various cases, and some of those I

12    just cited to the Court; but, essentially, in order to

13    make sure that the jury understands what kind of case

14    this is, we believe that *Gonzalez* versus -- excuse me --

15    versus Oregon has set the standard in regards to CSA

16    cases.  Essentially, the Government has to show that the

17    doctor acted as a drug dealer as conventionally

18    understood.

19              THE COURT:  Oh, yeah.

20              MR. WILLIAMSON:  We think that that Supreme

21    Court case is the law of the land and what protects

22    doctors from federal oneverreaching into medical

23    practice.  And we have briefed this several times but I

24    just want to make sure we don't waive our --

25              THE COURT:  You're not waiving it, and,

5811

 1    really, that was the case that was in my mind, Lawrence,

 2    when I read you those two Tenth Circuit cases about not

 3    adopting language.  You can certainly make that

 4    argument.  But I'm not even sure now days what a

 5    conventional -- or what a drug dealer is as that term is

 6    conventionally understood is.  I mean, it's kind of like

 7    pornography.  I mean, we know it when we see it.  You

 8    know.  If we walk out across the street and there's

 9    somebody that, you know, offers us crack cocaine, that's

10    a conventional drug dealer.  I guess.  But, anyway, your

11    record is clear on that.

12            MS. TREADWAY:  I guess with the advent of the

13    internet, nothing is really conventional any more,

14    Judge.

15            THE COURT:  I don't know.

16            MS. TREADWAY:  I would note for the record

17    that the Defendants' own instruction talks about

18    distribution.

19            THE COURT:  I saw that.

20            MR. WILLIAMSON:  As a title.

21            THE COURT:  I saw that but -- I'm going to

22    think about it.  It won't take that much to put it back

23    in if I -- and, of course, I'm assuming that the

24    Defendants would object to that and I will show their

25    objection.  But I'll take it look at.  Okay?

5812

1          So, now, tomorrow we're not going to have Dr. Cole.

2    We probably won't have Mrs. Schneider.  Who are we going

3    to have?

4              MR. WILLIAMSON:  Judge, we have a couple of

5    employees and we have one decedent's mother.  The

6    problem is we're still -- there are a couple of

7    employees that we can't get served.  That we've tried

8    and tried.  But, surprisingly, after they were

9    interviewed by federal agents, they have disappeared.

10   We don't think the federal agents have threatened them;

11   but federal agents come talk to me, I don't want to be

12   involved either.

13             THE COURT:  You wouldn't disappear, Lawrence,

14   I know you better than that.

15             MR. WILLIAMSON:  The mother comes in, I think

16   she can be ready to testify by 10:45.

17             THE COURT:  That's fine.  Are you going to

18   have any rebuttal?

19             MS. TREADWAY:  Yes, sir.  Briefly.  We're

20   going to have, I believe now, four witnesses.

21             THE COURT:  All right.

22             MS. TREADWAY:  Now, one witness I have a

23   problem with, Judge, because we were anticipating

24   Thursday being full of Dr. Cole.  So I released my

25   witness to go out of town and he will not be back until

5813

1    Friday but he will be available first thing Friday

2    morning.

3              THE COURT:  Well.  Okay.  Next, it will

4    probably take me anywhere from 45 minutes to an hour --

5    we would have to take up Rule 29 again at the end of the

6    case but I really think that will probably be rather

7    perfunctory at this point.

8              MS. TREADWAY:  On Friday you mean, Judge?

9              THE COURT:  Well, or whenever the evidence

10   ends.  I would think it would take me somewhere around

11   45 minutes to an hour to read the instructions to the

12   jury.  How much time do you want to argue?

13             MS. TREADWAY:  Judge, total, I would like two

14   hours.

15             THE COURT:  How much time do you all want to

16   argue?

17             MR. WILLIAMSON:  Probably an hour, hour and a

18   half.

19             MS. TREADWAY:  Each.

20             MR. WILLIAMSON:  For me, yes.

21             MR. BYERS:  I would think an hour and a half,

22   Your Honor.

23             THE COURT:  Kevin, how can you talk an hour

24   and a half?

