1                    (Beginning at 1:10 p.m. June 14,

2                    2010, the following proceedings

3                    continued.   JURY IS NOT

4                    PRESENT.)

5          THE COURT:  Well, this is sort of the last

6    instruction conference.  We've sent you the final set of

7    instructions, which you all should have now.  And if you

8    want, we'll go through each one of these again.  Most of

9    them have not been changed.  The vast majority haven't

10   been changed.  There were a few that were changed based

11   on just some small editorial changes.  You know that the

12   two that really seem to be most in controversy regarding

13   distribution versus dispensing, I'm not going to

14   instruct on distribution.  I'll show the Government's

15   objection to that.  And then, as you know, I've given a

16   little different instruction with respect to the good

17   faith of a physician, which I extracted from the *Celio*

18   case.  I think those are the two principal ones that

19   we're dealing with here.

20        And then we didn't discuss specifically the verdict

21   form last time but you now have a verdict form.  Does

22   the Government want to discuss any further instructions?

23          MS. TREADWAY:  Judge, we do not.  We would

24   simply reassert our prior arguments.

25          THE COURT:  All right.  Lawrence, anything you

5956

1    want to --

2              MR. WILLIAMSON:  Not me, Your Honor.  I think

3    we'll stand on our prior objections and that will be it.

4              THE COURT:  Okay.  Eugene?

5              MR. GOROKHOV:  Judge, in addition to the prior

6    objections, there is one issue that I did some further

7    research on based on what we discussed.  And this is

8    with respect to the definitions of fraud and -- I'm

9    sorry -- the elements of fraud and then the subsequent

10   definitions.  I reviewed the Tenth Circuit Pattern

11   Instructions and there are two points I have.  First,

12   the pattern instructions as to both wire fraud and mail

13   fraud, which are commonly relied on in this context,

14   they do separately state materiality as an element.  So

15   I would just renew that objection.  And then, secondly,

16   what I -- I searched for the definition of scheme to

17   defraud and I didn't find in the pattern instructions

18   the wording that we previously objected to which

19   includes the word pattern.  And I'd be glad to read that

20   paragraph from the Court's instructions if you need more

21   specific --

22             THE COURT:  Well, let's look at this one.

23   It's not numbered yet, but the one that starts out

24   "health care benefit program".  Now, tell me, on the

25   second page I define materiality.

1          MR. GOROKHOV:  Right.  I think the difference,

2     Judge, is that in both the mail fraud and wire fraud

3     instructions from the Tenth Circuit, materiality is

4     stated as an actual element.  I'm looking back now at

5     the instructions, and it says here, for example, with

6     respect to mail fraud, it goes first, and it talks about

7     devise or intending to devise a scheme to defraud.

8     Second, acting with specific intent.  Third, the act of,

9     in the case of mail fraud, mailing something.  Then,

10    fourth, it says the scheme employed false

11    representations that were material.  So you see it sets

12    out the materiality as a separate element.

13                    (Off-the-record.)

14         THE COURT:  There aren't any Circuit cases

15    specifically on 1347, are there, that talk about

16    materiality?

17         MR. GOROKHOV:  No.

18         THE COURT:  In the Franklin-El case, did I

19    instruct on materiality?

20         MS. TREADWAY:  In the definitional section, as

21    you did in this case, yes, Judge.

22         THE COURT:  But elements?

23         MS. TREADWAY:  Elements?  No.  Because I think

24    the problem is with regard to the bank fraud, the mail

25    fraud and wire fraud statutes, usually the element is

1    that there is some kind of misrepresentation.  And that

2    element in just a pure scheme to defraud doesn't

3    necessarily have to occur.  You can have either a direct

4    misrepresentation or an omission.  Essentially I think

5    what you've done, Judge, is bring in materiality as a

6    definition of scheme to defraud, which I think is

7    correct.

8              MR. GOROKHOV:  I think the *Nader* case, and I

9    think it's exactly the opposite holding of what the

10   Government's suggesting.

11             THE COURT:  She is going to get me a case.

12   Hold on just a minute.

13                   (Off-the-record.)

14             THE COURT:  Well, you know, it's always a

15   problem.  In *U.S. v Baum*, at 555 Fed. 3rd 1129, that's a

16   2009, Tenth Circuit case, and on Page 1131 it gives the

17   elements of wire fraud.  And those elements, scheme or

18   artifice to defraud by false or fraudulent pretenses,

19   intent to defraud, and use of the wire.  Even though

20   this case is decided in 2009, it is inconsistent with

21   the Tenth Circuit's Pattern Instruction, which uses

22   specific intent.  And this instruction doesn't say

23   anything about materiality.  Frankly, I can't explain

24   that, obviously.  The only Tenth Circuit case that I'm

25   aware of that talks about 1347 is Franklin-El, and I'm

1    pretty sure, I think Tanya's right.  I'm pretty sure --

2    I can look -- but did I not give an element of

3    materiality in that?

