IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

Plaintiff,

v. Case No. 07-10234-02-JWB

LINDA SCHNEIDER,

Defendant.

**MEMORANDUM AND ORDER**

This matter comes before the court on Defendant Linda Schneider's motion to reduce sentence. (Doc. 855.) Defendant seeks early release due to her underlying health conditions and the current COVID-19 pandemic. Defendant also seeks review of this court's previous denial of her 28 U.S.C. § 2255 motion.[1] The motion has been fully briefed and the court is prepared to rule. (Docs. 857, 859.) For the reasons stated herein, Defendant's motion for compassionate release is DENIED.

## I. Facts and Procedural History

Defendant Linda Schneider was a licensed practical nurse and her husband, co-defendant Stephen Schneider, was a doctor of osteopathic medicine. They provided pain management treatment in their clinic, including the prescription of controlled substances. The clinic was open long hours, seven days a week. Stephen was the only full-time doctor on staff.

[1] Defendant Stephen Schneider, Linda's husband and co-defendant, also raised an issue regarding his previous § 2255 denial. In his motion for release, Stephen claimed that his rights were violated because the prosecutor at trial violated his due process rights. (Doc. 851 at 1, 3.) Linda's argument is presented as a court error in handling the motion. Both arguments lack merit.

On March 3, 2010, the grand jury returned a third superseding indictment charging both defendants as follows: Count 1—conspiracy to unlawfully distribute drugs, commit health care fraud, engage in money laundering, and defraud the United States in violation of 18 U.S.C. § 371; Counts 2–6—unlawful drug dispensing and distribution and unlawful drug distribution resulting in death in violation of 21 U.S.C. § 841(a)(1); Counts 7–17—health care fraud and health care fraud resulting in death in violation of 18 U.S.C. § 1347; and Counts 18–34—money laundering in violation of 18 U.S.C. § 1957. (Doc. 414). The case proceeded to trial.

The evidence at the jury trial was that Defendants' clinic was a regular "pill mill," fraudulently generating significant amounts of money, and both Defendants had little to no concern for the patients. Linda managed the clinic and was in charge of the scheduling and the billing. She prioritized the patients who would be seen based on the type of insurance and she would "frequently knock on the exam room door to hurry the exam along." *United States v. Schneider*, 112 F. Supp. 3d 1197, 1202 (D. Kan. 2015), *on reconsideration*, No. CR 07-10234-01, 2015 WL 13679981 (D. Kan. Sept. 15, 2015), and *aff'd*, 665 F. App'x 668 (10th Cir. 2016). The government's expert on patient care concluded that Defendants "(1) ran a practice that attracted drug addicts; (2) took inadequate medical histories; and (3) indiscriminately prescribed controlled drugs in excessive and escalating amounts." *United States v. Schneider*, 704 F.3d 1287, 1291 (10th Cir. 2013). Dr. Douglas Jorgensen, the government's expert on pain management and billing practices, opined that Defendants filed fraudulent claims to insurance providers. *Id.* Dr. Graves Owen, an expert in pain management, testified that Stephen did not prescribe controlled substances for a legitimate medical purpose. *Id.* From February 2002 to February 2008, sixty-eight patients died of drug overdoses. *Schneider*, 112 F. Supp. 3d at 1203. During the same time period, over 100 clinic patients were admitted to local hospitals for overdoses. *Id.* Defendants received

repeated calls from law enforcement, concerned family members about patients' drug addictions, concerned pharmacists, and calls from emergency room physicians about the clinic's prescription practices. *Id.* Defendants' method of operation continued without change.