25             MR. BYERS:  I'm sorry?

5814

1          THE COURT:  How could you -- I don't see how
2   you could take an hour and a half.
3          MR. BYERS:  Well, I meant an hour -- if I'm
4   not done -- that's without any instructions stuff.  I'm
5   thinking at the absolute, 90 minutes; but I know I can
6   fill an hour.
7          THE COURT:  I'm going to give you an hour.
8   That's not a problem.  What I'm thinking is that a lot
9   of what Lawrence is going to argue is probably you're
10  not going to argue, it would be repetitious for you to
11  argue.
12         MR. BYERS:  Right.
13         THE COURT:  Are you going to -- are you
14  thinking about how much time -- how you would want to
15  split that?
16         MS. TREADWAY:  Not yet, Judge.  Typically I
17  use, of course, more in my opening than I do in my
18  rebuttal.  Conservatively, I think I'm going to probably
19  take an hour and 15 minutes in my opening and that would
20  leave 40 to 45 minutes for rebuttal.
21         THE COURT:  What I'm sitting here thinking is
22  that if we start tomorrow morning at 9:00, sounds to me
23  like most of the morning is going to be taken up with
24  more evidence.
25         MR. WILLIAMSON:  Unless we can't get these

5815

```
1    employees in.
2              MR. BYERS:  Yeah.  The employees, Your Honor,
3    we were slating them in first thing; but we don't have
4    the service yet.  That's why the one we do have is a
5    non-employee, but she's like mid-morning.
6              THE COURT:  It's a little late for me to try
7    to call the jury off.  I want them here at 9:00.
8    They'll understand if, you know, if something happens.
9              MS. TREADWAY:  We've only been notified of one
10   employee, Judge.  We don't know these employees --
11             THE COURT:  If the morning was taken up with
12   evidence, I guess we could get the instructions and --
13             MS. TREADWAY:  I have rebuttal, too, Judge.
14   Remember?
15             THE COURT:  But you say it's short.
16             MS. TREADWAY:  It is; but I'm not going to be
17   able to put one witness on until Friday morning and he's
18   very short as well.  But we would be able to be done by
19   10 easily Friday morning.  We can get the rest of 'em on
20   Thursday afternoon.  You think we can instruct and then
21   argue the following week?  Instruct Friday and then
22   argue the following week?
23             THE COURT:  Have them come in here for one
24   witness on Friday.  We could certainly instruct and
25   argue on Friday and then have them come back on Tuesday.
```

5816

1          MS. TREADWAY:  Judge, I think that's -- I'm

2    sorry, but I think that's a bad idea for the following

3    reason.  This is going to be a case that closing

4    arguments are going to be very, very helpful to the

5    jury.  And to have that gap of time, that three-day gap

6    of time, makes closing arguments less helpful to the

7    jury.  I certainly don't mind splitting instructions and

8    closing arguments, but I think to put them at 5:00 on --

9          THE COURT:  No.  The the jury needs to hear

10    the instructions right before the closing arguments so

11    that the lawyers can make their closing arguments and

12    refer to the instructions.  Why is it that this person

13    can't be here?  To me, to call a jury in here Friday for

14    a couple hours or less doesn't make sense.

15          MS. TREADWAY:  Well, if you want him to come

16    Monday or Tuesday, that's fine, too, Judge.  I mean, I

17    will work with you.  But but my problem was I was

18    depending on what the Defendants were telling me and I

19    didn't know until 3:00 yesterday afternoon that Dr. Cole

20    was suddenly not going to appear; and, therefore, I told

21    this witness you may go out of town and do what you need

22    to do out of town.  He is a physician.  He's going to be

23    out of town.  He's already out of town.  And he will be

24    back and be here in this courthouse at 8:00 in the

25    morning Friday.

5817

 1              THE COURT:  What's your view, gentlemen, on

 2   doing whatever we have to do tomorrow and whatever

 3   rebuttal there is tomorrow and leaving this one lone

 4   doctor until next Tuesday and then instructing and

 5   arguing on Tuesday?  Which is what the jury expected

 6   anyway.

 7              MR. BYERS:  That's agreeable, Your Honor.

 8   There's a bit of a split but I think we can work with

 9   that.

10              THE COURT:  Lawrence, is that all right with

11   you?

12              MR. WILLIAMSON:  Uhm, I kind of want to go

13   Friday.  I just want to get the arguments done and over,

14   but, you know.

15              THE COURT:  I can't deny her witnesses any

16   more than I can deny you witnesses.

17              MR. WILLIAMSON:  Right.  But outside of that,

18   I don't see there being a -- there's not a real problem.

19   We're not prejudiced in any kind of way.

20              THE COURT:  No, not really.  I think there

21   would be more prejudice if we split the instructions and

22   arguments.  I'm going to give the Government two and a

23   half hours and give you three.

24              MS. TREADWAY:  For argument, Judge?

25              THE COURT:  Right.  You don't have to use two

1    and a half.  They don't have to use three.  And they can

2    decide however they want to do that.  I think that --

3    but I am concerned, this is a case that there's been a

4    wealth of evidence and I believe that this is a case

5    where closing argument will be helpful to the jury,

6    assuming it's done properly.  And I know you will.  Any

7    objection to that?