4              MS. TREADWAY:  Yeah, I think that the issue,

5    Judge, is that a scheme to defraud --

6              THE COURT:  I know what you're saying.  But

7    I'm pretty sure that I didn't instruct specifically that

8    materiality was an element.

9              MS. TREADWAY:  I think you're right.

10             THE COURT:  Because it doesn't talk about

11   false or fraudulent representations --

12             MS. TREADWAY:  That's the key.

13             THE COURT:  -- as an element in 2.57 for wire

14   fraud; but on the other hand, the *Baum* case doesn't

15   contain that requirement either, that is, the

16   materiality, even though the form instruction uses it.

17   Eugene, have you got a case, a Tenth Circuit case or any

18   case from any circuit, that says that materiality is an

19   element in 1347?

20             MR. GOROKHOV:  Your Honor, I think that that's

21   encompassed -- I don't have -- the answer is no.  But I

22   think it's encompassed by the *Nader* case which says that

23   any time there's fraud, there's materiality.  And I

24   think the Supreme Court is clear on that.  I would also

25   point out, you know, I have no idea whether counsel in

1    *Franklin-El* or this *Baum* case raised this issue.

2              MR. WILLIAMSON:  I can say at least for Johnny

3    Franklin-El that issue was not raised as far as the

4    strict elements on --

5              THE COURT:  And it wasn't raised on appeal.

6    You didn't raise it on appeal.

7              MR. WILLIAMSON:  No.

8              THE COURT:  If you look at the notes --

9                   (Off-the-record.)

10             MS. TREADWAY:  May I make a suggestion, Judge?

11             THE COURT:  Sure.

12             MS. TREADWAY:  Perhaps -- the problem with

13   putting it as an element in the instruction is because

14   1347 doesn't include that false representations

15   language, it's difficult to formulate the materiality

16   issue as an element.  So what the Government thinks that

17   you should do is that in your definitional instruction,

18   in the last paragraph on the first page, say that a

19   scheme to defraud can include material, false or

20   fraudulent pretenses, representations or promises, which

21   means, a statement, blah, blah, blah, blah.  So we get

22   material in there.  And then the next paragraph on the

23   second page, a material false statement can include.

24   And then you do material as a definition.  So perhaps

25   just adding those two phrases or inserting it that way

1     would solve the problem.  So then when you're finding a

2     scheme to defraud, you hit material false

3     representations and material omissions and then you've

4     defined material.

5              MR. WILLIAMSON:  Are you saying say material

6     false representations or are you saying material, comma,

7     false, comma --

8              MS. TREADWAY:  No.  The term material.  In

9     other words, you've got a scheme to defrand may exist

10    even though no actual misrepresentations are made.  A

11    scheme to defraud may involve the concealment of

12    material facts.  New paragraph.  A scheme to defraud may

13    also involve material, false or fraudulent pretenses,

14    representations or promises.  Which mean, a statement,

15    assertion, blah, blah, blah.  Then the next paragraph:

16    A material false statement can include, then you've got

17    the definition of material in the following paragraph.

18    That would seem an easy solution and gets into the

19    definition of scheme to defraud that materiality

20    concept.

21             THE COURT:  Well, I wasn't listening to you --

22    sorry -- but I will cover that again in a minute.  But

23    here, Rachael has found *United States vs. Awad*, 551 Fed.

24    3rd, 930, Ninth Circuit, 2009.  And on Pages -- you

25    found that, Eugene.  Pages 938, 939, here are the

1    elements the Ninth Circuit says for 1347.  First, the

2    Defendant knowingly and willfully -- okay.  We got

3    that -- devised or participated in a scheme to defraud a

4    health care benefit program.  That's pretty much the

5    same as our first element.

6         Second, the statements made or facts omitted as

7    part of the scheme were material.

8         Third, the Defendant acted with intent to defraud,

9    not specific intent to defraud.

10        Fourth, the scheme involved the delivery or

11   payment -- delivery of or payment for health care

12   benefits, items or services.

13        And then apparently the instruction goes on to say:

14   For purposes of proving health care fraud, an act is

15   done knowingly if the defendant is aware of the act and

16   does not act through ignorance, mistake or accident.

17   Then for some reason they have italicized, the

18   Government is not required to prove that the defendant

19   new that his acts or omissions were unlawful.  Then, for

20   purposes of health care fraud, a person acts willfully

21   as that term is used in the instructions when the person

22   acts deliberately, voluntarily and intentionally.