The jury found Stephen guilty of Counts 1–17 and two money laundering charges (Counts 26 and 28), and found Linda guilty of all charges save two money laundering charges (Counts 23 and 24). Judge Monti Belot sentenced Stephen to 360 months' imprisonment on counts 1–5 and 7–9, to run concurrently. (Doc. 529.) Linda was sentenced to 396 months' imprisonment on counts 1–5 and 7–9, to run concurrently. (Doc. 527.) Defendant timely appealed and the Tenth Circuit affirmed the convictions and sentences. *Schneider*, 704 F.3d 1287. Based on a change in the law after sentencing, Defendant successfully challenged some of her convictions—although that did not result in a different sentence upon resentencing. *Schneider*, 112 F. Supp. 3d at 1223. Defendant was resentenced to the same 396-month sentence. (Doc. 805.) The controlling sentence was based on Defendant's conviction on Count 4, unlawful dispensing and distribution of prescriptions drugs resulting in the death of Robin G. According to the statement of reasons and the presentence report, the guideline range was life. (Docs. 802, 806.) Defendant's judgment was affirmed on appeal. *Schneider*, 665 F. App'x at 676. Defendant then filed another motion to vacate her sentence on January 4, 2018. (Doc. 839.) This court dismissed the motion as a second or successive 2255 motion. (Doc. 841.)

Defendant is currently incarcerated at Carswell FMC in Fort Worth, Texas. Based on the information provided by the Bureau of Prisons, Carswell FMC currently has no active COVID-19 cases among inmates and staff. Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed July 15, 2021). Defendant's projected release date is June 11, 2037. *See* Federal Bureau

of Prisons, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (Linda K Schneider, last accessed July 15, 2021).

On June 14, 2021, Defendant filed a motion seeking early release due to her health conditions that make her more susceptible to serious health complications should she contract COVID-19. (Doc. 855.) The government opposes Defendant's motion on the basis that she has not shown extraordinary circumstances and the sentencing factors do not weigh in favor of a sentence reduction to a time served sentence. (Doc. 857.)

Although there is no right to counsel in the filing of these motions, District of Kansas Standing Order 19-1 allows the appointment of the Federal Public Defender ("FPD") to represent indigent defendants who may qualify to seek compassionate release under § 603 of the First Step Act. Administrative Order 20-8 supplements 19-1 and sets forth procedures to address compassionate release motions brought on grounds related to the COVID-19 pandemic. Under 20-8, the FPD has fifteen days to notify the court whether it intends to enter an appearance on behalf of any pro se individual filing a compassionate release motion based on COVID. Here, the FPD notified the court that it did not intend to enter an appearance to represent Defendant.

## II. Legal Standard

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), was amended by The First Step Act. Now, a defendant may file her own motion if certain conditions have been met. The Tenth Circuit has recently endorsed a three-step test for district courts to utilize in deciding motions filed under § 3582(c)(1)(A). *United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021) (citing *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020)). Under that test, the court may reduce a sentence if Defendant has administratively exhausted his claim and three other requirements are met: (1) "extraordinary and compelling" reasons warrant a reduction; (2) the "reduction is

consistent with applicable policy statements issued by the Sentencing Commission;" and (3) the reduction is consistent with any applicable factors set forth in 18 U.S.C. § 3553(a). *Id.* A court may deny the motion when any requirement is lacking and the court need not address the other requirements. *Id.* at 1043. But all requirements must be addressed when the court grants a motion for release under the statute. *Id.* With respect to the second requirement, the Tenth Circuit has held that the current policy statement on extraordinary circumstances is not applicable to motions filed by a defendant. *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021). Defendant bears the burden of establishing that compassionate release is warranted under the statute. *See, e.g., United States v. Dial*, No. 17-20068-JAR, 2020 WL 4933537, at *2 (D. Kan. Aug. 24, 2020); *United States v. Dixon*, No. 18-10027-02-JWB, 2020 WL 6483152, at *2 (D. Kan. Nov. 4, 2020).

Here, the government argues that Defendant has not shown extraordinary circumstances and that the sentencing factors do not support a time served sentence.