8              MR. BYERS:  No, sir.

9              THE COURT:  Two and a half and three.

10             MR. WILLIAMSON:  No, Your Honor.

11             MR. BYERS:  That's fine.

12             THE COURT:  Nobody ever has to use it all.

13             MS. TREADWAY:  Do you want to start early on

14   Tuesday then instead of 9:00?  Or -- oh, how about this,

15   Judge?  I'm just thinking out loud.  Mr. Byers, did you

16   say that you could get back by like noonish Monday.

17             MR. BYERS:  That's when I'm -- yeah.

18             MS. TREADWAY:  What about this, Judge?  What

19   about bringing in the witness Monday afternoon, doing

20   the Rule 29, instructing Monday afternoon and then

21   arguing Tuesday morning.  That would be not such a long

22   distance and that would then give the parties an

23   opportunity also to make sure they get their

24   instructions into their arguments.

25             THE COURT:  Well, now, we're going to have

1    plenty of time on that.  We're going to have tomorrow

2    afternoon.  We have Friday to finalize the instructions.

3    Part of the instruction situation, if you compress this

4    too much, is a practical consideration of getting all

5    these instructions copied.  And there are a lot of 'em.

6    And there's the Indictment and there's other things and

7    you all need to have some time also to get your exhibits

8    organized and your closing argument.  So I think that's

9    what we'll do.  We'll reconvene tomorrow morning at

10   9:00.  Hear whatever evidence there is from the

11   Defendants.  We'll hear the Government's rebuttal except

12   for one person.  We'll tell the jury that on Tuesday

13   we'll have this one last witness, I will instruct and

14   the lawyers will argue and they'll begin their

15   deliberations at the end of the argument, whenever that

16   is.

17           MS. TREADWAY:  I would suggest, Judge, that's

18   going to be a long day on Tuesday and you might want to

19   prepare the jury for that.  We might want to start

20   early.  I don't know.  Because you're talking about five

21   and a half hours of argument if we use all that time.

22           THE COURT:  Well, five and a half hours of

23   argument.  This last witness can't take that long,

24   surely.

25           MS. TREADWAY:  Oh, no.  He won't.

1    THE COURT:  We'll have a seven hour day or so.

2    They're not -- they can handle that.  I'll ask 'em if

3    they want to come in early.  I don't care, but they've

4    been awful good about sitting through this.  But I know

5    when you're a lawyer, closing argument goes by in a

6    flash.  It sure as hell doesn't when you're sitting

7    there as a juror listening to it.

8    MS. TREADWAY:  And I'll be the goat, Judge,

9    because I'm going to be the last to speak.

10   THE COURT:  All right.  Now, anything else?

11   What about the changes in the Indictment, Kevin?

12   MR. BYERS:  I shot out an e-mail.  I haven't

13   had a chance to talk with Ms. Treadway about it.

14   THE COURT:  I'm not going to take out the

15   stuff about pill mills and everything else because

16   that's all -- we've had plenty of evidence about that.

17   MR. BYERS:  I just put that in because you had

18   ruled earlier it would be out.

19   THE COURT:  Well, that was a stupid ruling on

20   my part.

21   MR. BYERS:  But it ended up coming in through

22   testimony.

23   THE COURT:  But if you want something out,

24   truly want it out, we're going to have to figure out how

25   to do it.

5821

1          MS. TREADWAY:  We agree that Paragraph 7

2    should be modified as they suggest.  We do not agree to

3    the other changes.  I can certainly send a modified

4    version e-mail or --

5          THE COURT:  That's fine.  The Indictment --

6          MS. TREADWAY:  -- whatever you want me to do.

7          THE COURT:  I would prefer that you all kind

8    of agree to this and then get it done and get it to

9    Rachael so that we can copy -- make the copies and get

10   that over with.

11         MS. TREADWAY:  Do you just want the Indictment

12   as it stands with like --

13         LAW CLERK MS. SILVA:  Just the paragraph with

14   the change, please.  I already have the Indictment

15   ready.

16         MS. TREADWAY:  Okay.

17         THE COURT:  So just whatever --

18         MS. TREADWAY:  Just that paragraph.

19         MR. BYERS:  Yes.

20         THE COURT:  Got it?

21         MS. TREADWAY:  Got it.

22         THE COURT:  Are we forgetting something?

23         MR. WILLIAMSON:  Not that I know of, Your

24   Honor.

25         MR. BYERS:  I don't believe so, Your Honor.

5822

1          MS. TREADWAY:  Just the verdict form.

2          THE COURT:  Well, we don't need to talk about

3    that right now.  I'll see you all tomorrow morning at

4    9:00 and we'll plow ahead as far as we can go tomorrow.

5    Okay.

6                    (Recessed for the day at 4:00

7                    p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25