23        Let me see if the Ninth Circuit says -- well, they

24   spend a lot of time talking about willful, but I've

25   instructed on that.  They talk about intent to defraud,

5963

1   not specific intent.  They don't instruct on interstate

2   commerce for 1347.

3          MS. TREADWAY:  A lot of times that's

4   stipulated to, Judge.

5          THE COURT:  Well, it's not really an issue;

6   but for some reason they don't instruct on it.  They

7   don't say it was stipulated.

8          MS. TREADWAY:  It may be because they defined

9   it when they defined health care benefit program.

10  That's usually where it's defined.

11         THE COURT:  Well, I'm certainly willing to add

12  the second element that says the statements made or

13  facts omitted as part of the scheme were material.

14         MS. TREADWAY:  We certainly don't object to

15  that, Judge.

16         THE COURT:  I wouldn't think so.  That make

17  everybody happy?

18         MR. GOROKHOV:  Yes.

19         THE COURT:  I try to make everybody happy.

20  Let's do that.  But otherwise, leave it the same.  And

21  then I define material in the next instruction so that

22  ought to take care of that, don't you think, Eugene?

23         MR. GOROKHOV:  Yes, it does.  The only

24  remaining issue is the definition of scheme to defraud.

25         MS. TREADWAY:  Well, clearly, a scheme to

5964

1    defraud can include a pattern.  That's just black letter

2    law, Judge.

3              MR. GOROKHOV:  I think the problem is that it

4    creates a potential for confusion because looking at a

5    pattern is not sufficient to prove a case of fraud under

6    1347 or any of the federal fraud criminal fraud

7    statutes.  And I think that's a hotly contested issue in

8    this case.

9              MS. TREADWAY:  Well, Judge, if the jury cannot

10   use circumstantial evidence then I guess Mr. Gorokhov is

11   right; but the jury can use circumstantial evidence and

12   pattern, practice, repeated conduct over time is a

13   traditional black letter means of proving fraud and

14   defining fraud.

15             THE COURT:  Eugene, have you got a case that

16   says it's not appropriate to use the word pattern in

17   connection with defining scheme to defraud?

18             MR. GOROKHOV:  I just -- I do not have a case.

19   I looked for cases that use the word in that way in 1347

20   statutes and I couldn't find a case like that defines it

21   that way.  That's not to say there isn't one.  There's

22   obviously a lot of cases.  And I tried to be as

23   exhaustive as I could.  But going back to Your Honor's

24   earlier statement about the Tenth Circuit instructions.

25   I think that there's no reason why this should be

1   different than mail fraud or wire fraud and those

2   pattern instructions don't use the term pattern.

3            THE COURT:  Well, that may be because it's

4   never been an issue that's been raised; but, to me, this

5   doesn't jump out.  It's part of one instruction and part

6   of -- I just don't see the problem that would create

7   some kind of plain error by -- so I'm going to leave

8   that in.

9        Let's turn to something else for a minute.  Because

10  we do have, in the *Baum* case, at 1131, I was not aware

11  of this, we've got the elements of money laundering.  So

12  let's make sure the elements are the same here, or

13  similar.

14           MS. TREADWAY:  Is it a 1957 case, Judge?

15           THE COURT:  1957.  Page 1131.  To prove money

16  laundering under 1957 the Government must prove five

17  elements.  The first element is engaged or attempted to

18  engage.  And the second element is a monetary -- in a

19  monetary transaction.  Now, I've put those in the same

20  first element.  I don't know why it's necessary to

21  divide those.  The third element is criminally derived

22  property.  That's the second element of our instruction

23  except I had $10,000 which I think is required.  The

24  fourth element in *Baum* is knowing that the property is

25  derived from unlawful activity.  Yeah.  Same.  And the

1    fifth element is the property is in fact derived from

2    specified unlawful activity, which is if you take our

3    third element, that's combining the fourth and fifth

4    element in *Baum*. And then I instruct on interstate

5    commerce. So I think that instruction is okay.

6         MS. TREADWAY: Actually it isn't, Judge. And

7    I hadn't caught this before. Your third element

8    requires that the Defendant knew the property was

9    actually criminally derived property from the specific

10   counts in the Indictment. That actually is not the

11   requirement. A defendant has to know the property

12   involved criminal activity, but the defendant does not

13   have to know it came from a specific unlawful act, an

14   SUA. And so you kind of required us to prove that which

15   is not the case. And *Baum*, when you just read that from

16   *Baum*, I realized that you had increased our burden of

17   proof on 1957.