## III. Analysis

### A. Exhaustion

In her motion, Defendant raises two grounds for compassionate release. First, Defendant argues that the COVID-19 pandemic and her health conditions create an extraordinary and compelling reason for release. Second, Defendant argues that the court erred in treating her § 2255 motion filed in 2018 as a second or successive § 2255 motion. The government does not dispute that Defendant has presented her request for release to the BOP with respect to the argument related to the COVID-19 pandemic. But, the government asserts that Defendant has not exhausted her claim regarding the denial of her § 2255 motion as a second or successive motion and, therefore, that ground should be denied. Viewing the request submitted by Defendant, it is clear that she only raised the COVID-19 pandemic as a basis for compassionate release. (Doc. 857, Exh. 2.)

Therefore, the court finds that Defendant has not fully exhausted her request for relief to the extent that it is based on this court's prior denial of her § 2255 motion and this court lacks jurisdiction to consider her arguments.

Moreover, although Defendant's motion is one for compassionate release, her argument pertaining to the previous denial of her § 2255 could also be construed as a second or successive § 2255 motion. This court lacks jurisdiction to consider this argument as she has not obtained proper certification from the court of appeals. 28 U.S.C. § 2255(h).

**B. Extraordinary and Compelling Reasons**

Turning to the reasons Defendant did present to BOP, Defendant argues that the current COVID-19 pandemic and her health conditions constitute an extraordinary and compelling reason for compassionate release. Defendant's stated health conditions include her age (over 55), Postural Orthostatic Tachycardia Syndrome (heart condition), high blood pressure, high cholesterol, overactive thyroid, and a previous broken ankle. (Doc. 855 at 13.) Defendant also makes several general statements regarding prisons, overcrowding, violence, and inadequate medical care. None of these conclusory statements are supported by any particular facts regarding FMC Carswell. In response, the government asserts that Defendant's motion does not show a compelling reason for release because it only makes general statements regarding a fear of COVID-19 and Defendant has been vaccinated against COVID-19. (Doc. 857 at 10.) Therefore, her risk from COVID-19 has been mitigated to "such an extent that she can no longer sustain an extraordinary and compelling reason to grant compassionate release." (*Id.* at 11.) In reply, Defendant argues that her health conditions place her at high risk of serious complications from COVID-19. While Defendant contends that BOP failed to treat her broken ankle for six months, Defendant does not

assert that her other health conditions have not been adequately treated while she has been incarcerated.

The Tenth Circuit has held that this court has independent discretion to determine whether a defendant has shown "extraordinary and compelling reasons" that warrant release. *See McGee*, 992 F.3d at 1044, 1048. "[E]xtraordinary" means "exceptional to a very marked extent." *United States v. Ford*, — F. Supp. 3d. —, 2021 WL 1721054, at *3 (D. Kan. Apr. 30, 2021) (quoting *United States v. Baydoun*, No. 16-20057, 2020 WL 4282189, at *2 (E.D. Mich. July 27, 2020) (quoting "extraordinary," *Webster's Third International Dictionary, Unabridged* (2020)). "Compelling" means "tending to convince ... by forcefulness of evidence." *Id.* (quoting "compelling," *Webster's Third International Dictionary*, *Unabridged* (2020)). Although not binding on this court, the Sentencing Commission has identified that grounds for release due to extraordinary and compelling reasons can include: (1) defendant's medical condition; (2) age; (3) family circumstances; and (4) a catchall category of an "extraordinary and compelling reason other than, or in combination with," the first three categories. *Id.* (citing U.S.S.G. § 1B1.13, Reduction In Term Of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement), cmt. n.1 (Nov. 2018)) and *United States v. Carr*, No. 20-1152, — F. App'x. —, 2021 WL 1400705, at *4 (10th Cir. Apr. 14, 2021) (finding district court has discretion to consider definition of extraordinary and compelling reasons in Section 1B1.13 application notes).