18        MR. GOROKHOV: I disagree, Judge. Element

19   five uses the word specified unlawful activity and other

20   than --

21        THE COURT: What other unlawful activity is

22   there in this case?

23        MS. TREADWAY: Well, in other words, the

24   defendant has to know it's unlawful activity but they

25   don't have to know it's "health care fraud" or "illegal

1   drug distribution" or "conspiracy".  That's the

2   difference.  And *Baum* pointed that out.

3         MR. WILLIAMSON:  Judge, again, if you look at

4   element five, it discusses derived from specified

5   unlawful activity.  What you just stated was is that

6   your element three combines two elements.  And --

7         MS. TREADWAY:  That's the problem.  It

8   shouldn't.

9         MR. WILLIAMSON:  Well, I mean, regardless,

10  specified unlawful activity is going to be spelled out.

11  So it can either be in three or it can be in three and

12  four.  But the bottom line, they still have a burden to

13  show specified unlawful activity.

14        MS. TREADWAY:  That's correct, Judge, but we

15  don't have to prove that they knew it was a SUA.  You

16  just have to know it was criminally derived.  So the

17  knowledge element is different in *Baum* than it is in

18  your instructions.

19        THE COURT:  Element four in *Baum* says knowing

20  that the property is derived from unlawful activity.

21        MS. TREADWAY:  Correct.  That's the knowledge.

22  But what you had in three in your third element is that

23  they had to know it came from particular crimes.  And we

24  don't have to prove that.

25        MR. WILLIAMSON:  They have to prove unlawful

 1    activity, Your Honor, and the only unlawful activity

 2    charged is what the Court set forth in these elements.

 3    So it sounds kind of --

 4            THE COURT:  Well, the other way to do it is to

 5    do it like they do it in *Baum* and say knowing that the

 6    property is derived from unlawful activity, and then I

 7    can instruct at the bottom where I define things,

 8    criminally -- I can say that criminally derived

 9    property -- wait a minute.  Say unspecified activity and

10    then I can define unspecified activity to say includes

11    the conspiracy charged in Count 1 and/or illegally

12    dispensing prescription drugs as charged in 2 through 6

13    or health care fraud.  I can do that.  To me, it's six

14    one, half dozen of the other.  I don't think the jury is

15    going to go back there and agonize over the definitions.

16    But I can do that if nobody has any particular objection

17    to it.

18            MR. GOROKHOV:  That's fine.  Or just the

19    crimes charged in the Indictment.  That's okay.

20            THE COURT:  Well, let's do that.  We've got a

21    Tenth Circuit case.  Do you want me to -- none of these

22    cases instruct on interstate commerce.  Do you want me

23    to instruct on interstate commerce in these

24    instructions?

25            MS. TREADWAY:  I think you have to unless the

5969

 1    Defendants are going to stipulate that it's not an

 2    issue.

 3            THE COURT:  Yeah, I agree, that's why I put it

 4    in there, but nobody ever said anything about it so --

 5            MR. GOROKHOV:  I don't -- I mean, I would

 6    stipulate to that.  I don't think it's an issue.

 7            MS. TREADWAY:  Usually the way I handle it

 8    just is to just say it's an undisputed element and move

 9    forward.

10            THE COURT:  Well, but it's not undisputed if

11    it's in there.  You have to prove it.  I'll do

12    whatever -- this is a call that the Defendants need to

13    make.  And if you want to talk to them about it, they're

14    here, and you all -- Doctor and Mrs. Schneider, you know

15    what we're talking about here?

16                      (Both Defendants non in the

17                       affirmative.)

18            THE COURT:  You can't be in federal court

19    unless, generally speaking, there's some sort of

20    interstate commerce involved, interstate movement of

21    money, whatever.  That's why this is an element.  It's

22    very common, though, that that interstate element is not

23    a disputed issue in the case.  And if it's not a

24    disputed issue, then very frequently the defendants

25    stipulate that that issue need not be instructed on; but

5970

 1    that is entirely up to the two of you after talking with

 2    your lawyers.  If you want me to instruct on interstate

 3    commerce, I will.  If you don't want me to instruct on

 4    it, I won't?  But you need to make that call, that is,

 5    between the two of you, need to make that call after

 6    talking with your counsel.  So you want to talk with

 7    them?

 8              MR. GOROKHOV:  Sure, Judge.

 9              MR. WILLIAMSON:  Well, Judge, I can tell you

10    we just discussed it.  I think our recommendation to the

11    client is going to be to not stipulate to preserve the

12    *Gonzalez* issue.  And I don't know how that will or won't

13    effect any potential appellate issues.

14              THE COURT:  You kind of got to go the same

15    way, don't you, Eugene?

16              MR. GOROKHOV:  Yes, sir.

17              THE COURT:  Well, then I'm going to instruct

18    on interstate commerce.  And I don't think anybody's

19    going to argue that there wasn't interstate commerce;

20    but -- okay.  All right.  Let's do this.  Let's follow

21    *Baum* and -- I don't really think it's necessary to have

22    all five elements because I think one and two can be put

23    together, engaged or attempted to engage in a monetary

24    transaction.  That's one element.  And criminally

25    derived property, that's our second element.  Then our

1    third element will be knowing the property is derived

2    from unlawful activity.  And then the fourth element,

3    knowing that the property -- wait a minute -- knowing

4    that the property is derived from unlawful activity.

5    And the property is in fact derived from specified

6    unlawful activity.  We'll use those two elements and

7    then at the bottom in this definition section I'll say

8    for purposes of this case, specified unlawful activity

9    is the conspiracy charged in Count 1 and/or illegally

10   dispensing, et cetera.  Any objection to doing it that

11   way?

12            MS. TREADWAY:  No, Judge.

13            MR. WILLIAMSON:  No objection.

14            MR. GOROKHOV:  No objection.

15            THE COURT:  All right.  So I haven't made you

16   completely happy, Eugene, but almost.

17            MR. GOROKHOV:  Almost, Judge.

18            THE COURT:  Any others that we need to talk

19   about?

20            MR. WILLIAMSON:  Not from the defense, Your

21   Honor.

22            THE COURT:  Okay.  Eugene?

23            MR. GOROKHOV:  No, sir.

24            THE COURT:  All right.  We'll make these

25   changes and then we're going to number these

1   instructions.  We've already numbered the Indictment,

2   pages of the Indictment.  Now, do you all want to

3   discuss the verdict form at this point?

4         MS. TREADWAY:  Yes, Judge.  We do not have any

5   objections to the verdict form for that Counts 2 through

6   34.  We do have an objection to the conspiracy verdict

7   form.  We, first of all, there's a typographical error

8   on Page 3.  Five lines into the paragraph it says 51(b)

9   through 55(p).  And I think that should be 51.

10        THE COURT:  Right.  I agree.

11        MS. TREADWAY:  As you will recall, Judge, we

12   had a little bit of trouble with this type of verdict

13   form in the Franklin-El case.  And this is all I ask you

14   to do.  And that is on the second page, simply eliminate

15   the language as charged in Counts 2 through 6, as counts

16   in charged 7 through 18, as charged in Count 18 through

17   34.  And this is why.  The Defendants did not have to

18   conspire to commit the crimes in those charges.  All

19   they have to do is conspire to violate the law and then

20   there must be an overt act in furtherance of the

21   conspiracy.  When that "as charged" language is added, I

22   think what that signals to the jury is if we don't find

23   them guilty of a count, we can't say yes; or if we don't

24   find both defendants guilty of a count, we can't say

25   yes.  And that's just not the law.  So we would just

5973

1    simply ask you to eliminate the phrases "as charged" in

2    Counts 2 through 6, as charged in Count 7 through 17 and

3    as charged in Counts 18 through 34.  Make sense?

4         THE COURT:  I understand what you're saying.

5    I'm just not sure that the jury would reach that same

6    conclusion.

7         MS. TREADWAY:  Well, I think that it's

8    confusing and it's superfluous and it really isn't the

9    law is the problem.  That's the main problem is it isn't

10   the law.

11        THE COURT:  What do you say, Lawrence?

12        MR. WILLIAMSON:  I would disagree, Judge.  I

13   think when you look at the elements that are being

14   charged in the conspiracy, they have to show that they

15   conspired to violate some laws.  The laws in the

16   Indictment that they are alleged are what you set forth

17   in the verdict form.  And the jury has to agree as to

18   whether or not a conspiracy to violate some specific

19   law, not just some unforeseen, unknown, unlawful

20   activity that is beyond the scope of the Indictment.

21        THE COURT:  No.  No.  I don't think that's

22   what she is saying.  She just wants me to take out the

23   words as charged in counts, et cetera.  She is not

24   asking that I not define all three.  So it would simply

25   read unlawful dispensing, health care fraud and money

5974

1    laundering.

2            MS. TREADWAY:  Right, Judge.  And if you want

3    to echo the Indictment, what you would do is unlawful

4    dispensing of controlled substances, comma, in violation

5    of and then state the statute.

6            THE COURT:  Well, you could do that.

7            MS. TREADWAY:  That's what Mr. Williamson's

8    arguing.

9            MR. GOROKHOV:  May I, Judge?

10           THE COURT:  Of course.

11           MR. GOROKHOV:  I think that there has to be an

12   object offense.  I think that's the way of conspiracy,

13   there has to be an object defense (sic) and I think

14   based on the way this case is charged, I mean, either

15   they -- the problem here, Judge, is this is one of those

16   cases, this is a white collar case, this is a clinic,

17   this is not a drug dealer on the street.  So there

18   actually is a distinction in the law between drug

19   conspiracies which are presumed to be involving unlawful

20   activity and the drug conspiracy alleged in this case,

21   which is within the context of an actual business, a

22   business that was registered to dispense controlled

23   substances.  So I think the danger we get into, it

24   becomes really vague when you say they conspired to

25   distribute drugs.  That's --

5975

1           THE COURT:  Dispense?

2           MR. GOROKHOV:  I'm sorry.  To dispense drugs

3    per the Court's instructions because I think it's really

4    either they did what's in the Indictment and they

5    conspired to do so, or they didn't.  Otherwise, it's too

6    vague.

7           MS. TREADWAY:  Well, that's not the law,

8    Judge.

9           THE COURT:  What case says that I could not

10   use this terminology?

11           MS. TREADWAY:  What?  The "as charged"?

12           THE COURT:  Yeah.

13           MS. TREADWAY:  Well, conspiracy law, Judge.

14   All they have to do is agree to violate the law of

15   illegally distributing controlled substances.  They

16   don't have to agree to commit Counts 2 through 6.

17   That's not the agreement.  The agreement is we're gonna

18   distribute drugs.  The agreement is we're going to

19   commit health care fraud.  Not that they're going to

20   commit health care fraud against Blue cross, Preferred

21   Health, Medicaid, Medicare, et cetera.  It's not that

22   they agree to commit the crimes as charged.  Those are

23   the overt acts of the conspiracy.  They agree to violate

24   the law.

25           MR. WILLIAMSON:  Judge, but the Indictment is

5976

1    the notice document and all you're doing is referring

2    back to the notice document.  And I don't think that is

3    improper in any, shape, form or fashion.  They're not

4    being accused of violating some law.  They're being

5    accused of violating specific laws.  And the Government

6    does have that burden to show that.

7              MS. TREADWAY:  And we have, Judge.

8              THE COURT:  Well, we're, here again, to me,

9    talking about how many angels to condense on the head of

10   a pin.  I don't think the jury is going to seize on

11   this.

12             MS. TREADWAY:  Well, Judge, again, I think

13   they did in *Franklin-El* because they found Johnny guilty

14   of some but not all and therefore they didn't answer yes

15   to any of these.  That was the problem.

16             MR. WILLIAMSON:  But they didn't find a

17   conspiracy.

18             MS. TREADWAY:  No, they did find a conspiracy.

19   They said guilty and then they didn't answer yes.  And

20   that was the problem.  It was because it says as

21   charged.  That is the problem.  If you'll just eliminate

22   that language, Judge, we'll be fine.  But it's going to

23   confuse them just like it did in Franklin-El.

24             THE COURT:  Well, I'm going to take out the

25   "as charged" in each one and say instead in violation of

5977

```
 1     the specific statute.  And I'll show the Defendants'
 2     objection.  I don't think the jury had that problem in
 3     Franklin-El; but I don't remember what they told me, if
 4     they ever told me anything.  My guess is that
 5     Franklin-El, Lawrence, that they figured that Johnny was
 6     so stupid -- and I'm not asking you to confirm or deny
 7     that, but -- what a guy.
 8         All right.  Now, Defendants have any additional
 9     comments or objections with respect to the verdict form?
10               MR. GOROKHOV:  No, Judge.
11               MR. WILLIAMSON:  No, Your Honor.
12               THE COURT:  Okay.  Now, I got your e-mail,
13     Kevin.
14               MR. BYERS:  Yes, sir.
15               THE COURT:  I don't know what to tell you.
16     All I can tell you is, you already figured out, I'm not
17     going to let you put in that whole 200 or 400 page,
18     whatever it is, transcript.  I'm still willing to let
19     you, as I put it the other way, for purposes of
20     completeness, respond to any of the snippets.  But I
21     can't help you find the area, the responses, if indeed
22     there were any.
23               MR. BYERS:  Well, do you want to see the one
24     that I pulled out and the Government responded to about
25     specifically the --
```

5978

1           THE COURT:  Yes, because -- certainly.  I'll

2     be absolutely as liberal with you as I can possibly be

3     about this, but I'm not going to let the jury go through

4     there and try that.

5           MR. BYERS:  On this, Your Honor, as I recall,

6     and this was from the first I think 82-C.  I think the

7     snippet was actually just most of the employees I hire

8     are probably misfits that won't get a job someelse.

9           THE COURT:  I remember that.

10          MR. BYERS:  I think that's it.  That's at the

11    bottom of Page 6.  That didn't copy through well.  As

12    the copy I handed you, I highlighted as Government's

13    snippet, then I highlighted the yellow that they propose

14    fills it out.  Everything else on there is what I want

15    to fill it out.  So the yellow highlight is what the

16    Government says they would propose.

17          THE COURT:  Okay.  Let's see what the proposal

18    is -- okay.  Down at the bottom of Page 7 she says I

19    know you can't answer that question if it's going to

20    hurt me, but I mean, just like saying I hire misfits, I

21    don't know if that would hurt me.  A lot of you guys

22    have made me nervous just with my words.  And then Greer

23    says, well, that's just being honest with us, I mean,

24    and she says, right, and I'm being honest.  And Greer

25    says:  That's your impression.  And she says:  I am

5979

1  telling you how I feel, you know.  And Redd says:  I
2  mean, that's your opinion.  And she says:  "That's my
3  opinion.  Maybe they're not misfits.  And then Greer
4  says:  Yeah, right.  Right.  And then she says:  You
5  know, but a lot of them are single women that have
6  several children by various people whether they're
7  married or not.  Uh-huh.  And she says and they can't
8  make it in the real world, that is who I have catered
9  to, animals, and probably people that can't make it in
10  the real world.  So those are the people that I've taken
11  on board.  So by doing that, a lot of them will come to
12  me, I mean, most of them have borrowed money from me one
13  time or another, not from the clinic but from me.
14  Maggie, Meagan.  I don't know that the rest of this --
15            MR. BYERS:  Well, it's about a misfit.  I
16  mean, it's a particular misfit person.
17            THE COURT:  I don't have any problem with you
18  pitting this in if you want.
19            MR. BYERS:  Okay.
20            THE COURT:  But what about the others, the
21  other snippets you're concerned with?
22            MR. BYERS:  Again, Judge, I've got some
23  pieces.  I filed them up today but I haven't looked at
24  them since Friday.
25            THE COURT:  This is actually exactly what I

1    was talking about the other day.  She then goes on to

2    define what they sent.  That's completeness as far as

3    I'm concerned.  And if you can put this in either by

4    displaying it on the video or by reading this in or

5    whatever you want to do.

6              MR. BYERS:  Okay.

7              THE COURT:  And I'll allow you to do the same

8    with the others.

9              MR. BYERS:  And I've got some others but the

10   problem was the way it jumped all over, I didn't want --

11             THE COURT:  Maybe she never really responded

12   to them from the standpoint of completeness, not like

13   this here.

14             MR. BYERS:  I think that is part of it.

15             THE COURT:  I don't remember the others.

16             MR. BYERS:  Most of it was about somebody else

17   in the clinic, so they went about him, they went to

18   something else.  They went back to him, went to

19   something else.  Went back to him, went to something

20   else again.

21             THE COURT:  I understand but I can't do it for

22   you.

23             MR. BYERS:  I understand.

24             MS. TREADWAY:  Judge, we think that the actual

25   clips from these few pages should be a little less than

5981

1   Mr. Byers is indicating.  It should be I am telling you

2   how I feel, you know, that's my opinion, maybe they're

3   not misfits.  You know, a lot of them are single women

4   that have several children by various people, whether

5   they're married or not, and they can't make it in the

6   real world and that is who I have catered to, animals,

7   and probably people that can't make it in the real

8   world.  So those are the people that I've seen on board.

9   And that's Tonie T, not the questions and the going back

10  and forth and they owe me money or we borrowed money.  I

11  have no way to crass examine that, Judge.

12        THE COURT:  This isn't going to make or break

13  this case.  I'm going to let Kevin use that; but I don't

14  know the others so I can't make a ruling on them.  And

15  maybe you won't be able to find them and it won't make a

16  difference, I don't think.

17        MR. BYERS:  I understand.

18        THE COURT:  To me, seriously, I mean, we're

19  all in here, there's nobody else here.  I don't remember

20  the others but I remember the comment about misfits.  My

21  guess is that will be the comment that the jury

22  remembers.  The others, I don't know, but this is her

23  explanation of that term and I think it's appropriate

24  that the jury hears that.

25        MR. BYERS:  Thank you, Your Honor.

```
 1              THE COURT:  Now, you all want warnings
 2    tomorrow on your arguments?  You don't have to tell me
 3    today.  You think about it.  You've got your arguments
 4    prepared.  We're going to come in tomorrow morning.
 5    We're going to hear this rebuttal guy, who is it?
 6              MS. TREADWAY:  Dr. Joe Davison.
 7              THE COURT:  We haven't heard him before, have
 8    we?
 9              MS. TREADWAY:  No, sir.
10              THE COURT:  And then, listen, I don't know how
11    you want to do it; but one way or another, you can put
12    this on.
13              MR. BYERS:  Okay.  I'll be ready.
14              THE COURT:  And then do you all want to make
15    your Rule 29 arguments now or is it sufficient for me to
16    say that -- are they going to be any different?
17              MR. GOROKHOV:  They're basically the same,
18    Judge.  I think what we'd like to do, given the Court's
19    position on Rule 29, is just put in a filing and that
20    way we don't have to use up any time and we can make our
21    points and we don't have to use up time.
22              THE COURT:  Do you object to that, Tanya?
23              MS. TREADWAY:  Oh, no, Judge.  I believe you
24    said it was going to every perfunctory and we were going
25    to --
```

 1           THE COURT:  Well, I don't want to sound

 2     perfunctory; but it probably will be the same ruling.

 3     So, that's fine.  Make sure they're done timely.  Okay?

 4           MR. GOROKHOV:  Yes, sir.

 5           THE COURT:  Then we'll take a break, a short

 6     break if we need to, depending on how long all of that

 7     is.  Then I will instruct and then we'll take another

 8     break so that you can set up for your closing arguments.

 9     And theoretically that might take us until noon.  Then

10     we'll take a noon recess.  You guys can make your

11     closing arguments and she can make her rebuttal and then

12     we'll give it to the jury.

13           MS. TREADWAY:  Judge, I would ask for just a

14     short five or ten minute break before rebuttal.

15           THE COURT:  We'll take a look between their

16     closing arguments and your --

17           MS. TREADWAY:  Just so I can get organized.

18           MR. WILLIAMSON:  Judge, just for organization

19     sake, Mr. Byers is going to go first on the defense

20     side.

21           THE COURT:  I don't care.

22           MS. TREADWAY:  Judge, we have our original

23     stipulation done for the judge.  It's an original

24     document.  I don't know how the Court will handle this

25     but you also have to sign it.

5984

1           THE COURT:  Have you -- have Mr. and

2    Mrs. Schneider read this?

3           MS. TREADWAY:  Yes.  And they've signed it.

4    It's all signed, Judge, ready for you.  Gosh, I hope

5    that 11 people show up here tomorrow morning.

6           THE COURT:  All right.  I'll I've signed it.

7    Now we can file it.

8           MS. TREADWAY:  Thank you, Judge.

9           THE COURT:  Now, is there anything else?  All

10   right.. Here again, probably tomorrow there will be a

11   lot of people here.  I want to tell you that I really

12   think you all have done a very good job in a difficult

13   case here.  I guess that's really all I have to say.

14   And I'm pleased that it's gone the way it has.  There

15   have been some little rough spots along the way, but

16   basically I think that it's been tried as well as it

17   could have been tried and that the jury will have an

18   awful lot to think about and talk about.  And whatever

19   the jury's verdict is, I think they've heard almost

20   everything that there is really for them to have heard.

21   I can't think of anything that -- obviously, we've

22   properly not told them about Mrs. Schneider's felony

23   conviction.  That doesn't have anything to do with this

24   case.  Dr. Simons, what a guy.  I think he's probably in

25   the pen by now.

5985

1          MS. TREADWAY:  Judge, the only thing that may

2     be hanging fire is the Defendant's decision about

3     forfeiture, whether it's going to be to the jury or the

4     bench.

5          THE COURT:  I haven't forgotten about that but

6     that didn't go along with my complimenting counsel.

7     Have you made a decision about that yet or do you want

8     more time?  There's still plenty of time.

9          MR. WILLIAMSON:  Can we tell you tomorrow,

10    Judge?  We really haven't discussed it.

11         THE COURT:  You don't have to tell me even

12    tomorrow; but you're going to have to tell me -- if

13    you're going to want the jury to, then we're going to

14    have to talk about instructions and that.  But they're

15    not going to be -- my guess is they'll be out several

16    days.  Let me know tomorrow and we'll go from there.

17    Anything else?  Okay.  8:30 tomorrow morning.  I'll see

18    you then.

19         MR. BYERS:  Thank you, Judge.

20         THE COURT:  And Rachael will make those

21    changes before you leave today.  Okay.  And give you

22    those changes so you'll have them.

23         MR. WILLIAMSON:  Okay.

24                   (Recessed for the day at 2:00

25                   p.m.)