The court finds that Defendant's medical conditions and the conditions at FMC Carswell do not constitute extraordinary and compelling reasons for a reduced sentence. Although Defendant argues that the BOP's policies, overcrowding, and medical care regarding COVID-19 is inadequate, Defendant's statements are conclusory. BOP has undertaken "extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d

Cir. 2020). Reviewing the BOP website concerning COVID-19, there are currently zero cases of COVID-19 at FMC Carswell. *See* Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 15, 2021). Out of the 130,093 federal inmates in custody at this time, only 93 inmates nationwide have confirmed positive test results. *Id.* Although the COVID-19 pandemic is a significant ongoing health concern, Defendant has not met her burden to show extraordinary circumstances due to her health conditions and the COVID-19 pandemic because there are no positive COVID-19 cases at her facility and she has been vaccinated.[2] *See United States v. Verdin-Garcia*, No. 05-20017-01-JWL, 2021 WL 2144801, at *2 (D. Kan. May 26, 2021) (no inmates with active infections weighs against compassionate release); *United States v. Young*, No. CR 10-20076-01-KHV, 2021 WL 1999147, at *3 (D. Kan. May 19, 2021). Moreover, Defendant has not shown that compared to release in the community at large, she "faces a heightened or imminent risk of exposure to COVID-19" at FMC Carswell. *Young*, 2021 1999147 at *3. The risk that COVID-19 or a variant resistant to the vaccine may emerge at FMC Carswell cannot "justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Id.* (quoting *Raia*, 954 F.3d at 597).

**C. Sentencing Factors**

Further, even had Defendant shown extraordinary circumstances supporting a reduction, the reduction would not be warranted after consideration of the sentencing factors. Prior to granting a motion for compassionate release, the court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a). *McGee*, 992 F.3d at 1042. Some of the sentencing factors include the nature and circumstances of the offense; the need for the sentence imposed to reflect the

[2] Defendant does not argue that the vaccine is ineffective.

seriousness of the offense and afford adequate deterrence; the guideline sentencing range; and the need to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a).

Defendant's projected release date is June 11, 2037. *See* Federal Bureau of Prisons, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (Linda K Schneider, last accessed July 15, 2021). At this time, Defendant has not even served half of her 396-month sentence. Defendant argues that her health conditions and the risks she is facing as an inmate during the pandemic support a sentence reduction. Defendant further argues that she cannot reoffend and poses no risk to the community. Defendant, however, does not meaningfully address the remaining sentencing factors in this case which weigh significantly against a sentence reduction to time served.

Defendant's criminal convictions are severe. She was convicted of several counts of health care fraud, money laundering, and unlawfully distributing prescription medication. One of the counts of conviction resulted in the death of a patient. The evidence was overwhelming at trial. Even though only one death was determined to be directly caused by the prescriptions, a substantial number of the clinic's patients died of overdoses. Moreover, Defendant's conduct resulted in millions of dollars in losses to numerous victims. (Doc. 802 at 80-83.) Here, the guideline sentencing range was life and Defendant was sentenced to less than life. (*Id.* at 77.)

Reducing Defendant's sentence to time served would not reflect the seriousness of her criminal conduct, nor would it furnish adequate deterrence to criminal conduct or provide just punishment. Defendant's conduct in this case resulted in death of one of the patients at the clinic. There were also numerous other patients who died from overdoses after receiving prescriptions at the clinic. Defendant's reply brief argues that she is not a violent offender and cannot commit these same crimes again. While Defendant may be unable to reoffend in the same manner due to

the loss of her license, Defendant's conduct that resulted in her sentence was severe and resulted in a loss of life. The sentencing factors, which supported the sentence Defendant received, also support a term of imprisonment greater than a time-served sentence. The court finds that the imposed sentence remains sufficient, but not greater than necessary, to meet the sentencing factors in § 3553(a) and punish the offense.

After considering the factors enumerated in § 3553(a), Defendant's motion to reduce her sentence to time served is denied.

**IV. Conclusion**

Defendant's motion for sentence reduction under § 3582 is DENIED. (Doc. 855.)

IT IS SO ORDERED. Dated this 21st day of July 2021.

s/ John W. Broomes
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE